Stanton L. Stein
Mark D. Passin
DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP
1620 26th Street
6th Floor, North Tower
Santa Monica, California 90404
(310) 828-9050

      and

Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>        Plaintiff,<br><br>  vs.<br><br>RYKODISC, INC.<br><br>        Defendant. | Civil Action No. 08-396<br><br>**FIRST AMENDED**<br><br>**COMPLAINT**<br><br>**PLAINTIFF REQUESTS**<br><br>**TRIAL BY JURY** |

      Plaintiff Adelaide Gail Zappa ("Gail Zappa" or "Plaintiff"), individually and as sole trustee of The Zappa Family Trust u/t/d November 15, 1990, a California revocable trust (the "Trust"), by her attorneys Dreier LLP, for her complaint against Rykodisc, Inc. ("Ryko"), alleges on knowledge as to her own acts and otherwise on information and belief:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this case involves claims arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et. seq.*, pursuant to 15 U.S.C. § 1121 in that this case involves claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and pursuant to 28 U.S.C. § 1332 in that the plaintiff and defendant are citizens of different states, and that the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs.  This Court has supplemental jurisdiction over the claims alleging violations of state law pursuant to 28 U.S.C. § 1367(a).

2.     Venue is proper in this Court because the parties have expressly submitted to venue in this judicial district pursuant to a forum selection clause contained in the written agreement that is the subject of this action.  Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this judicial district.

## THE PARTIES

3.     At all times mentioned herein, Plaintiff was and is an individual residing in Los Angeles, California, and is the sole trustee and real party in interest acting on behalf of the Trust.

4.     At all times mentioned herein, defendant Ryko was and is a Minnesota corporation organized and existing under the laws of the State of Minnesota, with its principal place of business at 30 Irving Place, New York, New York 10003.

## GENERAL ALLEGATIONS

### A.     The Legendary Frank Zappa

5.     Frank Zappa ("Zappa") was one of the most revered rock legends of his time.  In a career spanning more than 30 years, Zappa released more than 60

963084_2.DOC

albums. He received multiple Grammy nominations, was posthumously inducted into the Rock and Roll Hall of Fame and received a Grammy Lifetime Achievement Award. Zappa passed away in December 1993. Upon Zappa's death, the Trust acquired, among other things, all right, title and interest, including copyrights in and to all sound recordings embodying Zappa's performances. Zappa's wife Gail Zappa was appointed trustee of the Trust.

6.     Zappa earned a reputation for extremely high quality of work, including his outstanding technical and musical quality. He was known for producing uniquely creative recordings that satisfied the highest standards of artistic and technical excellence. The masters that Zappa selected for his albums, and the sequencing of those masters, were a key artistic ingredient of his albums. Moreover, the technical quality and format of each of Zappa's recordings was also part of his unique artistic style and creation on which his reputation was based. The record buying public and legion of fans came to associate his albums with those standards of excellence.

**B.      The 1994 Agreement**

7.     On or about October 6, 1994, Ryko, on the one hand, and the Trust and others, on the other hand, entered into a written agreement (the "1994 Agreement") wherein the parties agreed, among other things, that:

(a)     Ryko shall acquire from the Trust, for a specified amount, certain rights in and to the actual versions and mixes of the sound recordings commercially released or exploited with the authority of Zappa prior to October 6, 1994, and certain previously unreleased albums listed on Schedule "A" of the 1994 Agreement (the "Subject Masters").

(b)     The Trust shall retain all rights in and to any sound recordings embodying Zappa's performances other than the Subject Masters, including but not limited to all "Classical Masters" and "Vault Masters." "Classical Masters" are defined as master recordings which were not performed by a Frank Zappa touring band,

-3-

such as "Lumpy Gravy," "Civilization Phase III," "200 Motels," "Jazz from Hell,"
"Orchestral Favorites," "Perfect Stranger," "Francesco Zappa," "The Yellow Shark" or
similar recordings. "Vault Masters" are defined as master recordings embodying Zappa's
performances owned or controlled by the Trust (other than the Classical Masters or the
Subject Masters).

