Stephen R. Buckingham
Matthew Savare
LOWENSTEIN SANDLER P.C.
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>               Plaintiff,<br><br>v.<br><br>RYKODISC, INC.,<br><br>               Defendant. | 08-CV-00396 (WHP) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND ITS MOTION FOR A MORE DEFINITE STATEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 4

I.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER
      THE LANHAM ACT ......................................................................................... 6

      A. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS
         UNDER RULE 12(b)(6) ............................................................................ 6

      B. PLAINTIFF'S LANHAM ACT CLAIM FAILS AS A
         MATTER OF LAW ..................................................................................... 8

II.   PLAINTIFF SHOULD BE REQUIRED UNDER RULE 12(e)
      TO PROVIDE A MORE DEFINITE STATEMENT .......................................... 12

      A. LEGAL STANDARD GOVERNING MOTIONS FOR A
         MORE DEFINITE STATEMENT UNDER RULE 12(e) ............................... 12

      B. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS SO VAGUE
         AND AMBIGUOUS THAT RYKO CAN NOT PREPARE A
         RESPONSE ............................................................................................... 13

      C. IN THE EVENT THE COURT DOES NOT DISMISS PLAINTIFF'S
         LANHAM ACT CLAIM, IT SHOULD ORDER PLAINTIFF TO
         REPLEAD WITH SPECIFICITY ................................................................ 15

      D. PLAINTIFF SHOULD CONFIRM THAT SHE HAS WITHDRAWN
         HER COPYRIGHT INFRINGEMENT CLAIM WITH RESPECT
         TO ALBUM ARTWORK, OR, IN THE ALTERNATIVE, BE
         ORDERED TO PROVIDE A MORE DEFINITE STATEMENT ................... 16

CONCLUSION ......................................................................................................... 17

## TABLE OF AUTHORITIES

**Pages**

CASES

American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.,
    42 F.3d 1421, 1428 n. 9 (3d Cir. 1994) .................................................................. 9

Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,
    467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) (Rakoff, J) .................................................. 9

Bell Atlantic v. Twombly,
    127 S. Ct. 1955, 1965 (2007) ................................................................6, 7, 12, 14

Bose Corp. v. Linear Design Labs, Inc.,
    467 F.2d 304, 310-11 (2d Cir. 1972)...........................................................11, 12

Contractual Obligation Prods., LLC v. AMC Networks, Inc.,
    2008 U.S. Dist. LEXIS 24004, 27-28 (S.D.N.Y. Mar. 25, 2008) (Pitman, J.).................. 9, 10

Dastar Corp. v. Twentieth Century Fox Film Corp.,
    539 U.S. 23 (2003) ........................................................................passim

De Jesus v. Sears, Roebuck & Co., Inc.,
    87 F.3d 65, 70 (2d Cir. 1996) ................................................................. 7

Duncan v. AT&T Comms., Inc.,
    668 F.Supp. 232, 234 (S.D.N.Y. 1987) ................................................................. 7

Groden v. Random House, Inc.,
    No. 94 Civ 1074, 1994 U.S. Dist. LEXIS 11794, at *17 (S.D.N.Y. Aug. 23, 1994)
    (Martin, J.)................................................................................. 11

Iqbal v. Hasty,
    490 F.3d 143, 157-8 (2d Cir. 2007)...........................................................7, 12, 14

Lipton v. The Nature Co.,
    71 F.3d 464, 474 (2d Cir. 1995) ................................................................. 11

NBA v. Motorola, Inc.,
    105 F.3d 841, 855 (2d Cir. 1997) ................................................................. 9

Nikkal Indus., Ltd. v. Salton, Inc.,
    735 F. Supp. 1227................................................................................. 11

Salahuddin v. Cuomo,
    861 F.2d 40, 42 (2d Cir. 1988) ................................................................. 7

Simmons v. Abruzzo,
   49 F.3d 83, 86 (2d Cir. 1995) ............................................................................... 7

Smith v. New Line Cinema,
   2004 U.S. Dist. LEXIS 18382 (S.D.N.Y. Sept. 8, 2004) (Chin, J.) ...................................... 10

Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.,
   No. 06-14212, 2007 U.S. Dist. LEXIS 55086 (S.D.N.Y. July 27, 2007) (Berman, J.)........ 8, 9

Time Warner Cable, Inc. v. DirectTV, Inc.,
   497 F.3d 144, 160 (2d Cir. 2007) ............................................................................... 11

## STATUTES

15 U.S.C. § 1125(a)(1)(B) ............................................................................... 9

## RULES

Fed. R. Civ. P. 8 ...............................................................................1, 6, 7

Fed. R. Civ. P. 11 ............................................................................... 14

Fed. R. Civ. P. 12(b)(6) ...............................................................................6, 7, 17

Fed. R. Civ. P. 12(e) ...............................................................................1, 12, 15, 16

Defendant Rykodisc, Inc. ("Ryko") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.  In the alternative, Ryko moves for a more definite statement as to the Seventh Claim pursuant to Fed. R. Civ. P. 12(e), and further moves for a more definite statement as to Plaintiff's breach of contract claim (Second Claim).

## PRELIMINARY STATEMENT

In her initial Complaint, Plaintiff Adelaide Gail Zappa, individually and as sole trustee of The Zappa Family Trust (the "Trust" and collectively with Ms. Zappa, the "Plaintiff") asserted various claims against Ryko arising out of Plaintiff's sale to Ryko in 1994 of all rights (including copyrights) in all sound recordings of performances by Frank Zappa ("Zappa") between 1966 and 1993 that were commercially released or exploited by Zappa or his heirs prior to the agreement and Ryko's exploitation of these works.  Plaintiff alleged, among other things, that Ryko violated the Lanham Act by making "false designations or representations of origin" when it released certain unspecified compilations of Mr. Zappa's recordings under the Ryko name. Without providing any specific details, Plaintiff also claimed that Ryko breached the parties' 1994 agreement by licensing to third parties the right to digitally distribute certain unspecified sound recordings, by releasing a "number" of sound recordings in vinyl, by editing "various" sound recordings in ways that purportedly impacted the integrity of the works, and by failing to account and pay the Trust certain mechanical royalties.

Ryko, pursuant to Judge William Pauley's Individual Practices, requested a pre-motion conference to seek permission to file motions to dismiss and for a more definite statement.  In its request, Ryko noted that Plaintiff's Lanham Act claim failed as a matter of law because the United States Supreme Court held in 2003 that the Lanham Act's cause of action for false

designation of origin does not extend to claims of misrepresentations of authorship.  In addition, Ryko argued that Plaintiff's Lanham Act and breach of contract claims failed to satisfy the plausibility pleading standard, thus warranting, at a minimum, a more definite statement from Plaintiff.  At the pre-motion conference, the Court recognized the deficiencies in Plaintiff's Complaint, and provided Plaintiff leave to replead her claims, including the Lanham Act and contract claims, with greater specificity.

On May 9, 2008, Plaintiff filed her Amended Complaint.  Instead of providing a more definite statement of her Lanham Act claim, Plaintiff, implicitly conceding that her false designation of origin claim was precluded, elected to recast her Lanham Act claim as a "false advertising" claim.  As described in greater detail below, Plaintiff's four-part Lanham Act claim, even as amended, still fails to state an actionable claim and should be dismissed.

The first allegation in Plaintiff's "false advertising" claim—that Ryko released as Zappa albums certain unspecified compilations containing Subject Masters that Zappa intended to be exploited only on the albums on which they were originally released—does not allege any misrepresentation in advertising or promotion.  If what Plaintiff is contesting is that the compilations somehow misrepresented Zappa's involvement in their creation, such a claim is precluded by the Supreme Court's opinion in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003).

