Stanton L. Stein
Mark D. Passin
DREIER STEIN KAHAN BROWNE WOODS GEORGE LLP
1620 26th Street
6th Floor, North Tower
Santa Monica, California 90404
(310) 828-9050

and

Ira S. Sacks
Robert J. Grand
DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>        Plaintiff,<br><br>vs.<br><br>RYKODISC, INC.<br><br>        Defendant. | Civil Action No. 08-396 (WHP)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF FACTS ...........................................................................3

III.   PLAINTIFF HAS STATED A CLAIM UNDER THE LANHAM ACT .........................5

    A.    Legal Standard ....................................................................................5

    B.    Plaintiff's Lanham Act Claim Is Properly Pled ..........................................7

IV.    PLAINTIFF SHOULD NOT BE REQUIRED TO PROVIDE A MORE
    DEFINITE STATEMENT........................................................................14

    A.    Legal Standard ..................................................................................14

    B.    Plaintiff's Breach of Contract Claim Is Properly and Sufficiently Pled................15

    C.    Plaintiff's Lanham Act Claim Is Properly and Sufficiently Pled ..........................18

    D.    Plaintiff's Claims Concerning the Album Artwork ...............................................19

V.     CONCLUSION...........................................................................................20

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*ATSI Commc'ns, Inc.  v. Shaar Fund, Ltd*
    493 F.3d 87 (2007)...................................................................................6

*Beery v. Hitachi Home Electronics (America), Inc.,*
    157 F.R.D. 477 (C.D. Cal. 1993) ...............................................................15

*Bell Atl. Corp. v. Twombly,*
    127 S.Ct. 1955 (2007).........................................................................6, 7, 16

*Benson v Paul Winley Record Sales Corp.,*
    452 F. Supp 516 (S.D.N.Y. 1978) ............................................................10

*Blank v. Pollack,*
    916 F.Supp. 165 (N.D.N.Y. 1996).............................................................14

*Boaxall v. Sequoia Union high School Dist.,*
    464 F.Supp. 1104 (N.D. Cal. 1979) ..........................................................15

*Caraveo v. Nielsen Media Research, Inc.,*
    2002 WL 530993, at *2 (S.D.N.Y. 2002)...................................................15

*Cathedral Art Metal Co., Inc. v. F.A.F., Inc.,*
    2006 WL 2583584 (D.R.I. Sept. 6, 2006)...................................................10

*CBS, Inc. v Springboard International Records,*
    429 F. Supp 563 (S.D.N.Y. 1976) .......................................................10, 11

*Clauson v. Eslinger,*
    455 F.Supp. 2d 256 (S.D.N.Y. 2006) ........................................................10

*Coastal Communications Corp. v. Adams/Laux Co., Inc.,*
    1996 WL 546880 (S.D.N.Y., Sept. 26, 1996)...........................................13

*Conley v. Gibson,*
    355 U.S. 41 (1957)........................................................................................6

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)....................................................................................2, 9

*Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO,*
    1994 WL 478495, at *1 (S.D.N.Y. Sept. 1, 1994)....................................15

*Elektra Entertainment Group, Inc. v. UMG Recordings, Inc.,*
    2008 WL 857527, at *3 (S.D.N.Y. March 31, 2008) ............................6, 16

*Elevator Antitrust Litig.,*
    2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007) .......................................6

*Fisher v. Building Serv. 32B-J Health Fund,*
    2001 WL 1586689, at *1 (S.D.N.Y. 2001).................................................15

*Foman v. Davis,*
    371 U.S. 178 (1962)...................................................................................6, 7

*FRA S.p.A v. Surg-O-Flex of America,*
    415 F.Supp. 421 (S.D.N.Y. 1976) .........................................................15, 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

Gilligan v. Jamco Develop. Corp.,
   108 F.3d 246 (9th Cir. 1997) ..................................................................................6

Grondin v. Rossington,
   690 F.Supp. 200 (S.D.N.Y. 1988) ........................................................................8

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007) .........................................................................6, 7, 16

Leepson v. Allan Riley Co., Inc.,
   2006 WL 2135806, *6 (S.D.N.Y. July 31, 2006) ...........................................14, 19

Lipton v. Nature Co.,
   71 F.3d 464 (2d Cir. 1995) ..................................................................................13

Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,
   2005 WL 1500893, *2 (S.D.N.Y. Jun. 24, 2005) ...........................................14, 17

NBA v. Motorola, Inc.,
   105 F.3d 841 (2d Cir. 1997) ................................................................................11

Pell v. Pall Corp.,
   2007 WL 2445217, *2 (E.D.N.Y., August 20, 2007) ...........................................18

PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,
   818 F.2d 266 (2d Cir. 1987) .............................................................................8, 11

Rahman v. Johanns,
   501 F.Supp. 2d 8 (D.D.C. 2007) .........................................................................15

Ross v. Bank of America,
   524 F.3d 216 (2d Cir. 2008) ..................................................................................7

Snyder v. Pasack Emerg. Servs.,
   303 F.3d 271 (3d Cir. 2002) ..................................................................................7