        (c)     During the first two (2) years of the agreement, the Trust
shall not grant any licenses to any third parties to exploit the Vault Masters (other than
specifically permitted in the 1994 Agreement such as in connection with its mail order
operation). Commencing with the third year of the 1994 Agreement and continuing until
on or about October 5, 2004 (the "Holdback Period"), the Trust shall be prohibited from
exploiting any of the Vault Masters on a record other than in connection with its mail
order operation. Notwithstanding the foregoing, during the Holdback Period the Trust
shall be entitled to submit to Ryko all Vault Masters which the Trust desires to exploit
other than through the mail order operation, in the form of an album of Vault Masters
("Vault Albums"), and Ryko shall have the option to accept for exploitation one or more
of such Vault Albums pursuant to certain terms and conditions specified in the 1994
Agreement (the "Right of First Refusal"). If Ryko rejects any such Vault Albums, the
Trust shall have the right to license the Vault Album to third parties on terms no less
favorable than those which, pursuant to the 1994 Agreement, were available to Ryko,
subject to certain annual limitations on the number of Vault Albums that the Trust could
release. For a period of five (5) years following the Holdback Period, the Trust shall be
prohibited from licensing or selling any rights in the Vault Masters to any third parties
without first allowing Ryko to match the economic terms and conditions offered to such
third parties (the "Matching Right").

        (d)     Ryko's Right of First Refusal and Matching Right relating
to the Vault Masters shall terminate in the event that all or substantially all of the shares,
or a controlling interest in Ryko, were acquired by an unaffiliated corporation and, at

least, two of the three principals of Ryko ceased to be actively involved with the administration of the Subject Masters.

      (e)     The Trust shall license to Ryko ancillary rights to use, among other things, the artwork, photographic and other materials ("Album Cover Artwork") previously used by Zappa. Such use by Ryko was expressly limited to use in the packaging, distribution, marketing and advertising of records reproduced from the Subject Masters and was limited to use by Ryko in the same manner as such album cover artwork was previously used.

      (f)     Ryko shall be prohibited from making any remixes, edits or changes in technical standards that would impact on the integrity of the work as delivered by the Trust.

      (g)     The Subject Masters embodying the musical compositions "Watermelon in Easter Hay," "Black Napkins," and "Zoot Allures," (collectively, the "Restricted Cuts"), among other things, cannot be exploited individually or coupled with other masters and may only be exploited on previously released albums on which they were embodied. All other rights to exploit the Restricted Cuts throughout the Universe shall be granted in perpetuity to the Trust.

      (h)     Ryko was prohibited from making any alterations or modifications to the album artwork utilized by Zappa, his formerly owned and operated record company entitled Pumpko Industries, Ltd., or the Trust other than in the same manner as such album artwork had been used in connection with previously released Zappa albums. Furthermore, pursuant to a license agreement dated March 5, 1999, by and between Ryko and the Trust, Ryko had the limited right to make modifications to the album artwork subject to the terms of conditions of the license agreement.

      (i)     Ryko was obligated to pay mechanical royalties to the Trust at rates specified in the 1994 Agreement for all musical compositions embodied on

-5-

any of the Subject Masters or Vault Masters exploited by the Trust pursuant to the terms
of the 1994 Agreement.

     **C.**     **Ryko's Attempt to Improperly Expand Its Rights**

     8.     After entering into the 1994 Agreement, the principals of Ryko
became extremely dissatisfied with the terms and conditions of such agreement.
Specifically, they were unhappy with the limited nature of the rights they acquired in and
to the Zappa sound recordings. Thus, Ryko attempted improperly and in bad faith to
expand the rights granted to it pursuant to the 1994 Agreement and avoid their obligation
to pay monies owing to the Trust by, among other things, the following:

     (a)     Asserting to the Trust and various third parties that
pursuant to the 1994 Agreement Ryko acquired not only the Subject Masters, but also the
right to the delivery of any and all other versions or mixes made from the same source
materials from which the Subject Masters were derived, and to prohibit the Trust from
exploiting those other versions and mixes, even though ownership of such versions and
mixes were reserved by the Trust.

     (b)     Licensing to third parties such as to Emusic, Napster,
iTunes and possibly others, the right to digitally distribute the Subject Masters to the
public via the Internet even though digitally downloading the masters impacts on the
integrity of the work and does not result in the equivalent of 16-bit technology which
Zappa used to record the Subject Masters.