The second and third allegations in Plaintiff's Lanham Act claim—that Ryko engaged in "false advertising" when it distributed (i) old recordings in new, allegedly inferior formats to the Subject Masters delivered by the Trust, and (ii) vinyl and digital recordings that allegedly did not meet the technical standards of Zappa—also fail to state a claim under the Lanham Act, because they do not allege any misrepresentations in advertising or promotion.  In short, Plaintiff has not

pled that any advertising by Ryko was <u>false</u>. Finally, Plaintiff's claim that Ryko's use of titles

such as "Zappa's Greatest Hits" and "The Best of Frank Zappa" violates the Lanham Act is

equally unavailing, because, as a matter of law, such monikers constitute non-actionably puffery,

and are highly subjective titles that can not be proven either true or false.

In the event that the Court does not dismiss the Lanham Act claim, Plaintiff still fails to

provide the required, specific factual allegations necessary for Ryko to respond to the claim in a

meaningful way.   Instead, Plaintiff has carried over the same broad, vague, and conclusory

allegations contained in her original Complaint.   Similarly, Plaintiff has provided no additional

details or specificity in her amended breach of contract claim.   Because Plaintiff continues to

provide only vague, conclusory allegations to which it would be very difficult for Ryko to

respond, the Court should grant Ryko's motion for a more definite statement with respect to

Plaintiff's Lanham Act and breach of contract claims.

The Court should require Plaintiff to plead, at a minimum, the following specific factual

allegations:

(i)     the identities of the specific compilations, vinyl records, and digital releases on
        which she bases her claims,

(ii)    the dates of Ryko's release of the same,

(iii)   which of the hundreds of Subject Masters and various compilations are at issue,

(iv)    how the new configurations and technical formats used by Ryko are allegedly
        inferior to the Subject Masters that the Trust delivered to Ryko,

(v)     how the albums sold by Ryko were different than as advertised by Ryko, and

(vi)    which of and how Ryko's purported edits of the Subject Masters allegedly
        impacted the integrity of the works.

## STATEMENT OF FACTS

On or about October 6, 1994, Plaintiff and Ryko entered into a written agreement (the "1994 Agreement") pursuant to which Ryko paid Plaintiff $20 million for, among other things, the rights in and to sound recordings commercially released or exploited by Zappa prior to October 6, 1994 and certain previously unreleased albums (the "Subject Masters"). Am. Cmplt. at ¶ 7(a). According to the Amended Complaint, Zappa's recording career spanned over three decades, during which time he released more than sixty albums. Id. at ¶ 5.

On January 15, 2008, Plaintiff instituted this lawsuit against Ryko. In the Complaint, Plaintiff sought a declaration of her rights and demanded an accounting under the 1994 Agreement and asserted a claim for breach of the 1994 Agreement, five claims of copyright infringement, and a claim for false designation of origin under the Lanham Act. During a pre-motion conference on March 13, 2008, the Court granted Plaintiff an opportunity to amend the Complaint to more definitely plead each count. On May 9, 2008, Plaintiff filed an Amended Complaint again seeking a declaration of her rights and an accounting under the 1994 Agreement and alleging breach of the 1994 Agreement, four claims of copyright infringement,[1] and a claim of under the Lanham Act, this time under the Act's false advertising prong.

With respect to her amended Lanham Act claim, Plaintiff alleges that Ryko violated the Lanham Act by "expressly and impliedly misrepresenting . . . the nature, characteristics and/or qualities of various Zappa albums" by:

> (1) releasing as Zappa albums compilations consisting of Subject Masters taken from various albums created by Zappa as grand

---

[1] Although Plaintiff withdrew the Seventh Count of her original Complaint, which alleged copyright infringement of unspecified album artwork, ¶ 8(h) of the Amended Complaint repeats Plaintiff's vague allegations that Ryko has somehow improperly modified unspecified album artwork and translated unspecified lyrics into foreign languages. As such, it is unclear if Plaintiff has actually withdrawn this claim.

> rights recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released; (2) distributing old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko; (3) distributing various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa; and (4) releasing various compilation albums using titles such as 'Zappa's Greatest Hits,' 'The Best of Frank Zappa' or similar misleading titles which are false.

Id. at ¶ 74 (emphasis added).

Despite being given the opportunity to amend her complaint, Plaintiff has again failed to identify which specific compilations, which vinyl releases, and which digital recordings she claims breach the agreement or infringe her copyrights; which Subject Masters are at issue; how the new configurations/technical formats are inferior to the Subject Masters delivered by Plaintiff; or how the albums sold by Ryko were "quite different than as advertised by Ryko." Id. at ¶ 75.

Regarding her breach of contract claim, Plaintiff again alleges that Ryko materially breached the 1994 Agreement in four ways. First, Plaintiff claims that Ryko breached the 1994 Agreement by impermissibly licensing to third parties, such as Emusic, Napster, iTunes, and possibly others, the right to digitally distribute the Subject Masters to the public via the Internet. Id. at ¶ 16. Without citing to any specific contractual provisions or prohibitions, Plaintiff claims that Ryko does not have the right under the 1994 Agreement to digitally distribute the Subject Masters. Id. ¶¶ 12(b), 16(a). The Amended Complaint does not specify which Subject Masters were supposedly digitally distributed, nor does it provide any details, including the dates, of these alleged licensing agreements with the various online sites.

Second, Plaintiff alleges that Ryko released "a number of the Subject Masters in vinyl," which Plaintiff claims—again without citing to a specific contractual provision and without

5

identifying which recordings she is referring to or when they allegedly were sold—is a breach of the 1994 Agreement.  <u>Id</u>. at ¶¶ 12(c), 16(b).  Third, Plaintiff also claims that Ryko breached the 1994 Agreement when it edited or changed various Subject Masters, which purportedly impacted the "integrity of the works."  <u>Id</u>. at ¶ 16(c).  However, Plaintiff once again fails to specify which recordings were allegedly impermissibly edited, what changes were supposedly made, when the disputed events occurred, how such edits impacted the "integrity of the works," or what that nebulous "integrity of the works" concept actually means.  Finally, Plaintiff alleges that Ryko has failed to account and pay mechanical royalties due to the Trust pursuant to the 1994 Agreement, but does not specify the alleged compositions for which Ryko purportedly owes royalties and for what period, nor does she specify any contractual provision on which she bases her claim to the right to audit Ryko's books.  <u>Id</u>. at ¶ 16(d).

## I.  <u>PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE LANHAM ACT</u>

### A.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for a dismissal when a complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  In its most recent evaluation of proper pleading standards, the United States Supreme Court stated that for a complaint to survive a motion to dismiss, it must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).  Instead, Fed. R. Civ. P. 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  <u>Id</u>.  As the Supreme Court further explained, "a plaintiff must 'nudge [his or her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  <u>Id</u>. at 1974.  Sending a strong signal to lower courts that plaintiffs

should not be allowed to proceed to discovery "with a largely groundless claim," the Supreme Court stated that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 1966 (quotations omitted).

As the Second Circuit recently instructed, Twombly requires that a party bringing a claim satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-8 (2d Cir. 2007) (emphasis added). Fed. R. Civ. P. 8(a)(2), which must be read in conjunction with Rule 12(b)(6), also provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give "fair notice of the claim asserted" to allow defendant "to answer and prepare for trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995); see also Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996); Duncan v. AT&T Comms., Inc., 668 F.Supp. 232, 234 (S.D.N.Y. 1987) ("individual allegations . . . may be so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains . . . and, as a matter of law, [are] insufficient to state a claim.").