The Proctor & Gamble Co. v. Haugen,
   222 F.3d 1271 (10th Cir. 2000) ............................................................................8

Time Warner Cable, Inc. v. DirectTV, Inc.,
   497 F.3d 144 (2d Cir. 2007) ...........................................................................13, 14

Toro Co. v. Textron,
   499 F.Supp. 352 (D. Del. 1980) ..........................................................................12

U-Haul International, Inc. v. Jartan, Inc.,
   522 F.Supp. 1238 (D. Ariz. 1981) aff'd, 681 F.2d 1159 (9th Cir. 1982) ..............12

United States v. Redwood City,
   640 F.2d 963 (9th Cir. 1981) .................................................................................7

# FEDERAL STATUTES

15 United States Code § 1125(a) ....................................................................................7

15 United States Code § 1125(a)(1)(B) ...........................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

Trademark Act of 1946 ("Lanham Act") § 43(a) ...............................................................5, 11, 12

Trademark Act of 1946 ("Lanham Act") § 43(a)(1)(A) .......................................................................9

Trademark Act of 1946 ("Lanham Act") § 43(a)(1)(B) ...............................................4, 7, 10, 14

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6)......................................................................3, 5, 6, 7

Federal Rule of Civil Procedure 12(e)........................................................3, 5, 14, 15, 16, 17, 18

Federal Rule of Civil Procedure 15(a) .......................................................................................7

Federal Rule of Civil Procedure 8(a).........................................................................................5

Federal Rule of Civil Procedure 8(a)(2) .....................................................................................6

Plaintiff Adelaide Gail Zappa ("Gail Zappa" or "Plaintiff"), individually and as sole trustee of The Zappa Family Trust u/t/d November 15, 1990, a California revocable trust (the "Trust"), respectfully submits this memorandum of law in opposition to defendant Rykodisc, Inc.'s ("Ryko" or "Defendant") motion to dismiss Plaintiff's Lanham Act claim (Seventh Claim) and motion for a more definite statement as to the Lanham Act claim and claim for breach of contract (Second Claim)

## I.    **INTRODUCTION**

Defendant's motion to dismiss Plaintiff's Lanham Act claim and motion for a more definite statement as to the Lanham Act claim and claim for breach of contract (the "Motion to Dismiss") is replete with inaccurate statements of both law and fact.

Plaintiff's claims for violation of the Lanham Act and breach of contract are straightforward and properly pled.  Plaintiff's Lanham Act claim describes specific acts in which Defendant misrepresented in advertising and promotion the nature, characteristics and/or qualities of various albums containing the sound recordings of performances by the legendary music artist, Frank Zappa ("Zappa").  Plaintiff's breach of contract claim describes with specificity the various ways in which Defendant has violated the agreement between Plaintiff and Defendant whereby Defendant acquired, among other things, a limited number of specific rights in and to the actual versions and mixes of sound recordings commercially released or exploited by or with the authority of Zappa prior to his death in 1993.

Yet, beginning with its "Preliminary Statement," Defendant mischaracterizes both the facts that gave rise to Plaintiff's filing her First Amended Complaint (the "Complaint") and the allegations contained in the Complaint.  For example, Defendant incorrectly maintains that, following Plaintiff's filing of her initial complaint in this action, the parties participated in a pre-motion conference whereby the Court recognized that Plaintiff's Lanham Act and breach of contract claims failed to satisfy a so-called "plausibility pleading standard" and therefore required a more definite

statement from Plaintiff.  Plaintiff's counsel has no recollection of the Court having ever made such statements.

Defendant also mistakenly claims that Plaintiff has not stated a claim for violation of the Lanham Act by failing to allege any misrepresentation in advertising or promotion.  Each of the allegations concerning Defendant's misrepresentations in advertising are properly pled.

Plaintiff's first allegation under the Lanham Act concerns misrepresentations on albums released by Defendant.  Those albums incorrectly state, and misrepresent to the consumer, that the various albums constitute albums embodying "Subject Masters" that were specifically chosen by Zappa to be embodied on those compilations albums even though "Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released" and in no other form. Complaint, ¶ 74.   In so doing, the albums also misrepresent to the public that the albums are Zappa albums, when, in fact, they are not.  Indeed, Zappa is known for producing uniquely creative recordings that satisfied the highest standards of artistic and technical excellence.  Complaint, ¶6.  The masters that Zappa selected for his albums, and the sequencing of those masters, were a key artistic ingredient of his albums.  *Id.* Thus, by labeling the albums as "Zappa albums" Ryko is misleading any potential purchaser about the nature and quality of the album because the album does not satisfy the standards of artistic and technical excellence of an album that was produced by Zappa.  Such claims are not, as Defendant alleges, precluded by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

Plaintiff's second and third allegations concern Plaintiff's false advertising when it distributed: (a) "old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko" and (b) "various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by

Zappa." Complaint, ¶ 74. Contrary to Defendant's claims, by releasing old recordings and vinyl recordings that are associated with Zappa but inferior to the quality of what Zappa created—and the public came to associate with Zappa albums—Defendant **has** misrepresented the nature, characteristic and quality of those albums.