     (c)     Releasing a number of the Subject Masters in vinyl even
though it impacted the integrity of the works as embodied in the final version of the
Subject Masters delivered to Ryko.

     (d)     Licensing to various third parties the right to digitally
distribute as singles the Restricted Cuts to the public via the Internet, even though Ryko
only had the right to exploit the Restricted Cuts on previously released albums on which

they were embodied. All other rights to exploit the Restricted Cuts, including, but not limited to, the right to exploit them as singles, were granted in perpetuity to the Trust.

(e)     Editing and/or making certain other changes to various of the Subject Masters even though it impacted the integrity of the works as embodied in the final version of the Subject Masters delivered to Ryko.

(f)     Through various advertising campaigns, misleading the public into believing that the nature, characteristics and/or qualities of certain newly released albums are actually quite different than the recordings that they are actually purchasing. Specifically, Ryko released various Zappa compilation albums consisting of masters taken from a number of different previously released classical Zappa works, even though Zappa was not involved in choosing the masters embodied on those albums or the sequencing of those masters. Nonetheless, the record-buying public purchased those recordings because they were misled into believing that they are purchasing a Zappa recording that satisfied his demand for artistic and technical perfection.

(g)     Releasing various compilation albums using misleading titles such as "Zappa's Greatest Hits," "The Best of Frank Zappa" or other similar misleading titles. Ryko's use of such album titles in connection with Zappa masters and the advertising utilized in connection with the albums was intended to, and did in fact, mislead the public into believing that the albums consist solely of Zappa's greatest hits, when in fact they do not.

(h)     Altering and/or modifying the album artwork for use in a manner other than as such artwork had been used in connection with previously released Zappa albums, including but not limited to, translating Zappa song lyrics into languages other than those that appeared on previously released Zappa albums.

(i)     Failing to account to and pay the Trust the mechanical royalties due to the Trust with respect to the musical compositions owned or controlled

-7-

by the Trust that are embodied on the Subject Masters or Vault Masters exploited by Ryko with authority of the Trust pursuant to the 1994 Agreement.

9.     Plaintiff and Ryko entered into a series of written tolling agreements tolling the statute of limitations from January 1, 2006 to and including January 15, 2008.

## FIRST CLAIM FOR RELIEF

## (DECLARATORY JUDGMENT)

### (28 U.S.C. §§ 2201, 2202)

10.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 hereinafter as if the same were fully set forth at length herein.

11.     An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Ryko, on the other, concerning the respective rights and duties of the Parties under the 1994 Agreement.

12.     Plaintiff contends that:

(a)     Pursuant to the 1994 Agreement, the Trust retained all rights in and to any sound recordings embodying Zappa's performances other than the Subject Masters, including, but not limited to, the "Vault Masters" that are different versions or mixes of certain Subject Masters. Accordingly, the Trust has the right to exploit all of the Vault Masters, even if they are different versions or mixes of the Subject Masters made from the same source material as the Subject Masters, and Ryko does not have the right to delivery of those masters;

(b)     Ryko does not have the right pursuant to the 1994 Agreement to digitally distribute the Subject Masters either directly or through sites such as Emusic, Napster, iTunes or other similar on-line sites; and

(c)     Ryko does not have the right pursuant to the 1994 Agreement to distribute any of the Subject Masters in vinyl.

13.     Ryko denies the foregoing contentions.

-8-

14.    Plaintiff desires a judicial declaration of her rights and duties. A judicial determination is necessary and appropriate under the circumstances so that the parties may proceed in accordance with their rights as determined by the Court.

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

15.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 and 11 through 14 hereinafter as if the same were fully set forth at length herein.

16.    Within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, Ryko has materially breached the 1994 Agreement by, among other things:

(a)    Licensing to third parties such as to Emusic, Napster, iTunes and possibly others, without the permission of the Trust, the right to digitally distribute the Subject Masters to the public via the Internet;

(b)    Releasing, without the permission of the Trust, a number of the Subject Masters in vinyl;

(c)    Editing and/or otherwise changing various of the Subject Masters in ways that impacted the integrity of the works as delivered to Ryko; and

(d)    Failing to account to and pay the Trust the mechanical royalties due to the Trust with respect to the musical compositions owned or controlled by the Trust that are embodied on the Subject Masters or Vault Masters exploited by Ryko pursuant to the 1994 Agreement.