As discussed below, Plaintiff does not, because as a matter of law she cannot, state a claim for false advertising under the Lanham Act. As a result, Ryko's motion to dismiss the Lanham Act claim under Rule 12(b)(6) should be granted.

**B.    PLAINTIFF'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW**

In her initial Complaint, Plaintiff's Lanham Act claim was based on the Act's false designation of origin prong. Cmplt. ¶ 70. In its February 18, 2008 letter requesting a pre-motion conference, Ryko, citing <u>Dastar</u>, argued that Plaintiff's false designation of origin claim was unavailing as a matter of law, as the United States Supreme Court held that this provision of the Lanham Act "protects only 'the <u>producer</u> of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods.'" <u>Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.</u>, No. 06-14212, 2007 U.S. Dist. LEXIS 55086 (S.D.N.Y. July 27, 2007) (Berman, J.) (emphasis added) <u>quoting</u> <u>Dastar Corp.</u>, 539 U.S. at 37.

Plaintiff, presumably conceding that her false designation of origin claim was precluded by <u>Dastar</u>, amended her Lanham Act claim by simply recasting it as a claim for "false advertising." Indeed, in her Amended Complaint, Plaintiff reiterates the identical four conclusory allegations that she did in her Complaint, making only minor edits to the legal conclusion of her claim, including changing the label of "false designation of origin" to "false advertising." Each of the four allegations still fails to state a claim under the Lanham Act.

First, Plaintiff alleges that that Ryko violated the Lanham Act by "expressly and impliedly misrepresenting . . . the nature, characteristics and/or qualities of various Zappa albums" by "releasing as Zappa albums compilations consisting of Subject Masters taken from various albums created by Zappa as grand rights recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released . . . ." Am. Complt. at ¶ 74(1). As an initial matter, the exact nature of this allegation is unclear.

If Plaintiff is complaining that Zappa did not or would not have authorized the release of these unspecified compilations—as the allegation that "Zappa only intended those Subject

Masters to be exploited on the albums in which they were originally released" seems to suggest—such a claim clearly does not implicate the Lanham Act, because it does not allege any misrepresentation in advertising or promotion. The false advertising prong of the Lanham Act, Section 43(a)(1)(B) prohibits misrepresentation of the "nature, characteristics, qualities, or geographic origin of . . . goods" in advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). In light of this requirement, the Second Circuit has held that in order for a plaintiff to establish a claim for false advertising, it "must demonstrate that the statement in the challenged advertisement is false[]" and that the "deception is material in that it is likely to influence purchasing decisions." NBA v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) quoting American Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1428 n. 9 (3d Cir. 1994) (emphasis added). Therefore, any claim that plaintiff believes that Zappa did not or would not have approved any compilation created by Ryko fails to state a claim under the Lanham Act, because it does not allege that Ryko made any material misrepresentations of fact.

Alternatively, if Plaintiff is instead objecting to the release of the compilations as misrepresentative of the origin of authorship—as the allegation that the release of the compilations "as Zappa albums" seems to imply—this too is unavailing. This Court has repeatedly held that "false advertising" claims alleging misrepresentations of authorship are precluded by Dastar. See, e.g., Thomas Publ'g Co., LLC, 2007 U.S. Dist. LEXIS 55086, at *9 (granting defendant's motion to dismiss false advertising claim, noting: "If authorship were a 'characteristic[]' or 'qualit[y] of a work, then the very claim Dastar rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)."); Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) (Rakoff, J) (same). See also Contractual Obligation Prods., LLC v. AMC Networks, Inc., 2008 U.S. Dist. LEXIS 24004, 27-

28 (S.D.N.Y. Mar. 25, 2008) (Pitman, J.) (reaffirming prior ruling in the case that held that "Plaintiff . . . cannot circumvent the import of *Dastar* by recasting its creative origin claim . . . as a false advertising claim . . . ."); <u>Smith v. New Line Cinema</u>, 2004 U.S. Dist. LEXIS 18382 (S.D.N.Y. Sept. 8, 2004) (Chin, J.) (denying writer's motion to amend complaint to add a claim for false advertising based on defendant's alleged passing off of his screenplay in advertisements and promotions for a show, holding that such a cause of action was foreclosed by <u>Dastar</u>).

Second, Plaintiff alleges that Ryko engaged in false advertising when it distributed "old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko . . . ." Am. Complt. at ¶ 74(2). Such a claim does not allege any misrepresentation or false statement in advertising or promotion, as required to state a claim under the Lanham Act. Instead, Plaintiff alleges only that certain unspecified releases by Ryko in some way failed to meet some unidentified technical or artistic standards established by the Trust. These allegations simply repeat the claims made in ¶ 8(b) and ¶ 16(a) of the Amended Complaint, which are averments used to support Plaintiff's breach of contract claim. Because this claim sounds in contract and does not—even if liberally construed—plead any false representation, it fails to state a claim under the Lanham Act.

Third, Plaintiff claims that Ryko violated the Lanham Act by "distributing various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa . . ." Am. Complt. at ¶ 74(3). Again, plaintiff has not identified any purported <u>misrepresentation</u> or false statement in advertising and promotion as required, but merely reiterates Plaintiff's breach of contract claim from ¶ 8(c) and ¶ 16(b) of the Amended Complaint. Accordingly, it fails to state any claim under the Lanham Act.

Finally, in the only instance where Plaintiff attempts to specify a "misrepresentation" or falsehood, Plaintiff claims that Ryko's use of titles such as "Zappa's Greatest Hits" and "The Best of Frank Zappa" are false. Am. Complt. at ¶ 74(4). It is axiomatic that album titles suggesting that the songs embodied on the record are Zappa's "greatest" or "best" constitute non-actionable "advertising puffery," as such claims are nothing more than "a general claim of superiority . . . that is so vague that it can be understood as nothing more than a mere expression of opinion." Time Warner Cable, Inc. v. DirectTV, Inc., 497 F.3d 144, 160 (2d Cir. 2007). Such "[s]ubjective claims about products, which cannot be proven either true or false," are not actionable under the Lanham Act. Lipton v. The Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) quoting Groden v. Random House, Inc., No. 94 Civ 1074, 1994 U.S. Dist. LEXIS 11794, at *17 (S.D.N.Y. Aug. 23, 1994) (Martin, J.); accord Bose Corp. v. Linear Design Labs, Inc., 467 F.2d 304, 310-11 (2d Cir. 1972) (holding that vague statements claiming that one product is better than another are mere puffery and not actionable under the Lanham Act); Nikkal Indus., Ltd. v. Salton, Inc., 735 F. Supp. 1227, n.3 (S.D.N.Y. 1990) (Tenney, J.) (same). Such general, hyperbolic assertions are not the type of statements of fact upon which a reasonable consumer would rely in purchasing an album.

Calling an album "Zappa's Greatest Hits" is not, nor as a matter of law can it be construed as, a statement of "fact" upon which the consuming public would rely. Quite to the contrary, it is a highly subjective and laudatory term, incapable of measurement or verification. Listeners and purchasers of Zappa's albums would have different opinions as to what they consider Zappa's "greatest hits," and would not rely on album titles proclaiming the inclusion of the artist's "best" or "greatest" as objective facts when making purchasing decisions. Moreover, if it is permissible for a party to refer to its own product as better than those of its competitors, as

11

the Second Circuit held in <u>Bose</u>, it must certainly be true that a party (or its assignee, such as Ryko) can claim that some of its products are superior to its other goods.  To hold otherwise would lead to absurd results and would preclude record companies, television companies, studios, publishers or any other content owner from releasing any greatest hits albums or compilations out of fear that one fan might argue a certain work was unjustly (and falsely) excluded.