Finally, Defendant acknowledges that Plaintiff has pled that Defendant has alleged a misrepresentation or falsehood in alleging that Defendant's release of various compilation using titles such as "Zappa's Greatest Hits" and "The Best of Frank Zappa" are false. Defendant maintains, however, that such titles are subjective, non-actionable puffery when, in fact, (a) the law is clear that advertising claims that influence consumer buying decisions cannot be dismissed as mere puffing <u>and</u> (b) Defendant's advertising compilation albums as containing Frank Zappa's "Greatest Hits" and "The Best of Frank Zappa" <u>can</u> be objectively proven false by, among other things, reference to sales figures and chart positions.

Given Defendant's apparent recognition that its Rule 12(b)(6) motion is bound to fail, Plaintiff alternatively seeks to require Plaintiff to file a more definite statement with respect to Plaintiff's Lanham Act and breach of contract claims. In so doing, Defendant improperly seeks to have Plaintiff's claims dismissed without the benefit of discovery. Defendant's Rule 12(e) motion is preposterous given that the very information that Defendant seeks to have Plaintiff plead is certainly in Defendant's, not Plaintiff's, immediate possession and control, including without limitation, that Plaintiff identify the date the certain albums were released and how the albums were edited by Defendant. And, of course, Defendant, like Plaintiff, can properly obtain any additional information it seeks through discovery. Plaintiff's detailed 24-page Complaint amply puts Defendant on notice of its claims and provides sufficient factual allegations to permit Defendant to prepare a proper response.

///

///

## II.    STATEMENT OF FACTS

Frank Zappa was one of the most respected rock and roll performers of his time. He released more than 60 albums, received multiple Grammy nominations, and was posthumously inducted into the Rock and Roll Hall of Fame. Zappa died in December 1993. First Amended Complaint ("Complaint"), ¶ 5.

Upon his death, the Trust acquired, among other things, all right, title and interest—including copyrights—in and to all sound recordings embodying Zappa's performances. Gail, Zappa's wife, was appointed trustee of the Trust. *Id.*, ¶ 6.

Less than one year following Zappa's death, Defendant and the Trust entered into a written agreement (the "1994 Agreement") wherein Defendant acquired, among other things, a limited number of specific rights in and to the actual versions and mixes of sound recordings commercially released or exploited with Zappa's authority prior to October 6, 1994 together with certain previously unreleased albums (the "Subject Masters"). *Id.*, ¶ 7(a).

The Complaint alleges that after entering into the 1994 Agreement, Defendant's principals became dissatisfied with the terms and conditions of the agreement, including the limited nature of the rights that had been acquired in and to sound recordings by Zappa. *Id.*, ¶ 8. The Complaint further alleges that Defendant therefore attempted to expand the scope of the rights it received by engaging in a pattern of misconduct and material breaches of the 1994 Agreement including, among other things, by improperly: (a) licensing to third parties the right to digitally distribute the Subject Masters to the public via the Internet; (b) releasing, without the Trust's permission, a number of the Subject Masters in vinyl; (c) editing and/or otherwise changing various of the Subject Masters in ways that deleteriously impacted the integrity of the works delivered to Defendant; and (d) failing to account to and pay the Trust mechanical royalties to due to the Trust. *Id.*, ¶ 16.

In addition to this misconduct, among others, Plaintiff alleges that

Defendant violated section 43(a)(1)(B) of the Lanham Act by expressly and impliedly misrepresenting in advertising and promotion the nature, characteristics and/or qualities of various Zappa albums by engaging in the following acts, among others: (a) releasing as Zappa albums compilations consisting of  Subject Masters taken from various albums created by Zappa as grand rights[1] recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released; (b) distributing old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko; (c) distributing various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa; and (d) releasing various compilation albums using titles such as "Zappa's Greatest Hits," "The Best of Frank Zappa" or similar misleading titles which are false.  Complaint, ¶ 74.

Based on this misconduct, among others, Defendant filed a First Amended Complaint asserting claims for declaratory judgment, copyright infringement, breach of contract, violation of section 43(a) of the Lanham Act, and an accounting.  On or about June 17, 2008, Defendant filed its motion to dismiss Plaintiff's Lanham Act claim (Seventh Claim) pursuant to Rules 8(a) and 12(b)(6) or, in the alternative a more definite statement as to the Seventh Claim pursuant Rule 12(e), and further for a more definite statement as Plaintiff's breach of contract claim (Second Claim) (the "Motion to Dismiss").  As discussed below, Plaintiff's Motion to Dismiss should be denied.

---

[1] Certain albums created by Zappa are referred to as grand rights recordings. "Grand rights," or "dramatic performance rights," are separately negotiated rights for performances in a dramatic setting.  Such performances typically involve using a particular work to tell a story or as part of a story or plot. Certain Zappa albums are referred to as grand rights albums because the Subject Masters chosen for each of the Zappa grand rights recordings and the sequencing of those masters is an integral part of the performance and story being told.  Defendant was never permitted to divide or break-up the story being told in the Subject Masters or release the Subject Masters embodied on those albums as part of other compilation albums.  Advertising such other albums as Zappa recordings is false and misleading and advertising such compilations as Zappa albums misrepresents to the public the nature, characteristics and quality of the albums.