17.    Plaintiff has performed all material conditions to be performed by her pursuant to the 1994 Agreement, except insofar as the same were excused or prevented by Ryko.

963084_2.DOC

18.    As a direct and foreseeable result of Ryko's breaches of the 1994 Agreement, Plaintiff has been damaged in an amount to be determined at trial, but far in excess of $75,000.

### THIRD CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT)

19.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 hereinafter as if the same were fully set forth at length herein.

20.    Since the date of inception of the copyrights, Plaintiff has been, and continues to be, proprietor of the right, title and interest in and to the copyrights in the following sound recordings embodied on the album entitled "Lather" (the "Lather Album"): "For The Young Sophisticate," "Duck Duck Goose," "Tryin' To Grow A Chin," "Broken Hearts Are For Assholes," "Honey Don't You Want A Man Like Me," "Leather Goods ," and "Revenge of the Knick Knack People" (collectively the "Trust's Lather Sound Recordings").

21.    The Trust's Lather Sound Recordings contain a large amount of wholly original material and constitute copyrightable subject matter under the laws of the United States.

22.    The Trust, complying in all respects with the Copyright laws of the United States duly registered a claim to the Trust's Lather Sound Recordings in the United States Copyright Office.  Zappa deposited and registered the Trust's Lather Sound Recordings in the United States Copyright Office on or about March 31, 2008 and received from the Register of Copyrights the following Certificates of Registration:

| Sound Recording | Certificates of Registration |
| --- | --- |
| "Duck Duck Goose" | SR 611-901 |
| "Revenge of the Knick Knack People" | SR 611-902 |
| "For The Young Sophisticate" | SR 611-889 |
| "Tryin' To Grow A Chin" | SR 611-895 |

963084_2.DOC

| | |
|---|---|
| "Broken Hearts Are For Assholes" | SR 611-891 |
| "Honey Don't You Want A Man Like Me" | SR 611-898 |
| "Leather Goods" | SR 611-899 |

True and correct copies of the certificates of registration are attached hereto as Exhibit 1 and are incorporated herein by reference.

23.    At all times relevant hereto, Plaintiff has duly complied with all pertinent provisions of the Copyright Act and all of the laws governing copyright with respect to the Trust's Lather Sound Recordings.

24.    Ryko has unlawfully, and without authority from Plaintiff, (a) within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, licensed to third parties the right to sell to the public the Trust's Lather Sound Recordings as singles; and (b) commencing on or about October 6, 2004, manufactured and distributed to the public the Lather Album embodying the Trust's Lather Sound Recordings.

25.    The Trust's Lather Sound Recordings, identified above, are not Subject Masters and the Trust did not grant Ryko the right to exploit any of those sound recordings on the Lather Album after on or about October 6, 2004 or to ever exploit any of the Trust's Lather Sound Recordings as singles.

26.    Through its conduct alleged above, Ryko has infringed Plaintiff's copyrights and exclusive rights in each of the Trust's Lather Sound Recordings in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

27.    Ryko's acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

28.    Plaintiff has notified Ryko in writing of its violations of Plaintiff's rights and demanded that Ryko cease its unlawful conduct. Ryko has failed and refused to cease and desist from its unlawful conduct.

29.    As a direct and proximate result of the infringements by Ryko, Plaintiff is entitled to damages and Ryko's profits in amounts to be proven at trial.

30.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Ryko will continue to infringe Plaintiff's rights in the Trust's Lather Sound Recordings.  Plaintiff is entitled to preliminary and permanent injunctive relief.

## FOURTH CLAIM FOR RELIEF
## (COPYRIGHT INFRINGEMENT)

31.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 and 20 through 30 hereinafter as if the same were fully set forth at length herein.

32.    Since the date of inception of the copyrights, Plaintiff has been, and continues to be, proprietor of the right, title and interest in and to the copyrights in the musical compositions embodied on the Trust's Lather Sound Recordings (the "Lather Musical Compositions").