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief may be granted, and her Lanham Act claim should be dismissed in its entirety.  Because Plaintiff has already been given an opportunity to amend this claim, and has already done so, the dismissal should be <u>with</u> prejudice.

## II.    <u>PLAINTIFF SHOULD BE REQUIRED UNDER RULE 12(e) TO PROVIDE A MORE DEFINITE STATEMENT</u>

### A.    LEGAL STANDARD GOVERNING MOTIONS FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Pursuant to Fed. R. Civ. P. 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  FED. R. CIV. P. 12(e).  Interpreting the Supreme Court's recent <u>Twombly</u> decision, the Second Circuit wrote, "[i]n order to survive a motion to dismiss under the plausibility standard of [<u>Twombly</u>], a conclusory allegation concerning some elements of a plaintiff's claim might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement."  <u>Iqbal</u>, 490 F.3d at 158.

### B.   PLAINTIFF'S BREACH OF CONTRACT CLAIM IS SO VAGUE AND AMBIGUOUS THAT RYKO CAN NOT PREPARE A RESPONSE

Plaintiff's breach of contract claim is so vague and ambiguous that the Court should require Plaintiff to restate the claim with specific allegations in order for Ryko to be able to frame a proper response.  For example, Plaintiff baldly alleges that Ryko improperly released "a number of the Subject Masters in vinyl," without specifying which recordings or the purported timeframes.  Am. Cmplt. at ¶ 16(b).  Similarly, Plaintiff claims that Ryko "edit[ed] and/or otherwise chang[ed] various of the Subject Masters in ways that impacted the integrity of the works as delivered to Ryko . . . ."  Am. Cmplt. at ¶ 16(c).  However, Plaintiff fails to specify which Subject Masters were edited or changed, how they were "otherwise changed," and how such edits or changes impacted the integrity of the works.

Given the long and complicated history between Ryko and Plaintiff and the hundreds of sound recordings that could potentially be at issue, a description of the allegedly violative acts is more essential than in an average case.  Here, the parties have a contractual relationship that dates back nearly fifteen years.  After raising many similar issues in a prior lawsuit, Plaintiff executed a settlement agreement with Ryko in 1999 (the "Settlement Agreement"), in which she released Ryko from a broad range of claims similar to those pled in the Amended Complaint.  A true and correct copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Matthew Savare filed with this Motion.  Pursuant to paragraph 4(b) of the Settlement Agreement, Plaintiff agreed that Ryko could continue to exploit the Subject Masters in the manner in which they had been exploited as of the date of the 1999 settlement:

> [I]t is acknowledged that all claims based upon facts of which the Zappa Parties have knowledge based on all manner of exploitation as of the date hereof by Ryko of sound recordings featuring the performances of Frank Zappa, including names and likenesses used and methods of compilation undertaken, methods of

> advertising, art work, promotion, marketing and other exploitations are covered by the [release] provisions of paragraph 4(a) above and may continue hereafter in respect to the sound recordings as to which the same were used or undertaken prior to the date hereof, except as specifically limited or made subject to this Agreement . . . .

As but one example of how requiring a more definite statement may advance this litigation, Ryko, at this time, is unaware of any vinyl recording that was first released after Settlement Agreement.  If Plaintiff is required to identify the specific vinyl releases on which she bases her claim in ¶ 16(b), to the extent Plaintiff is currently basing such claim on vinyl recordings first released before the Settlement Agreement, Plaintiff may be deterred by Rule 11 from continuing to assert such a claim.  Also, Ryko could move immediately for summary judgment based on the clear language of the Settlement Agreement in the event Plaintiff chooses nonetheless to proceed with such a claim.

Given this long history between the parties and the dearth of facts pled in the Amended Complaint, Plaintiff should be required to provide a more definite statement of her breach of contract claim.  Under the holdings of both Twombly and Iqbal, Ryko should not have to engage in extensive discovery just to identify the works and timeframes on which Plaintiff is basing her breach of contract claim and whether the claim is time-barred, was released by the Settlement Agreement, or is precluded by laches.

In order for Ryko to properly respond to such vague assertions, Plaintiff must restate her breach of contract claim to include the following specific allegations:

- identifying which of the hundreds of Subject Masters conveyed under the 1994 Agreement are specifically at issue and which specific compilations are in issue,

- specifying the individual compilations, vinyl releases, and digital recordings on which she bases her claims and the dates of Ryko's release of the same, and

- identifying specifically which of Ryko's alleged edits of the Subject Masters impacted the integrity of the works and how they did so.

14

C.    **IN THE EVENT THE COURT DOES NOT DISMISS PLAINTIFF'S LANHAM ACT CLAIM, IT SHOULD ORDER PLAINTIFF TO REPLEAD WITH SPECIFICITY**

Likewise, in the event that the Court does not dismiss Plaintiff's Lanham Act claim, it should order Plaintiff to plead a more definite statement of facts as to that claim.  In support of her false advertising claim, Plaintiff vaguely asserts that Ryko (1) released as Zappa albums "compilations consisting of Subject Masters taken from <u>various</u> albums created by Zappa . . . "; (2) distributed "<u>old recordings</u> in new configurations and technical formats that are inferior to the Subject Masters;" (3) distributed "<u>various</u> vinyl recordings and digitally distribut[ed] <u>various</u> other recordings that do not meet the artistic and technical standards" of Zappa; and (4) released "<u>various</u> compilation albums" using certain laudatory titles.  Am. Cmplt. at ¶ 74 (emphasis added).  Such allegations are the exact species of claims that Fed. R. Civ. P. 12(e) prohibits, as they are so "vague and ambiguous that [Ryko] cannot reasonably prepare a response," particularly when, as here, any of literally hundreds of possible recordings could be at issue.

Accordingly, in the event the claim survives dismissal, Plaintiff should be required to provide a more definite statement of her Lanham Act claim, pleading the following factual allegations:

- specifying the individual compilations, vinyl releases, and digital recordings on which she bases her claims and the dates of Ryko's release of the same,

- identifying which of the hundreds of Subject Masters conveyed under the 1994 Agreement are specifically at issue and which specific compilations are in issue,

- explaining how the new configurations and technical formats are allegedly inferior to the Subject Masters that the Trust delivered to Ryko, and

- specifying how the albums sold by Ryko were different than as advertised by Ryko.

15

### D. PLAINTIFF SHOULD CONFIRM THAT SHE HAS WITHDRAWN HER COPYRIGHT INFRINGEMENT CLAIM WITH RESPECT TO ALBUM ARTWORK, OR, IN THE ALTERNATIVE, BE ORDERED TO PROVIDE A MORE DEFINITE STATEMENT

Finally, although Plaintiff withdrew the Seventh Count of her original Complaint, which alleged copyright infringement of unspecified album artwork, ¶ 8(h) of the Amended Complaint repeats Plaintiff's vague allegations that Ryko has somehow improperly modified unspecified album artwork and translated unspecified lyrics into foreign languages.  Accordingly, Plaintiff should either confirm that this was a drafting oversight and that she is not asserting any claims with respect to such artwork and translations, or if such claims are still in the case, she should be required to provide greater specificity as to the specific album artwork to which she is referring, which Zappa song lyrics she contends were translated into different languages, the timeframes for these alleged infringements, and the specific countries in which the disputed album artwork was sold.

Because the Second and Seventh Claims of the Amended Complaint fail to provide the requisite level of detail and specificity, Ryko's motion for a more definite statement should be granted pursuant to Fed. R. Civ. P. 12(e).  Similarly, if Plaintiff is still asserting any claim with respect to the album artwork and translations, she should be required to provide a more definite statement as to that claim.