### III.   **PLAINTIFF HAS STATED A CLAIM UNDER THE LANHAM ACT**

#### A.   **Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which is rests' . . . ." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). *See also Elektra Entertainment Group, Inc. v. UMG Recordings, Inc.*, 2008 WL 857527, at *3 (S.D.N.Y. March 31, 2008) (citations omitted) ("[T]he purpose of Rule 8(a)(2) is 'to give fair notice of a clam and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial.'"). When a defendant tests the sufficiency of a complaint by a Rule 12(b)(6) motion, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). The complaint is measured against a flexible "plausibility standard," which obligates the "pleader to amplify a claim with some factual allegations ***in those contexts where such amplification is needed*** to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added). This "does not require heightened fact pleading of specifics," *In re Elevator Antitrust Litig.*, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007); *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); however, it does "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *Elevator Antitrust Litig.*, 2007 WL 2471805, at *2 (*quoting Twombly*, 127 S. Ct. at 1974). *See also Twombly*, 127 S. Ct. at 1965 (requiring amplification in connection with claim for violation of section 1 of the Sherman Antitrust Act and holding that a plaintiff must "simply" provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" even if "actual proof of those facts is improbable").

Given this low threshold, it is not surprising that "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . leave sought should, as the rules require, be 'freely given'"); *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (a Rule 12(b)(6) dismissal is proper only in "extraordinary" cases).

With respect to Defendant's 12(b)(6) motion, Defendant has not made any showing or argument to establish why Plaintiff's Complaint requires additional factual allegations requiring "amplification" to make the claim "plausible." *Iqbal*, 490 F.3d at 158 ("full force" of *Twombly* decision "is limited to the antitrust context:); *Ross v. Bank of America*, 524 F.3d 216, 225 (2d Cir. 2008) (requirement of factual amplification to render a claim plausible is "most notably" applicable in the antitrust context). Nonetheless, and as more fully discussed below, Plaintiff's detailed, 24-page Complaint more than adequately alleges sufficient facts to "cross the line from conceivable to plausible."[2]

B.    **Plaintiff's Lanham Act Claim Is Properly Pled**

In an effort to distract the Court from the merits of Plaintiff's claim for violation of section 43(a)(1)(b) of the Lanham Act, 15 U.S.C. § 1125(a), Defendant repeatedly and derogatorily describes Plaintiff's Lanham Act claim for false advertising as a mere "recasting" of her initial Complaint. *E.g.*, Mot., at 8. Not only is this inaccurate but, whatever the label, Plaintiff's Lanham Act claim is properly and sufficiently pled. *See e.g.*, *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits"); *Snyder v. Pasack Emerg.*

---

[2] To the extent the Court is inclined to grant Defendant's Motion, Plaintiff respectfully requests leave to amend her Complaint. Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

*Servs.*, 303 F.3d 271, 276 (3d Cir. 2002) ("[A] defendant is required to answer the amended complaint even if the new version does not change the charges against him.").

Section 43(a)(1)(B) prohibits misrepresentations of the "nature, characteristics, qualities or geographic origin of . . . goods" in advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). Here, Defendant apparently concedes that, with respect to the record industry, a record album's cover bearing the name and likeness of a performer is one of the primary means of advertisement for a record album and constitutes advertising. *See PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 272 (2d Cir. 1987) ("A record album's cover . . . is one of the primary means of advertisement for a record"); *Grondin v. Rossington*, 690 F.Supp. 200, 210 (S.D.N.Y. 1988). *See also The Proctor & Gamble Co. v. Haugen*, 222 F.3d 1271, 1273 (10th Cir. 2000) (the term "commercial activities" in section 43(a)(1)(B) is not to be construed narrowly but is "intended to encompass those activities which do not solely involve the provisions of services or productions of goods."). Moreover, Plaintiff's Complaint properly alleges that Defendant expressly and impliedly misrepresented in advertising and promotion the nature, characteristics and/or qualities of various Zappa albums by engaging in at least four distinct activities, among others, including: (a) releasing as Zappa albums compilations consisting of Subject Masters taken from various albums created by Zappa as grand rights recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released; (b) distributing old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko; (c) distributing various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa; and (d) releasing various compilation albums using titles such as "Zappa's Greatest Hits," "The Best of Frank Zappa" or similar misleading titles which are false. Complaint, ¶ 74. Each of these acts constitute specific and material misrepresentations made by Defendant in

advertising and/or promotion concerning the nature, characteristics and/or quality of the Zappa albums.