33.    The Lather Musical Compositions contain a large amount of wholly original material and constitute copyrightable subject matter under the laws of the United States.

34.    Munchkin Music, a fictitious business name for Zappa, and Plaintiff with respect to Certificate of Registration PA 1083594, complying in all respects with the Copyright laws of the United States duly registered a claim to the Lather Musical Compositions in the United States Copyright Office.  Zappa, and Plaintiff with respect to Certificate of Registration PA 1083594, deposited and registered the Lather Musical Compositions in the United States Copyright Office and received from the Register of Copyrights the following Certificates of Registrations:

-12-

| Musical Composition | Certificate of Registration | Date |
|---|---|---|
| "Duck Duck Goose" | Eu  843148<br>PA 1083594 | Nov. 21, 1977<br>Mar. 12, 2001 |
| "Curse of the Knick Knack People"/<br>"Revenge of the Knick Knack People" | PA 682-900<br>PA 10839 | Dec. 6, 1993<br>Mar. 12, 2001 |
| "For The Young Sophisticate" | Eu 843147<br>PA 108394 | Nov. 21, 1977<br>Mar. 12, 2001 |
| "Tryin' To Grow A Chin" | PA 33-059<br>PA 108394 | April 23, 1979<br>Mar. 12, 2001 |
| "Broken Hearts Are For Assholes" | PA 33-049<br>PA 108394 | April 23, 1979<br>Mar. 12, 2001 |
| "Honey Don't You Want A Man Like Me" | Eu 795161<br>PA 108394 | June 17, 1977<br>Mar. 12, 2001 |
| "Leather Goods" | PA 1083594 | Mar. 12, 2001 |

True and correct copies of the certificates of registration for all of the Lather Musical Compositions other than Certificate of Registration Number PA 108394, and a print out from the United States Copyright Office's on-line database setting forth registration information for Certificate of Registration Number PA 108394, are attached hereto as Exhibit 2 and are incorporated herein by reference.

35.    Zappa and Plaintiff assigned to Zappa and Plaintiff as trustees of the Zappa Family Trust, u/t/d November 15, 1990, all of their right, title and interest in and to all of the Lather Musical Compositions and all of his copyrights therein. Said assignments were recorded with the United States Copyright Office.

36.    At all times relevant hereto, Zappa and Plaintiff have duly complied with all pertinent provisions of the Copyright Act and all of the laws governing copyright with respect to the Lather Musical Compositions.

37.    Ryko has unlawfully, and without authority from Plaintiff, (a) within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, licensed to third parties the right to sell to the public the Lather Musical Compositions embodied on singles of the Trust's Lather Sound

-13-

Recordings; and (b) commencing on or about October 6, 2004, manufactured and distributed to the public the Lather Album embodying the Lather Musical Compositions.

38.    Through its conduct alleged above, Ryko has infringed Plaintiff's copyrights and exclusive rights in each of the Lather Musical Compositions in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501

39.    Ryko's acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

40.    Plaintiff has notified Ryko in writing of its violations of Plaintiff's rights and demanded that Ryko cease its unlawful conduct.  Ryko has failed and refused to cease and desist from its unlawful conduct.

41.    As a direct and proximate result of the infringements by Ryko, Plaintiff is entitled to damages and Ryko's profits in amounts to be proven at trial.

42.    Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical composition infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

43.    Plaintiff is further entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

44.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Ryko will continue to infringe Plaintiff's rights in the Lather Musical Compositions.  Plaintiff is entitled to preliminary and permanent injunctive relief.

**FIFTH CLAIM FOR RELIEF**

**(COPYRIGHT INFRINGEMENT)**

45.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 hereinafter as if the same were fully set forth at length herein.

963084_2.DOC

46.    The Restricted Cut Recordings contain a large amount of wholly original material and constitute copyrightable subject matter under the laws of the United States.