# <u>CONCLUSION</u>

For the reasons stated above, the Court should (1) dismiss Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Rule 12(b)(6) with prejudice, and (2) grant Ryko's motion for a more definite statement as requested above.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

Attorneys for Defendant Rykodisc, Inc.

By: <u>//s// Stephen R. Buckingham</u>
     Stephen R. Buckingham
     Matthew Savare

Dated: June 17, 2008

Stephen R. Buckingham
Matthew Savare
**LOWENSTEIN SANDLER P.C.**
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

**UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>                    Plaintiff,<br><br>v.<br><br>RYKODISC, INC.,<br><br>                    Defendant. | 08-CV-00396 (WHP)<br><br>**NOTICE OF MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 8(a), 12(b)(6), and 12(e)** |

TO:    Ira S. Sacks, Esq.
       DREIER LLP
       499 Park Avenue
       New York, NY 10022

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law, the annexed Declaration of Matthew Savare with attached exhibit, the proposed form of Order, and all pleadings and proceedings heretofore had herein, the undersigned counsel for Defendant Rykodisc, Inc. move before this Court, before the Honorable William H. Pauley III, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 2210, Courtroom 11D, New York, New York, at a date and time to be determined in accordance with Judge Pauley's rules, under Fed. R. Civ. P.

8(a) and 12(b)(6), for an Order dismissing with prejudice Plaintiff's Lanham Act claim (Seventh

Claim), and, in the alternative, for an Order directing Plaintiff to provide a more definite

statement for the Lanham Act claim pursuant to Fed. R. Civ. P. 12(e), and for an Order directing

Plaintiff to provide a more definite statement for the breach of contract claim (Second Claim)

pursuant to Fed. R. Civ. P. 12(e).

                              Respectfully submitted,

                              **LOWENSTEIN SANDLER P.C.**
                              65 Livingston Avenue
                              Roseland, New Jersey  07068
                              (973) 597-2500

                              Attorneys for Defendant Rykodisc, Inc.


                              By: //s// Stephen R. Buckingham
                                   Stephen R. Buckingham
                                   Matthew Savare

Dated June 17, 2008

-2-

Stephen R. Buckingham
Matthew Savare
**LOWENSTEIN SANDLER P.C.**
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust, | 08-CV-00396 (WHP) |
| Plaintiff, | **ORDER** |
| v. | |
| RYKODISC, INC., | |
| Defendant. | |

This matter having been brought before this Court upon Motion by Lowenstein Sandler P.C., attorneys for Defendant, Rykodisc, Inc. ("Rykodisc"), for an Order (i) dismissing with prejudice Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) and (ii) directing Plaintiff to provide a more definite statement of Plaintiff's breach of contract claim (Second Claim); and the Court, having considered the papers before it, heard oral argument thereon, and good cause having been shown:

**IT IS** on this _____ day of _____, 2008;

**ORDERED** that Rykodisc's Motion to dismiss Plaintiff's Lanham Act claim (Seventh Claim), pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure be and hereby is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Lanham Act claim (Seventh Claim) is hereby dismissed, with prejudice.

**IT IS FURTHER ORDERED** that Rykodisc's Motion for a more definite statement as to Plaintiff's breach of contract claim (Second Claim), pursuant to Rule 12(e) of the Federal Rules of Civil Procedure be and hereby is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Second Amended complaint with a more definite statement within 10 days after notice of this Order, which identifies: (i) the specific Subject Masters conveyed under the 1994 Agreement and the specific compilations on which Plaintiff bases her breach of contract claim, (ii) the specific compilations, vinyl releases, and digital recordings on which Plaintiff bases her breach of contract claim and the dates of Ryko's release of the same, and (iii) specifically which of Ryko's alleged edits of the Subject Masters impacted the integrity of the works and how they did so.

_____
Honorable William H. Pauley III, U.S.D.J.

Stephen R. Buckingham
Matthew Savare
**LOWENSTEIN SANDLER P.C.**
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>               Plaintiff,<br><br>v.<br><br>RYKODISC, INC.,<br><br>               Defendant. | 08-CV-00396 (WHP)<br><br>**DECLARATION OF<br>MATTHEW SAVARE, ESQ.** |

**MATTHEW SAVARE**, being of full age, does hereby certify as follows:

1. I am an attorney with Lowenstein Sandler, P.C., attorneys for the Defendant, Rykodisc, Inc. in the above-captioned matter. I am admitted to practice in this Court.

2. I am familiar with the facts and circumstances as set forth herein and make this Declaration in support of the instant motion to dismiss with prejudice Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), and, in the alternative, for a more definite statement for the Lanham Act claim pursuant to Fed. R. Civ. P. 12(e), and for a more definite statement for the breach of contract claim (Second Claim) pursuant to Fed. R. Civ. P. 12(e).

3.  Annexed as Exhibit A is a true and accurate copy of the Settlement Agreement, dated as of March 5, 1999, by and between Plaintiff, individually and as a trustee of the Zappa Family Trust, and Defendant.  For the convenience of the Court, I have not attached the lengthy schedules, as they are not relevant to the instant motion.  Should the Court request these schedules, I will promptly submit them to the Court.

I certify that all of the foregoing statements made by me are true, and I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _Matthew Savare_____

Matthew Savare

Dated June 17, 2008

-2-

**<u>EXHIBIT A</u>**

SETTLEMENT AGREEMENT made as of March 5, 1999, by and between Adelaide Gail Zappa, individually and as trustee of the Zappa Family Trust ("The Trust"), on the one hand (jointly and individually "Zappa Part(y)(ies)"), and Rykodisc, Inc., on the other hand ("Ryko").

Reference is made to the following:

The agreement ("Purchase Agreement") dated as of October 6, 1994 between the parties (et alia) pursuant to which Ryko purchased certain master recordings ("Ryko/Zappa Recordings" or "Subject Masters"") of Frank Zappa ("Artist"). The terms used herein if not specifically defined herein shall have the same meanings as such terms have under the Purchase Agreement.

The escrow agreement ("Escrow Agreement") executed by the parties in connection with the Purchase Agreement pursuant to which the Chase Manhattan Bank of Connecticut, N.A. ("Escrow Holder") held various sums which were withheld from the purchase price otherwise payable to the Zappa Parties under the Purchase Agreement and placed in escrow against obligations and liabilities of the Zappa Parties.

The suit (the "Action") commenced by Zappa Parties against Ryko in the U. S. District Court, Southern District of New York (the "Court") (97 Civ. 9459), and the claims and counterclaims of the parties against each other in the Action ("Claims")-

WHEREAS, various disputes have arisen between the parties relating to the subject matter of the Purchase Agreement and distribution of the funds being held by the Court ("Escrow Funds"), and

WHEREAS the parties wish to settle their disputes, including the issues arising out of the Action and the Claims therein,

NOW, THEREFORE, in consideration of the foregoing and other good and

valuable consideration, the parties have agreed to resolve their disputes and dismiss their Claims in the Action with prejudice, and the parties hereby agree as follows:

1.    Payment of the Escrow Funds will be made to each of the parties as follows:  $250,000 to Ryko and the balance of the Escrow Fund less costs and expenses deductible therefrom by the Court, to the Zappa Parties (payment to the Zappa Parties shall be to and in the name of The Trust).  The parties hereby agree to direct the Court to issue such payments to each of them as aforesaid and agree to execute such additional documents as reasonably necessary to accomplish the foregoing.