With respect to the first misrepresentation—releasing as Zappa albums compilations consisting of Subject Masters taken from various albums created by Zappa as grand rights recordings even though Zappa only intended those Subject Masters to be exploited on the albums in which they were originally released—Defendant makes two misguided arguments. Defendant claims that, to the extent Plaintiff is objecting to the release of the compilations as misrepresentative of the origin of authorship—such claim is barred by the decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Plaintiff's reliance on *Dastar* is inapposite. In *Dastar*, 539 U.S. at 37, the Court expressly stated that the phrase "false designation of origin" in section 43(a)(1)(A) "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." Here, Zappa *was* the producer of the Subject Masters and albums on which they were originally embodied and Plaintiff has properly alleged that the various albums misrepresent that the albums were produced by Zappa when, among other things, the Subject Masters selected for the album and the sequencing of those masters is an integral part of the album. *See e.g.,* Complaint, ¶¶ 6, 74. Indeed, Plaintiff specifically alleges in its Complaint that "[Zappa] was known for producing uniquely creative recordings that satisfied the highest standards of artistic and technical excellence" and "[t]he masters that Zappa selected for his albums, and the sequencing of those masters, were a key artistic ingredient of his albums." Id., at ¶6.

Furthermore, unlike in *Dastar*, here Plaintiff's claim is not brought pursuant to section 43(a)(1)(A) of the Lanham Act and, despite Defendant's suggestion to the contrary, Plaintiff is not claiming, as was the case in *Dastar*, that Defendant altered Plaintiff's abstract ideas or concepts and packaged them as Defendant's own. *Dastar*, 539 U.S. at 38 (emphasis added) ("If . . . the producer of a video that substantially copied

the Crusade series were, *in advertising or promotion*, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action-not for reverse passing off under the 'confusion ... as to the origin' provision of § 43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)"). Rather, Plaintiff's Lanham Act claim is premised on the allegations that Defendant, in violation of section 43(a)(1)(B) misrepresented in advertising and promotion the nature, characteristics and/or qualities of various Zappa albums. Complaint, ¶ 74. *See also Cathedral Art Metal Co., Inc. v. F.A.F., Inc.*, 2006 WL 2583584 (D.R.I. Sept. 6, 2006) (permitting plaintiff to amend complaint to clarify its false advertising allegations since *Dastar's* consideration of section 43(a)(1)(A) does not preclude a claim under section 43(a)(1)(B) and the proposed allegations track the statutory language of the subsection); *Clauson v. Eslinger*, 455 F.Supp. 2d 256, 261 (S.D.N.Y. 2006) (denying motion to dismiss where plaintiff alleged that the film's promotional materials wrongly credited defendant as producer). Thus, even after *Dastar*, a plaintiff can even allege a claim for misattribution of ownership if the misattribution was made in advertising. Although, plaintiff is alleging much more in this case.

Defendant alternatively claims that, to the extent Plaintiff is alleging that "Zappa did not or would not have authorized the release of the" album compilations, Plaintiff has not alleged any misrepresentation in advertising or promotion. Motion to Dismiss, 8-9. Not so. Defendant again fails to precisely describe the nature of Plaintiff's claim. Here, the misrepresentation plainly alleged in the Complaint is that the albums being released *are* being misrepresented as Zappa albums – meaning albums of a certain high quality associated with Zappa, when, in fact, they are not Zappa albums. The compilations released by Defendant are materially misleading to the consuming public. *See e.g. Benson v Paul Winley Record Sales Corp.*, 452 F. Supp 516 (S.D.N.Y. 1978) (distribution of musician's recordings in packaging which falsely implied, among other

things, the recordings musician's level of artistic achievement, was actionable); *CBS, Inc. v Springboard International Records*, 429 F. Supp 563 (S.D.N.Y. 1976) (same); *CBS, Inc. v. Springboard International Records*, 429 F.Supp. 563 (S.D.N.Y 1976) (stylistic differences between group and its successor group are so different that comparing the two "is to compare Lawrence Welk and the Rolling Stones;" defendant therefore ordered to use label: "These Songs Were Recorded Over Ten Years Ago"). Such misrepresentations are clearly material and likely to influence purchasing decisions, particularly since "the technical quality and format of each of Zappa's recordings [were a] part of his unique artistic style and creation on which his reputation was based" and the "record buying public and legion of fans came to associate his albums with those standards of excellence." Complaint, ¶ 7. *See also NBA v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997).

The same is true with respect to Plaintiff's claims that Defendant engaged in false advertising when it distributed: (a) "old recordings in new configurations and technical formats that are inferior to the Subject Masters delivered by the Trust to Ryko" and (b) "various vinyl recordings and digitally distributing various other recordings that do not meet the artistic and technical standards evidenced in the recordings compiled and/or produced by Zappa." Complaint, ¶ 74. Here, Defendant incorrectly continues to maintain that Defendant has not alleged any misrepresentation or false statement made by Defendant in connection with the album compilations. Motion to Dismiss, at 10. In fact, however, by releasing high quality recordings in configurations that are inferior to the quality of what Zappa created—and the public came to associate with Zappa albums— Defendant has misrepresented the nature, characteristic and quality of those albums. *See PPX*, 818 F.2d 266 (it is a violation of section 43(a)'s false advertising prohibition for one to sell recordings in connection with packaging and promotion which overstate a performer's contribution). As a result, the consuming public is likely to be disappointed by purchasing recordings that are inferior to Zappa's highest standard of technical and