47.    Zappa, complying in all respects with the Copyright laws of the United States duly registered a claim to the Restricted Cut Recordings in the United States Copyright Office.  Zappa deposited and registered the sound recordings embodied on the Restricted Cuts in the United States Copyright Office and obtained the following Certificates of Registration:

| Title | Certificate of Registration | Date |
|---|---|---|
| Zoot Allures | N 37787 | Unknown |
| Zoot Allures | SR 154826 | July 2, 1993 |
| Zoot Allures | SR 154810 | July 2, 1993 |
| Zoot Allures | SR 154829 | July 2, 1993 |
| Black Napkins | N 37787 | Unknown |
| Black Napkins | SR 154819 | July 2, 1993 |
| Black Napkins | SR 154812 | June 16, 1997 |
| Watermelon in Easter Hay | SR 49713 | Nov. 18, 1983 |
| Watermelon in Easter Hay | SR 154824 | July 2, 1993 |

48.    At all times relevant hereto, Zappa and Plaintiff have duly complied with all pertinent provisions of the Copyright Act and all of the laws governing copyright with respect to the Restricted Cuts.

49.    Zappa and Plaintiff assigned to Zappa and Plaintiff as trustees of the Zappa Family Trust, u/t/d November 15, 1990, all of their right, title and interest in and to the Restricted Cut Recordings, and all of his copyrights therein.   Said assignment was recorded with the United States Copyright Office.

50.    Pursuant to the 1994 Agreement, the Trust assigned to Ryko the Restricted Cuts, but Ryko simultaneously granted the Trust an exclusive irrevocable

license in perpetuity for the use and exploitation of the Restricted Cuts in any manner, including as singles, other than exploitation on the albums on which they were previously released. A true and correct copy of the license recorded with the United States Copyright Office is attached hereto as Exhibit 3 and is incorporated herein by reference.

51.     Within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, Ryko has unlawfully, and without authority from Plaintiff, digitally distributed, as singles, the Restricted Cuts.

52.     Through its conduct alleged above, Ryko has, infringed Plaintiff's copyrights and exclusive rights in each of the Restricted Cut Recordings by distributing said recordings as singles in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

53.     Ryko's acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

54.     Plaintiff has notified Ryko in writing of its violations of Plaintiff's rights and demanded that Ryko cease its unlawful conduct. Ryko has failed and refused to cease and desist from its unlawful conduct.

55.     As a direct and proximate result of the infringements by Ryko, Plaintiff is entitled to damages and Ryko's profits in amounts to be proven at trial.

56.     Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

57.     Plaintiff is further entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

58.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by

-16-

this Court, Ryko will continue to infringe Plaintiff's rights in the Restricted Cut
Recordings. Plaintiff is entitled to preliminary and permanent injunctive relief.

## SIXTH CLAIM FOR RELIEF

## (COPYRIGHT INFRINGEMENT)

59.    Plaintiff repeats and realleges the allegations set forth in
paragraphs 1 through 9 and 46 through 58 hereinafter as if the same were fully set forth at
length herein.

60.    Since the date of inception of the copyrights, Plaintiff has been,
and continues to be, proprietor of the right, title and interest in and to the copyrights in
the musical compositions embodied on the Restricted Cuts ("Restricted Cut
Compositions").

61.    The Restricted Cut Compositions contain a large amount of wholly
original material and constitute copyrightable subject matter under the laws of the United
States.

62.    Zappa, complying in all respects with the Copyright laws of the
United States duly registered a claim to the Restricted Cut Compositions in the United
States Copyright Office. Zappa deposited and registered the Restricted Cut Compositions
in the United States Copyright Office and received the following Certificates of
September 10, 2003 Registration:

| Title | Certificate of Registration | Date |
|-------|----------------------------|------|
| Zoot Allures | Eu 729366 | Nov. 8, 1976 |
| Black Napkins | Eu 729369 | Nov. 8, 1976 |
| Watermelon in Easter Hay | PA 53915 | Dec. 18, 1975 |

True and correct copies of the certificates of registration are attached hereto as Exhibit 4.

63.    At all times relevant hereto, Zappa and Plaintiff have duly
complied with all pertinent provisions of the Copyright Act and all of the laws governing
copyright with respect to the Restricted Cuts Compositions.

-17-

963084_2.DOC

64.    Zappa and Plaintiff assigned to Zappa and Plaintiff as trustees of the Zappa Family Trust, u/t/d November 15, 1990, all of their right, title and interest in and to the Restricted Cut Compositions, and all of his copyrights therein.  The assignments were recorded with the United States Copyright Office.