2.    a.    Ryko, on its behalf and on behalf of its successors and assigns, and its and their present and former shareholders, officers and directors, hereby releases the Zappa Parties, their successors, employees, principals, officers and stockholders, from all actions, causes of action, suits, claims and demands ("causes of action") interposed in the Action and any other claims or matters based upon facts of which Ryko has knowledge, which causes of action Ryko ever had or now has from the beginning of the world to the date of this release.  Nothing contained herein shall be deemed a limitation of Ryko's right to audit the Zappa parties to the extent allowed under the Purchase Agreement.

b.    To the extent necessary to effectuate the assignment to Ryko of the Agreement between The Trust and Music For Nations, ("MFN Agreement"), The Trust agrees to reasonably cooperate with Ryko in respect to its pending audit claims against Music For Nations, including, but not limited to, if requested by Ryko, to institute and prosecute litigation through counsel selected by Ryko, furnishing such information as Ryko may reasonably require, cooperating in connection with pre-trial discovery, providing witnesses for deposition and/or trial as reasonably requested by Ryko; provided that The Trust shall not be obligated to incur any costs or expenses in respect thereto.  Ryko agrees to indemnify and hold harmless The Trust and The Zappa Parties and each of them from and against any and all claims, demands, actions, causes of action, damages, costs and expenses, (including without limitation reasonable attorneys fees and court costs), liabilities and sums of money arising out of, relating to or concerning

Wednesday March 3, 1999 4:58 pm        -2-
F:\NWPDOCS\11116\200405\19335V.15

any and all claims of Ryko against Music For Nations in respect to the validity or enforceability of the Assignment and Extension Agreement between MFN and The Trust dated September ___, 1994 (herein "MFN Assignment Agreement"). With respect to the foregoing, The Trust agrees to accept representation by counsel selected by Ryko (if Ryko so elects), in which case Ryko shall not be obligated to pay the attorneys fees of any other counsel. Ryko shall be responsible for any attorneys fees, costs or sanctions awarded against The Trust as a result of any such action, unless and to the extent that, such award is due to misconduct by The Trust. The Trust irrevocably agrees that it shall waive any conflict of interest with respect to any counsel selected or furnished by Ryko under this paragraph 2.b., provided, however, that such counsel may not disclose or use against The Trust any privileged information furnished by The Trust.

c.    The Trust hereby represents and warrants that there are no other agreements between the Zappa Parties and MFN other than the MFN Agreement and other than the MFN Assignment Amendment.

3.    The parties, simultaneously with entering into this Agreement, and as a material condition hereto, will enter into the trademark license agreement ("Trademark Agreement") annexed hereto as Exhibit A.

4.    a.    The Zappa Parties, on their behalf and on behalf of their successors and assigns, hereby release Ryko, its successors, parent, principals, employees, officers and stockholders, from all actions, causes of action, suits, claims and demands ("causes of action") interposed in the Action and any other claims or matters based upon facts of which the Zappa Parties have knowledge, which causes of action the Zappa Parties ever had or now has from the beginning of the world to the date of this release, with the exception of any claim based upon the release of a laser disc compilation in Japan entitled "Psychomania" embodying a Frank Zappa video of "Son of Suzy Creamcheese" from "Absolutely Free" LP and possible claims based upon release of "Bobby Brown" on audiovisual devices or for broadcast, it being understood that reference to such possible claims does not constitute acknowledgment by Ryko that it is involved in the use of

Wednesday March 3, 1999 4:58 pm        -3-
F:\NWPDOCS\11116\200405\19335V.15

such material or in any way responsible to the Zappa Parties therefor. Nothing contained herein shall be deemed a limitation of the Zappa Parties rights to audit in respect to mechanical royalties payable by Ryko.

b.    In particular, without limiting Ryko's other rights, it is acknowledged that all claims based upon facts of which the Zappa Parties have knowledge based on all manner of exploitation as of the date hereof by Ryko of sound recordings featuring the performances of Frank Zappa, including names and likenesses used and methods of compilation undertaken, methods of advertising, art work, promotion, marketing and other exploitations are covered by the provisions of paragraph 4(a) above and may continue hereafter in respect to the sound recordings as to which the same were used or undertaken prior to the date hereof, except as specifically limited or made subject to this Agreement, including without limitation the following:

i.    The manufacture, distribution, advertising and sale of the Soundtrack LP "200 Motels" shall be governed by a separate agreement between The Trust and MGM/UA (which the Trust warrants is attached hereto as Exhibit B). Ryko hereby agrees to be bound to the provisions of paragraphs 2, 4, 6, 7 and 8 as they pertain to Ryko, except with regard to the mechanical royalty rate set forth in paragraph 8 if the LP becomes a Subject Master under the Purchase Agreement at which point the mechanical rate shall be governed by the Purchase Agreement;

ii.    All existing art work used worldwide will be corrected by Ryko when ready to be reprinted, to include Frank Zappa as the producer of all Subject Masters (except "Freak Out" as to which the credit shall read "Produced by Tom Wilson with Frank Zappa") and the Art Director of all Album Cover Art work, as reasonably directed by The Trust in accordance with the standards of the existing art work as created or approved by Frank Zappa, and to delete the "FZ" trademark from any albums and compilations not produced by Frank Zappa, including without limitation, "Strictly Genteel";

Wednesday March 3, 1999 4:58 pm        -4-
F:\NWPDOCS\11116\200405\19335V.15

iii. The printed Ryko catalog booklets of Ryko/Zappa Recordings will be corrected when ready to be reprinted to eliminate the attribution to Cal Shenkel of the quote "He Made Us Do It" and the reference to "Nifty, Tough and Bitchin'; Ryko also agrees to delete "and a variety of Cool FZ related Stuff";

iv. The Album "Strictly Genteel" shall not be released or exploited in Mainland China;

v. Any compilation or master not compiled and created by Frank Zappa (i.e. those not delivered by The Trust as complete albums of Subject Masters under the Purchase Agreement) shall be clearly so designated with a legend as follows: "Each track was produced by Frank Zappa but the compilation was not prepared by Frank Zappa", or otherwise as mutually approved, and the art work of such compilations and masters now in release shall be corrected by Ryko, upon reprinting, to include such legend;

vi. Ryko agrees not to use any photographs of Frank Zappa (other than those previously delivered to Ryko by the Zappa Parties or otherwise previously approved by them for the same purpose for which Ryko intends to use such photographs, or as otherwise subject to the Purchase Agreement) unless it shall first reasonably cooperate with the Zappa Parties to acquire for the Zappa Parties all rights from photographers in and to the worldwide copyright or other rights of use as requested by The Trust in all photos of Frank Zappa hereafter intended to be used by Ryko for cover art work, advertising or promotion, as well as from all persons or entities that have contributed to any alterations or modifications to the Cover Art, subject to Ryko's retaining the rights to use the same in accordance with the Purchase Agreement. Ryko shall secure from all persons or entities employed by it or commissioned by it to make such alterations or modifications, an assignment to The Trust of all rights in and in such modifications and alterations. The Parties will share the cost as mutually agreed of acquiring such copyrights and other rights in proportion to their respective rights to

utilize the same. The Zappa Parties shall at their expense have the exclusive right to the file and obtain Copyright Registrations for all works which contain such alterations and modifications in the name of The Trust as derivative works of the prior Cover Art. The Trust agrees subject to the Purchase Agreement to reasonably assist Ryko without any cost to the Zappa Parties, except as set forth above, in obtaining rights to a reasonable number of such photographs which Ryko may locate from time to time in connection with the sale, exploitation, advertising and promotion of Ryko/Zappa Recordings;

        vii.    "Lumpy Gravy" shall be corrected by removing the PQ names from the art work and will be replaced with "Part I and Part II";

        c.    The Zappa Parties agree that no further sums are owed by Ryko to the Zappa Parties or their affiliates in connection with such materials delivered by them or services rendered by them to Ryko, except as otherwise provided herein.

        d.    Ryko shall within 30 days after execution hereof return to The Trust all original art work materials previously delivered to Ryko, together with a copy of all materials created by Ryko which were copyrighted to The Trust.