artistic excellence.  Complaint, ¶ 7.  *See also CBS, Inc.*, 429 F.Supp. at 568 (finding "the prospect of irreparable harm to be quite real since the public might well purchase the albums in question only to be disappointed at not finding current Rich recordings, and turn that disappointment toward Mr. Rich, feeling that he had perpetrated the deception.").  The foregoing is especially true, whereas in the instant case, where Plaintiff alleges that "the technical quality and format of each of Zappa's recordings was also part of his unique artistic style and creation on which his reputation was based" and that "the record buying public and legion of fans came to associate his albums with those standards of excellence.  Complaint, ¶6.

Finally, Defendant acknowledges that Plaintiff has pled that Defendant has alleged a misrepresentation or falsehood in alleging that Defendant's release of various compilation using titles such as "Zappa's Greatest Hits" and "The Best of Frank Zappa" are false.  Defendant maintains, however, that titles such as "greatest" or "best" constitute nonactionable "advertising puffery" for which it is not reasonable to assume that a reasonable consumer would rely on these representations in purchasing an album.  Motion to Dismiss, at 11.  Defendant is again mistaken.

As an initial matter, and despite Defendant's claims to the contrary, even exaggerated advertising claims that influence consumer buying decisions cannot be dismissed as mere puffing.  *See Toro Co. v. Textron*, 499 F.Supp. 352 (D. Del. 1980) (advertising claims made "are manifestly made to be believed and relied upon, and I cannot say that a reasonable prospective purchaser would fail to take them seriously").  And, of course, albums that purport to be Zappa's "best" or "greatest" albums are deliberately so titled in order to influence buying decisions and convince consumers to purchase those particular Zappa albums as opposed to others.  *See e.g.*, *U-Haul International, Inc. v. Jartan, Inc.*, 522 F.Supp. 1238 (D. Ariz. 1981) *aff'd*, 681 F.2d 1159 (9th Cir. 1982) (advertising placed with intent to affect consumer's judgment are not mere puffery).

Furthermore, to establish a false advertising claim pursuant to § 43(a), a plaintiff must demonstrate the message in the challenged advertisement is false. Falsity may be established by proving that: (1) the advertisement is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers. *Lipton v. Nature Co.*, 71 F.3d 464, 476 (2d Cir. 1995). Here, Defendant's advertising compilation albums as containing Frank Zappa's "Greatest Hits" and "The Best of Frank Zappa" <u>can</u> be <u>objectively</u> proven false by, among other things, reference to sales figures or chart positions. Thus, they clearly cannot constitute "puffery." *Time Warner Cable, Inc. v. DirectTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) (explaining that puffery is characterized as "[s]ubjective claims about products, which cannot be proven either true or false.")

Notably, each of the cases upon which Defendant relies for its "puffery" contention is readily distinguishable. In *Time Warner*, the Second Circuit found a television commercial constituted "puffery" based on its finding that "the comparison is so obviously hyperbolic that 'no reasonable buyer would be justified in relying on it' in navigating the marketplace." *Id.* at 161 (citation omitted). Here, Defendant's representations were far from obvious hyperbole. Rather, they were objectively false statements of fact upon which a consumer would clearly be justified on relying.

The facts in *Lipton, supra*, are also readily distinguishable. In *Lipton*, the New York District Court concluded that a statement in a promotional brochure that the defendant "thoroughly researched dozens and dozens of animals" was puffery. *Lipton*, 71 F.3d at 474. The *Lipton* court based its holding, in part, on the rule that "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Id.* at 474 (citations omitted). As discussed above, Defendant's claims <u>can</u> be proven false by reference to empirical facts.

Finally, Defendant notably omits mention of a case cited in its May 14, 2008 letter requesting a pre-motion conference concerning its Motion to Dismiss—

*Coastal Communications Corp. v. Adams/Laux Co., Inc.*, 1996 WL 546880 (S.D.N.Y., Sept. 26, 1996)—because that decision bolsters Plaintiff's claims.  In *Coastal*, the Court denied the defendant's motion to dismiss with respect to an advertisement which stated the defendant published "[t]he only niche titles in the growing meetings and incentive travel field . . . ."  The court ruled the statement was "specific, rather than general," and held it "cannot find, on a motion to dismiss, that no reasonable consumer would interpret this defendant's advertisement as a factual claim upon which he or she could rely."  *Id.*  "The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific."  *Time Warner*, 497 F.3d at 159.  Here, and like the advertisement at issue in *Coastal*, Defendant has made specific, objective (rather than subjective) representations that the compilations contained Zappa's "greatest" or "best" hits.  Such specific are not mere "sales talk," *Id.*, but are the type of representations on which reasonable consumers are likely to rely.  *See also Blank v. Pollack*, 916 F.Supp. 165, 172 (N.D.N.Y. 1996) (the "language of the [Lanham] act is to be construed broadly, in light of the remedial purpose of the act.").