65.    Within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, Ryko has unlawfully, and without authority from Plaintiff, digitally distributed, as singles, the Restricted Cuts with the Restricted Cut Compositions embodied thereon.

66.    Through its conduct alleged above, Ryko has infringed Plaintiff's exclusive rights in each of the Restricted Cut Compositions by distributing as singles the Restricted Cuts with the Restricted Cut Compositions embodied thereon in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§ 106, 115, and 501.

67.    Ryko's acts of infringement were willful, in disregard of and with indifference to the rights of Plaintiff.

68.    Plaintiff has notified Ryko in writing of its violations of Plaintiff's rights and demanded that Ryko cease its unlawful conduct.  Ryko has failed and refused to cease and desist from its unlawful conduct.

69.    As a direct and proximate result of the infringements by Ryko, Plaintiff is entitled to damages and Ryko's profits in amounts to be proven at trial.

70.    Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical composition infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

71.    Plaintiff is further entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

72.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by

-18-

this Court, Ryko will continue to infringe Plaintiff's rights in the Restricted Cut Compositions embodied on the Restricted Cuts. Plaintiff is entitled to preliminary and permanent injunctive relief.

**SEVENTH CLAIM FOR RELIEF**

**(SECTION 43(a) OF THE LANHAM ACT)**

73.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 hereinafter as if the same were fully set forth at length herein.

74.    Within the relevant statute of limitations period, as extended by the tolling agreements described in paragraph 9 above, Ryko has violated Section 43(a)(1)(B)of the Lanham Act, 15 U.S.C. §1125(a), by expressly and impliedly misrepresenting in advertising and promotion the nature, characteristics and/or qualities of various Zappa albums by, among others, the following acts: (1) releasing as Zappa albums compilations consisting of Subject Masters taken from various albums created by Zappa as grand rights recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released; (2) distributing old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko; (3) distributing various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa; and (4) releasing various compilation albums using titles such as "Zappa's Greatest Hits," "The Best of Frank Zappa" or similar misleading titles which are false.

75.    As set forth hereinabove, Ryko has intentionally and knowingly engaged in the foregoing conduct in order to deceive the consuming public into purchasing albums and/ recordings which are actually quite different than as advertised by Ryko.

76.     Based on Ryko's actions, the public is likely to be confused and misled into purchasing recordings which are very different than the recordings they thought they were purchasing.

77.     As a direct and proximate result of the aforesaid wrongful acts of Ryko, Plaintiff has been damaged and Ryko has made profits in an amount to be determined at trial.

78.     Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a), to three times Ryko's profits or actual damages, whichever is greater, plus costs of suit and together with reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### (ACCOUNTING)

79.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 9 and 16 through 18 hereinafter as if the same were fully set forth at length herein.

80.     Since the inception of the 1994 Agreement, Ryko has willfully and consistently underaccounted for mechanical royalties due to Plaintiff and paid over to Plaintiff substantially less money than was and is properly due and owing to her pursuant to the terms of the 1994 Agreement.

81.     Ryko maintains complete and exclusive knowledge and control over the documents, papers and things containing the true facts concerning royalties payable to Plaintiff.

82.     The amount of money due from Ryko to Plaintiff is unknown to her and cannot be ascertained without an accounting of Ryko's books and records for the relevant period.

83.     Plaintiff has demanded that Ryko duly and correctly account to her for all such amounts, and allow her to audit Ryko's books and records from the inception of the 1994 Agreement to the present, but Ryko has failed and refused, and continues to

-20-

fail and refuse, to render such accountings or allow Plaintiff to audit its books and records.