        5.    At Ryko's request, the Zappa Parties agree hereafter to produce for exploitation by Ryko, 20 bit masters from the master recordings listed on Schedule B annexed hereto for release in connection with Ryko's AU20 series, consistent with the same work previously completed with respect to the albums called "Apostrophe"('), "One Size Fits All", "Tinseltown Rebellion" and "You Are What You Is". Ryko shall reimburse the Zappa Parties for all its costs and expenses of such preparation, pursuant to a reasonable budget for each album mutually approved in advance by the Parties. Said amount shall be paid by Ryko half on commencement of the work and half upon delivery to it of such materials. On execution hereof, Ryko shall pay The Trust the sum of $5,000 for "Apostrophe" and "One Size Fits All." Should Ryko hereafter release "Tinseltown Rebellion" or "You Are What You Is" in the AU 20 format, it shall pay The Trust the sum of $2,500 for each such LP so released, upon its release in AU20 format.

Schedule B also contains the delivery schedule for such materials; however, if with respect to a particular album the underlying masters needed to perform such work are not in The Trust's possession nor available to the Zappa Parties, or are not viable or technically suitable for these purposes, then the Zappa Parties will so advise Ryko and (unless Ryko requests otherwise) proceed to the next album on Schedule B in replacement thereof (and the date of delivery of each subsequent album on such list shall be moved forward consecutively).

6.     Schedules C and F contain a list of recordings which Ryko wishes to release and exploit. The Zappa Parties contend that they own some or all of these recordings and that the same are not Subject Masters under the Purchase Agreement, whereas Ryko contends to the contrary. Without prejudice to either party's position, and for purposes of settlement only, the Zappa Parties agree, upon mutual agreement as to a release schedule, and with at least six (6) months prior notice in writing, to prepare masters suitable for use of Ryko of the Schedule C and F recordings for release and exploitation by Ryko, and that such Masters shall hereafter be deemed Subject Masters under the Purchase Agreement  The Schedule F Masters shall continue to remain subject to the provisions of Paragraph 12.5 of the Purchase Agreement.

If The Trust cannot identify the appropriate recordings from Schedule C itself, Ryko shall, upon request of The Trust, supply a tape copy to the Zappa Parties of each of the Schedule C recordings for identification purposes. To the extent the recording requested from Schedule C is identical to the final version of such recording as embodied on a Subject Master already delivered by the Zappa Parties to Ryko, Ryko shall use such Subject Master. By way of clarification, for a recording to be "identical" it must contain all the same fixations of sound and also be in the same technical format and quality: e.g., a different mix of the same recording would not be identical. Otherwise, The Trust will prepare the Master from its vault, if available, and technically suitable and viable. If the Zappa Parties are unable to locate a viable or technically suitable recording from which to prepare a master, The Trust will prepare a master from the best version it or Ryko can obtain as mutually agreed. Ryko shall pay or reimburse

The Trust for all costs and expenses of The Trust in connection with such work, pursuant to a reasonable budget mutually approved in advance by the parties.

All records embodying the Schedule C recordings shall bear a legend as follows: "Each track was produced by Frank Zappa but the compilation was not prepared by Frank Zappa" or as otherwise may be mutually agreed upon, clearly indicating that Frank Zappa did not compile the record and that the recording embodied on the record was not the final approved version of Frank Zappa.

7.    Schedule D lists recordings which Ryko wishes to release and exploit which would require the transfer of the original mix to digital format. The Zappa Parties contend they own these recordings and that the same are not Subject Masters under the Purchase Agreement, whereas Ryko contends to the contrary. Without prejudice to either party's position, and for purposes of settlement only, the Zappa Parties agree, upon mutual agreement as to release date, and with at least six (6) months prior written notice, to transfer the original recordings to digital format and deliver same to Ryko, provided that the original recordings are available, technically suitable and viable for being so transferred. Ryko shall pay or reimburse The Trust for all costs and expenses of The Trust in creating the digital master of the original version pursuant to a reasonable budget, mutually approved in advance by the parties.

The Schedule D recordings may only be used by Ryko subject to the following restrictions:

a.    The Schedule D recordings constituting one Album as originally released may be released and otherwise exploited by Ryko only as part of that same Album and not separately;

b.    The art work as used on the original release of such Album embodying Schedule D recordings must be used for Ryko's re-release as approved by The Trust as to accuracy of the textual material and any changes in the art work or the

text, or either;

c.    The Ryko release of Schedule D recordings must bear a legend that the Ryko release is not the final Frank Zappa approved 1630 digital master of the Album;

d.    The Ryko release of an album embodying Schedule D recordings may continue to be manufactured, distributed and sold in any territory only so long as Ryko or its licensees also maintains in its catalog in the same territory, records embodying the final Frank Zappa approved 1630 digital masters of the same album notwithstanding the fact that the individual titles in these final Frank Zappa approved albums may be individually available on compilations.

e.    Upon the occurrence of both of the events specified in subsections (A) and (B) of paragraph 2.2(e) of the Purchase Agreement, Ryko's rights to exploit such Schedule D Recordings shall cease subject to its right to sell off its remaining inventory of such records.  The Zappa Parties shall have no right to use or exploit such Schedule D Recordings except as otherwise provided in the Purchase Agreement.

8.    Upon execution hereof, Ryko will execute the document annexed hereto as Schedule G-1, to assist the Zappa Parties with their attempt to receive a refund of tax withheld in the United Kingdom on mechanical copyright royalties.  In addition, Ryko will deliver an original signed copy of the letters attached hereto as Schedules G-2 and G-3 upon execution of this agreement.

9.    a.    A promotional video reel was previously compiled by Ryko, as more fully described on Schedule H annexed hereto.  It is agreed that clips from such video or portions thereof may be utilized by Ryko for broadcast on television only for the purpose of promoting the sale by Ryko of Ryko/Zappa Recordings, subject to Ryko's placement by burning it on the videotape itself and by affixing a sticker on the packaging of all copies distributed to third parties for television broadcast a copyright

notice as follows: "Copyright 1998 by Appointment to Her Majesty the Scarlet Pimpernel" and the following legend, indicating the limited use of such materials:

> "Materials herein cannot be broadcast other than in connection with the promotion of recordings of Frank Zappa released by Rykodisc. In addition, these materials may not be copied, edited or altered except solely to shorten or extract excerpts therefrom for such broadcast purposes, unless written consent is obtained from Rykodisc and the Zappa Family Trust." No use shall convey or imply a copyright interest to the materials herein. Any other use requires the express written consent of the Zappa Family Trust, P.O. Box 5265, North Hollywood, CA 91616; telephone (818) 755-3700. Unauthorized duplication is a violation of applicable laws. All rights reserved."

Ryko shall advise The Trust in writing as to each recipient of a copy of the promotional video reel and shall send a cover letter with each copy of the reel calling the recipient's attention to the above-mentioned restrictions.

b.       In respect to the use of videos for in store or other retail promotional purposes, Ryko shall not use more than four videos on each reel supplied for such purposes. Such videos may be utilized by Ryko for exhibit in retail outlets for the purpose of promoting the sale by Ryko of Ryko/Zappa Recordings, subject to Ryko's placement by burning it on the videotape itself and by affixing a sticker on the packaging of all copies distributed to third parties for exhibition, a copyright notice as follows: Copyright 1998 by Appointment to Her Majesty the Scarlet Pimpernel" and the following legend, indicating the limited use of such materials:

> "Materials herein cannot be exhibited other than in connection with the promotion of recordings of Frank Zappa released by Rykodisc. In addition, these materials may not be copied, edited or altered unless written

Wednesday March 3, 1999 4:58 pm          -10-
F:\NWPDOCS\11116\200405\19335V.15

consent is obtained from Rykodisc and the Zappa Family Trust." No use shall convey or imply a Copyright interest to the materials herein. Any other use requires the express written consent of the Zappa Family Trust, . P.O. Box 5265, North Hollywood, CA .91616; telephone (818) 755-3700. Unauthorized duplication is a violation of applicable laws. All rights reserved."