Viewing the Complaint in a light most favorable to Plaintiff, her Seventh Claim for Relief under section 43(a)(1)(B) of the Lanham Act should not be dismissed.

## IV.    PLAINTIFF SHOULD NOT BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT

### A.    Legal Standard

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  "However, a motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the [responding party] seriously in attempting to answer it."  *Leepson v. Allan Riley Co., Inc.*, 2006 WL 2135806, *6 (S.D.N.Y. July 31, 2006) (internal quotations omitted).  "The Rule 'is designed to remedy

unintelligible pleadings, not to correct for lack of detail.'" *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2005 WL 1500893, *2 (S.D.N.Y. Jun. 24, 2005) (*quoting Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO*, 1994 WL 478495, at *1 (S.D.N.Y. Sept. 1, 1994). If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied. *Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). *See also FRA S.p.A v. Surg-O-Flex of America*, 415 F.Supp. 421, 427 (S.D.N.Y. 1976) (a court will deny the motion where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted); *Boaxall v. Sequoia Union high School Dist.*, 464 F.Supp. 1104, 1113-14 (N.D. Cal. 1979) (motion for more definite statement is likely to be denied where the substance of a claim has been alleged, even though some of the details are omitted). Indeed, motions for more definite statements are viewed with disfavor and are rarely granted. *Rahman v. Johanns*, 501 F.Supp. 2d 8, 19 (D.D.C. 2007). *See also Fisher v. Building Serv. 32B-J Health Fund*, 2001 WL 1586689, at *1 (S.D.N.Y. 2001) (citation omitted) (motions for a more definite statement "generally are disfavored because of their dilatory effect"); *Caraveo v. Nielsen Media Research, Inc.*, 2002 WL 530993, at *2 (S.D.N.Y. 2002) (motions pursuant to Rule 12(e) should not be granted "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."). Here, and as discussed more fully herein, Plaintiff's 24 page Complaint is adequately pled and is not "so vague and ambiguous" that Defendant cannot prepare a proper response. Fed. R. Civ. P. 12(e).

### B.   Plaintiff's Breach of Contract Claim Is Properly and Sufficiently Pled

Plaintiff's breach of contract claim is neither vague or ambiguous. Sufficient facts have certainly been pled so as to permit Defendant to prepare a response.

In an effort to create confusion where none exists, Defendant claims that, pursuant to the 1999 settlement agreement (the "Settlement Agreement") between Plaintiff and Defendant, Plaintiff "released Ryko from a broad range of claims similar to

those pled in the Amended Complaint." Motion to Dismiss, at 13. The Settlement Agreement, however, expressly states that Plaintiff released Defendant from those "claims or matters based upon facts of which the Zappa Parties have knowledge." Declaration of Matthew Savare, Ex. A (the Settlement Agreement), ¶ 4.a. Defendant cannot presume for purposes of a Rule 12(e) motion that Plaintiff had knowledge of the claims alleged in the Complaint.

In a further attempt to create uncertainty when none is present, Defendant claims "[a]s but one example"—without offering any others—that it has not released any vinyl recordings since the date of the 1999 settlement agreement between Plaintiff and Defendant and that the Settlement Agreement purportedly permits Defendant to continue to exploit previously released sound recordings, including vinyl recordings. Defendant therefore claims that Plaintiff should identify the specific vinyl releases on which she based her claim in paragraph 16(b) of the Complaint. Motion to Dismiss, at 14. Defendant's argument, however, is not that Plaintiff's allegations are vague or ambiguous but that it wants information obtainable through discovery because either "Plaintiff may be deterred by Rule 11 from continuing to assert such a claim" or Defendant could "move immediately for summary judgment. *Id.* Such relief is not afforded by a Rule 12(e) motion.

Plaintiff's also improperly relies on the decisions in *Twombly* and *Iqbal* for the proposition that "Ryko should not have to engage in extensive discovery just to identify the works and timeframes on which Plaintiff is basing her breach of contract claim and whether the claim is time-barred, was released by the Settlement Agreement, or is precluded by laches." Motion to Dismiss, at 14. Those decisions, however, simply stand for the proposition that "a conclusory allegation concerning *some* elements of plaintiff's claim *might* need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement." *Iqbal*, 490 F.3d at 158 (emphasis added). Here, Defendant is fully capable of responding to the allegation that it improperly released "a

number of the Subject Masters in vinyl." Complaint, ¶ 16(b). *See also Elektra Entertainment Group, Inc. v. Barker*, 2008 WL 857527, at * 3 (S.D.N.Y. March 31, 2008) ("The Complaint does not affix a date or time of each instance of alleged infringement, but it need not do so in order to survive a motion to dismiss."). Tellingly, according to Defendant, the only vinyl recordings released were prior to the effective date of the Settlement Agreement and the Settlement Agreement permits the release of those masters. Motion to Dismiss, 14. If Defendant believes such statements to be correct, then it should conduct itself accordingly. This, however, is legal argument and is unrelated to whether Defendant can "reasonably prepare a response." Fed. R. Civ. P. 12(e). *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 2005 WL 1500893, at *2 (S.D.N.Y. June 24, 2005) ("A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it. . . The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.").