84.    Plaintiff has also requested that Ryko be ordered to render to them true and accurate accountings for the period from inception of the 1994 Agreement to the date hereof and pay to her any and all amounts found due.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Ryko as follows:

### ON THE FIRST CLAIM FOR RELIEF

1.    For a judicial determination and a declaration that:

(a)    Pursuant to the 1994 Agreement, the Trust retained all rights in and to any sound recordings embodying Zappa's performances other than the Subject Masters, including, but not limited to, the "Vault Masters" that are different versions or mixes of a Subject Master.  Thus, the Trust has the right to exploit Vault Masters, even if they are different artistic or technical versions or mixes of the Subject Masters, made from the same source material as the Subject Masters, or versions or mixes made from the same source materials from which the Subject Masters were derived, and Ryko does not have the right to delivery of those masters;

(b)    Ryko does not have the right pursuant to the 1994 Agreement to digitally distribute the Subject Masters either directly or through websites such as Emusic, Napster, iTunes or other similar on-line sites; and

(c)    Ryko does not have the right pursuant to the 1994 Agreement to distribute any of the Subject Masters in vinyl.

### ON THE SECOND CLAIM FOR RELIEF

2.    For compensatory damages in an amount to be determined according to proof at trial.

963084_2.DOC

## ON THE THIRD CLAIM FOR RELIEF

3.      For Plaintiff's damages and Ryko's profits in such amount as may be found.

4.      For a preliminary and a permanent injunction enjoining Ryko and its respective agents, servants, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, from manufacturing or distributing the Lather Album embodying the Trust's Lather Sound Recordings, or from licensing to third parties or otherwise exploiting the Trust's Lather Sound Recordings.

## ON THE FOURTH CLAIM FOR RELIEF

5.      For Plaintiff's damages and Ryko's profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyright infringed, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

6.      For a preliminary and a permanent injunction enjoining Ryko and its respective agents, servants, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, from manufacturing or distributing the musical compositions embodied on the Trust's Lather Sound Recordings, or from licensing to third parties or otherwise exploiting the musical compositions embodied on the Lather Sound Recordings.

## ON THE FIFTH CLAIM FOR RELIEF

7.      For Plaintiff's damages and Ryko's profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyright infringed, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

8.      For a preliminary and a permanent injunction enjoining Ryko and its respective agents, servants, employees, officers, successors, licensees, and assigns,

-22-

963084_2.DOC

and all persons acting in concert or participation with each or any of them, from: licensing digital rights in the Restricted Cuts.

## ON THE SIXTH CLAIM FOR RELIEF

9.     For Plaintiff's damages and Ryko's profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyright infringed, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

10.     For a preliminary and a permanent injunction enjoining Ryko and its respective agents, servants, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, from licensing digital rights in the Restricted Cut Compositions.

## ON THE SEVENTH CLAIM FOR RELIEF

13.     For damages and recapture of Ryko's profits in an amount to be determined according to proof at trial.

14.     For treble damages and profits pursuant to 15 U.S.C. § 1117(a).

15.     For a preliminary and a permanent injunction enjoining Ryko and its respective agents, servants, employees, officers, successors, licensees, and assigns, and all persons acting in concert or participation with each or any of them, from: (1) releasing new Zappa albums embodying compilations that were not created by Zappa; (2) distributing old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko; (3) licensing digital rights in the Subject Masters; (4) distributing the Subject Masters in vinyl; and (5) releasing compilation albums using misleading titles such as "Zappa's Greatest Hits," "The Best of Frank Zappa."

963084_2.DOC

## ON THE EIGHTH CLAIM FOR RELIEF

16.    A declaration that: (a) Ryko is required to render true and accurate accountings to Plaintiff for the period from the inception of the 1994 Agreement to the date hereof; (b) Ryko is required to provide Plaintiff with copies of Ryko's relevant books and records that would enable Plaintiff to verify the accuracy of the accounting described in subparagraph (a) of this paragraph; and (c) Ryko is required to pay Plaintiff any and all amounts found due.

## ON EACH CLAIM FOR RELIEF

17.    For prejudgment interest according to law.

18.    For Plaintiff's attorneys' fees and full costs incurred in this action.

19.    For such other and further relief as the Court may deem just and proper.

Dated: Santa Monica, California
     May 9, 2008

Respectfully Submitted,

/s/ Stanton L. Stein
Stanton L. Stein
Mark D. Passin
DREIER STEIN KAHAN BROWNE
   WOODS GEORGE LLP
The Water Garden
1620 26th Street
6th Floor, North Tower
Santa Monica, CA  90404
(310) 828-9050

and

Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, NY  10022
(212) 328-6100

*Attorneys for Plaintif*

-24-