Ryko shall advise The Trust in writing as to each recipient of a copy of all videos, and shall send a cover letter with each copy of the reel calling the recipient's attention to the above-mentioned restrictions.

10.    The Action will be dismissed with prejudice , and all Claims withdrawn, and each party will execute all documents reasonably necessary for the purposes of the foregoing, including without limitation the stipulations annexed hereto and instructions to the Court for the issuance of payments as set forth in paragraph 1 above. In addition, the Parties will execute simultaneously with the execution of this Agreement, a stipulation in the form of Exhibit C annexed hereto in connection with the Action.

11.    Subject to the provisions of Paragraph 12 below, this agreement contains the entire agreement of the parties with respect to the subject matter hereof, supersedes any and all prior agreements relating thereto, and may not be modified or amended except by a writing signed by the party to be charged.

12.    Except as expressly modified herein, the provisions of the Purchase Agreement remain in full force and effect; and the terms of the Purchase Agreement (including without limitation notices, choice of law and venue, waivers, construction etc.) shall apply to this settlement agreement as well.

13.    Execution by the Zappa Parties of this agreement and the releases contained herein shall be deemed on behalf of the successors of Pumpko Industries, Ltd., (dissolved), Moon Unit Zappa, Dweezil Zappa, Ahmet Zappa and Diva Zappa (who for

Wednesday March 3, 1999 4:58 pm      -11-
F:\NWPDOCS\11116\200405\19335V.15

such purposes shall be deemed "Zappa Parties"); and The Trust shall indemnify and hold Ryko harmless from any damages, claims or expenses (including reasonable attorney fees) arising from any claims, suits or actions by such other Zappa Parties (or on their behalf) relating to The Trust's authority to enter into this Agreement on their behalf.

14.    The Zappa Parties and Ryko warrant, represent and agree with each other that they are empowered to enter into this agreement, that they have not transferred to any other parties their rights with respect to the subject matter hereof, and that no other party has the right to bring the Claims heretofore brought by each of the Parties in the Action.

15.    The Agreement shall be binding upon and inure to the benefit of the parties hereto and of their respective parent, subsidiary and related persons, firms and corporations, and their respective successors, assigns, licensees, sublicensees, distributors, agents, employees, shareholders, partners, agents and officers.

16.    Except as otherwise expressly provided herein, nothing contained herein shall require Ryko to remove or destroy its product in inventory existing as of the date hereof, and Ryko may sell off the same.  Ryko shall not be required to cause any changes to be made by licensees if it cannot legally compel them to do so, but will do so at such time, if ever, as it can require them to do so.

17.    For settlement purposes only, Ryko acknowledges that the Masters listed on Schedule E hereto are Excluded Masters under the Purchase Agreement.

18.    Notwithstanding anything to the contrary contained in the foregoing Agreement, and except as expressly provided in this paragraph 18, the parties do not intend the releases contained herein or other provisions hereof to release, affect, compromise or otherwise prejudice their positions in respect to the following:

(a)    The LP "Lather" released by Ryko as to which the Zappa Parties claim ownership and reversion rights at the end of the Hold Back Period as

defined in the Purchase Agreement, in certain master recordings embodied thereon, and Ryko contests such ownership and reversion rights;

(b)    LP's such as "Strictly Genteel" created or released (other than "Strictly Genteel") after the date hereof which the Zappa Parties claim is violative of their rights both in content and title and Ryko contends to the contrary;

(c)    Ryko's right to translate lyrics and art work liner notes without the specific permission of the Zappa Parties, which the Zappa Parties contend is unlawful and Ryko contends to the contrary;

(d)    Ryko's right to use any intellectual property of Frank Zappa embodied in his writings, interviews or other statements, oral or written without the prior approval of The Trust, except as granted in the Purchase Agreement; and

(e)    The right to compile parts of classical works with parts of other classical works after the date hereof such as was done on the LP "Strictly Genteel," which the Zappa Parties contend is violative of their rights and Ryko contends to the contrary.

(f)    Ryko's rights under the Purchase Agreement to delivery of Subject Masters as defined therein.

Accordingly, while the parties intend that the releases in paragraphs 2 and 4 above shall include claims based on the foregoing arising out of acts or omissions occurring prior to the date hereof interposed in the Action and any other claims or matters based upon facts known to the releasing party, it is not their intention to waive, release or prejudice any claims arising after the date hereof, whether of the same or a similar nature, or any defenses thereto.

19.    This Agreement may be executed in Counterparts, and each such Counterpart shall be deemed an original hereof.  Accordingly, this Agreement shall become binding upon executing of separate originals by the Parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first above written.

RYKODISC INC.


By_____


Adelaide Gail Zappa, individually and as
sole trustee of the Zappa Family Trust, and
on behalf of all Zappa Parties.

Friday March 5, 1999 4:59 pm          -14-
F:\NWPDOCS\11116\200405\19335V.15

Stephen R. Buckingham
Matthew Savare
**LOWENSTEIN SANDLER P.C.**
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.


### UNITED STATE DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust, | 08-CV-00396 (WHP) |
| Plaintiff, | |
| v. | |
| RYKODISC, INC., | |
| Defendant. | |


### DEFENDANT'S RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, the undersigned counsel for Defendant, Rykodisc, Inc.

("Rykodisc"), certifies that:

1.  Warner Music Group Corp. is the ultimate parent corporation of Rykodisc.

2.  Warner Music Group Corp. is a publicly-traded company.


By: //s// Matthew Savare
Matthew Savare

Dated:  June 17, 2008

Stephen R. Buckingham
Matthew Savare
**LOWENSTEIN SANDLER P.C.**
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

**UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust, | 08-CV-00396 (WHP) |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| RYKODISC, INC., | |
| Defendant. | |

I, Matthew Savare, do hereby certify that:

1.  On June 17, 2008, I electronically filed Defendant's Motion to dismiss with prejudice Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), and, in the alternative, for a more definite statement for the Lanham Act claim pursuant to Fed. R. Civ. P. 12(e), and for a more definite statement for the breach of contract claim (Second Claim) pursuant to Fed. R. Civ. P. 12(e), with a supporting Declaration of Matthew Savare with exhibit, memorandum of law, a proposed form of Order, and Defendant's Rule 7.1 Disclosure Statement upon the Clerk of the Court, via ECF.

2.  On June 17, 2008, I served two true and correct courtesy copies of the Motion, with a supporting Declaration of Matthew Savare with exhibit, memorandum of law, a proposed form

17152/12

of Order, and Defendant's Rule 7.1 Disclosure Statement upon the chambers of the Honorable

William H. Pauley III, U.S.D.J., via Federal Express.

3.    On June 17, 2008, I served a true and correct copy of the Motion, with a supporting

Declaration of Matthew Savare with exhibit, memorandum of law, a proposed form of Order,

and Defendant's Rule 7.1 Disclosure Statement upon the following counsel, via Federal Express:

> Ira S. Sacks, Esq.
> DREIER LLP
> 499 Park Avenue
> New York, NY 10022

> By: //s// Matthew Savare
>      Matthew Savare

Dated June 17, 2008