Not satisfied with seeking a more definite statement with respect to the breach of contract allegations concerning the improper release of the vinyl recordings, Defendant summarily claims—without any evidence or argument—that Plaintiff must restate her breach of contract claim to include the following specific allegations: (a) identifying which of the Subject Masters are at issue; (b) specifying the individual compilations, vinyl releases and digital recordings on which she bases her claims and the dates of Defendant's release of the same; and (c) identifying specifically which of Defendant's alleged edits of the Subject Masters impacted the integrity of the works and how they did so. Motion to Dismiss, at 14. Likewise, with respect to Plaintiff's allegations concerning Defendant's failure to account and pay royalties pursuant to the 1994 Agreement, Defendant argues that Plaintiff must "specify the alleged composition for which Ryko purportedly owes royalties and for what period" as well as "specify any

contractual provision on which she based her claim to the right to audit Ryko's books."

Motion to Dismiss, at 6.  Clearly, however, not only can this information be sought

through discovery but much of the information is *solely* within the knowledge and control

of Defendant.  That is why, of course, Plaintiff has asserted a claim for an accounting.

*See Pell v. Pall Corp.*, 2007 WL 2445217, *2 (E.D.N.Y., August 20, 2007) (courts prefer

to "encourage the use of discovery procedures to make clear the factual basis for the

parties' claims.");  *FRA S.p.A v. Surg-O-Flex of America*, 415 F.Supp. 421, 427

(S.D.N.Y. 1976) (a court will deny the motion where the complaint is specific enough to

apprise the defendant of the substance of the claim being asserted).  Given that it is

***Defendant***—not Plaintiff—who has better access to information concerning: (a) its

treatment of the Subject Masters, individual compilations and digital recordings that it

has released or otherwise exploited and (b) Defendant's calculation and payment of

royalties to Plaintiff, Defendant's motion for a more definite statement with respect to

Plaintiff's breach of contract claim should be denied.

    **C.**        **Plaintiff's Lanham Act Claim Is Properly and Sufficiently Pled**

       Defendant fares no better with respect to its request that the Court order

Plaintiff to plead a more definite statement of facts with regard to her Lanham Act claim.

Other than stating in conclusory fashion that the allegations concerning Defendant's

alleged misconduct are the "exact species of claims that Fed. R. Civ. P. 12(e) prohibits,"

Defendant does not provide any evidence or argument explaining why this is the case.

       For example, Defendant claims that a more definite statement of facts

should be pled with respect to the claim that Defendant improperly "releas[ed] various

compilation albums using titles such as "Zappa's Greatest Hits," "The Best of Frank

Zappa" and other misleading titles."  Complaint, ¶ 74(4); Motion to Dismiss, at 15.

Likewise, Defendant claims a more definite statement of facts should be pled with respect

to the allegation that Defendant improperly "distribut[ed] old recordings in new

configurations and technical formats that are inferior to the Subject Masters delivered by

the Trust to Ryko." Complaint, ¶ 74(4); Motion to Dismiss, at 15.  Yet, ***Defendant has better access to this information than does Plaintiff***.  *See  FRA S.p.A*, 415 F.Supp. at 427 ("Rule 12(e) is designed to correct only unintelligibility in a pleading not merely a claimed lack of detail.").  And, if Defendant does not believe that it engaged in the alleged misconduct, then it should say so.  To claim, however, that the allegations—as well as all other allegations for which Defendant seeks a more definite statement of facts—are vague or ambiguous so as to prevent Defendant from preparing a response, is ludicrous.  *Leepson*, 2006 WL 2135806, at *6 ("[A] motion for a more definite statement is only appropriate if the complaint does not provide a short and plain statement as required by Rule 8 of the Federal Rules of Civil Procedure.").

     **D.**    **Plaintiff's Claims Concerning the Album Artwork**

     Plaintiff does not presently allege copyright infringement with respect to altering or modifying album artwork, including with respect to translating Zappa song lyrics into languages other than those that appeared on previously released Zappa albums..  However, Plaintiff reserves the right to assert such claims if discovery in this case indicates that Defendant has acted improperly with respect to Plaintiff's copyrightable artwork.

///

///

## V.    **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss should be

denied.

Dated:  Santa Monica, California
        July 11, 2008                    Respectfully Submitted,

                                         /s/ Mark D. Passin

                                         Stanton L. Stein
                                         lstein@dreierstein.com
                                         Mark D. Passin
                                         DREIER STEIN KAHAN BROWNE
                                             WOODS GEORGE LLP
                                         The Water Garden
                                         1620 26th Street
                                         6th Floor, North Tower
                                         Santa Monica, CA  90404
                                         (310) 828-9050

                                             and

                                         Ira S. Sacks
                                         Robert J. Grand
                                         DREIER LLP
                                         499 Park Avenue
                                         New York, NY  10022
                                         (212) 328-6100

                                         *Attorneys for Plaintiff*