Stephen R. Buckingham
Matthew Savare
LOWENSTEIN SANDLER P.C.
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500
Attorneys for Defendant Rykodisc, Inc.

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,<br><br>Plaintiff,<br><br>v.<br><br>RYKODISC, INC.,<br><br>Defendant. | 08-CV-00396 (WHP) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

I. PLAINTIFF’S LANHAM ACT REMAINS FATALLY DEFECTIVE .......... 2

a. "False Advertisement" of Zappa Albums as Zappa Albums .......... 2

b. "False Advertising" Of Artistic and Technical Standards .......... 5

c. "False" Claims of the "Best" and the "Greatest" .......... 6

d. Plaintiff is Not Entitled to Yet Another Chance To Replead .......... 8

II. PLAINTIFF SHOULD BE REQUIRED TO PLEAD A MORE DEFINITE STATEMENT OF HER CLAIMS .......... 9

CONCLUSION .......... 10

CERTIFICATE OF SERVICE .......... 11

# TABLE OF AUTHORITIES

**Pages**

**CASES**

American Express Travel Related Services Co. v. Mastercard Int'l, Inc.,
776 F. Supp. 787 (S.D.N.Y. 1991) .................... 8

AutoInfo, Inc. v. Hollander Publishing Co.,
1991 U.S. Dist. LEXIS 5290 (S.D.N.Y. April 18, 1991) .................... 8

Avon Prods. v. S.C. Johnson & Son,
1994 U.S. Dist. LEXIS 7950 (S.D.N.Y. June 10, 1994) .................... 8

Barr Lab., Inc. v. Quantum Pharmics, Inc.,
827 F. Supp. 111 (E.D.N.Y. 1993) .................... 9

Benson v. Paul Winley Record Sales Corp.,
452 F. Supp. 516 (S.D.N.Y. 1978) .................... 4, 5

Branch v. Tower Air, Inc.,
1995 U.S. Dist. LEXIS 16390 (S.D.N.Y. Nov. 3, 1995) .................... 3

Brignoli v. Balch Hardy & Scheinman, Inc.,
645 F. Supp. 1201 (S.D.N.Y. 1986) .................... 7

Bruce v. Martin,
702 F. Supp. 66, 69 (S.D.N.Y. 1988) (Sweet, J.) .................... 9

Bussey v. Phillips,
419 F. Supp.2d 569 (S.D.N.Y. 2006) .................... 10

Cathedral Art Metal Co., Inc. v. F.A.F., Inc.,
2006 WL 2583584 (D.R.I. Sept. 6, 2006) .................... 4

CBS, Inc. v. Springboard Int'l Records,
429 F. Supp. 563 (S.D.N.Y. 1976) .................... 4, 5, 6

Clauson v. Eslinger,
455 F. Supp. 2d 256 (S.D.N.Y. 2006) .................... 4

Copeland ex rel. NBTY, Inc. v. Rudolph,
160 Fed. Appx. 56 (2d Cir. 2005) .................... 8

Kramer v. Time Warner, Inc.,
937 F.2d 767 (2d Cir. N.Y. 1991) .................... 2

Lewis ex rel. American Express Co. v. Robinson (In re American Express Co. Shareholder Litig.), 39 F.3d 395 (2d Cir. 1994) .................... 8

NBA v. Motorola, Inc.,
105 F. 3d 841 (2d Cir. 1997) .......... 1

PPX Enters., Inc. v. Audiofidelity Enters., Inc.,
818 F.2d 266 (2d Cir. 1987) .......... 6

Prudential Ins. Co. v. BMC Industries, Inc.,
655 F. Supp. 710 (S.D.N.Y. 1987) .......... 8

U-Haul Int'l, Inc. v. Jartan, Inc.,
522 F. Supp. 1238 (D. Az. 1981) .......... 7

Volunteer Firemen's Ins. Servs. v. McNeil & Co.,
221 F.R.D. 388 (W.D.N.Y. 2004) .......... 9

**RULES**

Civil Rule 33.3 .......... 9

Rule 11 .......... 10

**PRELIMINARY STATEMENT**

Ryko paid Plaintiff $20 million in 1994 for the rights to all recordings commercially released by Frank Zappa during his lifetime, plus a number of additional recordings. Although there are limited restrictions on Ryko's rights with respect to certain recordings, the contract of sale does not restrict or prohibit Ryko from releasing new compilations of Frank Zappa recordings. Plaintiff's contrived Lanham Act claims--which she is still unable to articulate in a manner that is not utterly nonsensical--are nothing more than an improper attempt to use the Lanham Act to obtain a right to pre-approve any Zappa release by Ryko, a contractual right Plaintiff never bargained for, and never received under her agreement with Ryko.

"To establish a false advertising claim under Section 43(a), the plaintiff must demonstrate that the statement in the challenged advertisement is false." NBA v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997)(emphasis added). Although Plaintiff alleges four theories of false advertising in her Amended Complaint, three of those theories suffer from a common fundamental defect: they do not identify any "statement" in any "advertisement" by Ryko. Instead they merely allege, in conclusory language, that Ryko is "misleading consumers" by selling products that Plaintiff in her subjective opinion does not believe meet some unspecified standard of artistic excellence--even though it is undisputed that the works had been created, performed, produced and released by Frank Zappa during the prime of his career. The fourth theory, which at least identifies the allegedly false statements, fails as a matter of law, because the alleged "false statements" in issue are the superlatives "best" and "greatest," which as a matter of law constitute non-actionable advertising puffery.

Because Plaintiff remains unable to provide a coherent, factually-specific articulation of her theories of false advertising, even after being given leave to re-plead, her contrived false advertising claims should be dismissed with prejudice. Ryko should not be required to engage in

the expensive discovery involved in defending against a false advertising claim, which necessarily entails the use of experts and expensive consumer surveys, when Plaintiff is unable to articulate a plausible cause of action. Just as the Supreme Court held in Dastar that the Lanham Act cannot be stretched to provide rights to a plaintiff akin to rights that were not available under the Copyright Act, this Court should refuse to stretch the Lanham Act to create rights that Plaintiff was unable to obtain in contractual negotiations with Ryko.

Similarly, with respect to her breach of contract claim, Plaintiff continues to obfuscate through vague and conclusory allegations, and should be required to plead a more definite statement of her claim, so Ryko can understand which acts Plaintiff contends were wrongful.

## I. PLAINTIFF'S LANHAM ACT REMAINS FATALLY DEFECTIVE

### a. "False Advertisement" of Zappa Albums as Zappa Albums

Plaintiff's first theory of false advertising is that although, as she concedes, "Zappa was the producer" of the recordings on which she bases her claim, Ryko is falsely representing to the public that those recordings "were produced by Zappa." Opposition at 9. The gist of Plaintiff's explanation of this claim is that although Frank Zappa produced, performed on and authorized the release of all of the recordings in question, he never supposedly "intended" them to be included together as they are on some unidentified compilation albums allegedly released by Ryko. Despite the suggestions of Plaintiff's opposition, the Amended Complaint contains no allegation of any kind that Ryko has advertised the unidentified albums as having been personally compiled and sequenced by Frank Zappa, because there is no factual basis for such a claim. Plaintiff may not, in effect, amend her Amended Complaint by stating facts for the first time in her opposition brief. The controlling document on this motion is the Amended Complaint. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. N.Y. 1991).

"[M]emoranda ... in opposition to a motion to dismiss cannot be used to cure a defective complaint." Branch v. Tower Air, Inc., 1995 U.S. Dist. LEXIS 16390, *17, (S.D.N.Y. Nov. 3, 1995) (Keenan, J).

Plaintiff's arguments to the effect that Frank Zappa would not have approved of certain compilations had he been alive does not state a claim of false advertising. Plaintiff is simply grasping for approval rights that she does not have under her agreement with Ryko. If it were true that "Defendant was never permitted to divide or break-up the story being told in the Subject Masters or release the Subject Masters embodied on those albums as part of other compilation albums," Opposition at 5, n.1, as Plaintiff claims, she would have asserted a breach of contract claim based on such acts. Because there is no basis in her agreement with Ryko for such a claim, she has resorted to twisting the Lanham Act in ways never intended, to prohibit Ryko from exercising contractual rights it bargained and paid for in 1994.

Even if Ryko did falsely advertise that Frank Zappa produced the Ryko compilation albums—which it clearly did not and Plaintiff has no good faith basis to allege—such a claim would be precluded by Dastar. Plaintiff has made no effort, because she cannot, to address any of the cases cited by Ryko in its moving brief, which hold that false advertising claims alleging misrepresentation of authorship or contribution to a work are precluded by Dastar. See Moving Br. at 9-10. Instead of addressing these cases, Plaintiff relies on the unreported Cathedral Art case from Rhode Island, which she contends supports her claim, despite Dastar. The sweeping proposition for which Plaintiff cites Cathedral Art is misleading, as the Court did not even address the question whether Dastar foreclosed false advertising claims. Rather, the court permitted the plaintiff to amend its complaint to add a claim for false advertising because the defendants had only argued that Dastar precluded false designation of origin claims. Cathedral Art Metal Co., Inc. v. F.A.F., Inc., 2006 WL 2583584 at *2 (D.R.I. Sept. 6, 2006).

The only other case Plaintiff cites to support her argument that Dastar did not foreclose false advertising claims is Clauson v. Eslinger, 455 F. Supp. 2d 256 (S.D.N.Y. 2006). Clauson has not been followed by any court, and its holding is at odds with many cases in this District. Also, in Clauson, the plaintiff had specifically pled that the film's credits and promotional materials falsely credited the defendant as the producer. Id. at 262. Even were Clauson controlling, Plaintiff has not alleged that Ryko has falsely credited Zappa as the producer. Plaintiff's false advertising claim fails because she has not pled that Ryko has falsely attributed producer credits, and she cannot plead such facts in good faith.

Plaintiff additionally asserts that her "Zappa as producer" false advertising claim is supported by her allegation that the unidentified compilations in question do not meet the "high quality associated with Zappa." Opp. Br. at 10. However, Plaintiff has not alleged that Ryko made any false statements regarding the artistic or technical quality of any of its albums. Instead, she merely implies that because the compilations were not produced by Zappa, they cannot be of "high quality", even though they contain unaltered recordings performed and produced by Frank Zappa. This is nothing more than a variation on Plaintiff's first theory of false advertising, relating to the attribution of authorship, which is clearly precluded by Dastar.

The cases that Plaintiff cites in support of this argument are inapposite.[1] Each case was decided before the Dastar decision, so it is apparent Plaintiff was unable to find a recent case to support her argument. Each case is also distinguishable. In Benson, the defendant remixed old songs of the plaintiff, accenting his guitar tracks and over-dubbing sexually suggestive moans of a woman, and then released the album with a cover containing a recent picture of the plaintiff, and promoted the album as containing "new" material, even though many of the songs were

[1] These cases are Benson v. Paul Winley Record Sales Corp., 452 F. Supp. 516 (S.D.N.Y. 1978); CBS, Inc. v. Springboard Int'l Records, 429 F. Supp. 563 (S.D.N.Y. 1976).

more than twelve years old. This Court held that consumers could be misled into believing that the contents of the album were new recordings of the plaintiff, and that plaintiff endorsed X-rated material. Benson, 452 F. Supp. at 517-18. Plaintiff has not alleged any similar facts here.

The CBS case is equally irrelevant. There, the defendant released albums containing songs over ten years old, but used a recent picture of the performer on the album cover. In addition, the defendant released other albums using the names of certain bands, even though the albums contained no songs from those particular bands. This Court held that consumers could be misled into believing that the albums contained contemporary recording and songs of a particular style from certain performers. CBS, 429 F. Supp. at 568-69.

**b. "False Advertising" Of Artistic and Technical Standards**

Likewise, the second and third theories of Plaintiff's false advertising claim—that Ryko engaged in "false advertising" when it distributed (i) old recordings in new, allegedly inferior formats, and (ii) vinyl and digital recordings that allegedly did not meet the technical standards of Zappa—also fail to state a claim under the Lanham Act, because they do not allege any false statements in any advertisement. Despite now having had five opportunities to do so,[2] Plaintiff has still not identified or alleged a single false statement by Ryko in any advertisement. Instead, she claims, in a self-contradicting manner, that: "by releasing high quality recordings in configurations that are inferior to the quality of what Zappa created—and the public came to associate with Zappa albums—Defendant has misrepresented the nature, characteristic and quality of those albums." Opp. Br. at 11. Left unexplained is how the admittedly "high quality recordings" released by Ryko were simultaneously "inferior," or how the quality of the recordings was misrepresented.

[2] These opportunities were the Plaintiff's Complaint, her February 25, 2008 letter to the Court, her May 20, 2008 letter to the Court, the Amended Complaint, and her opposition brief.

Recognizing that she has alleged no facts (and cannot proffer any) to support her claim, Plaintiff cites to cases that provide no support for her arguments.[3] For example, she cites PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266 (2d Cir. 1987) for the irrelevant proposition that "it is a violation of section 43(a)'s false advertising prohibition for one to sell recordings in connection with packaging and promotion which overstate a performer's contribution." Opp. Br. at 11. This self-evident notion is meaningless, because Plaintiff has never alleged that Ryko "overstated" Zappa's contributions to the unspecified compilations. In that case, the Second Circuit held that the defendants engaged in false advertising when they fraudulently marketed eight albums purporting to contain feature performances by Jimi Hendrix, when such recordings contained either no performances by Hendrix at all, or performances in which Hendrix was merely a background performer. PPX, 818 F.2d at 268, 272. Similarly, for the reasons noted above, Plaintiff's reliance on CBS is also misplaced.

Here, in sharp contrast to both PPX and CBS, it is undisputed that the Subject Masters contained on the Ryko compilation albums were all performed, produced and released by Frank Zappa during the prime of his career, and were not altered by Ryko in any way. In short, the second and third theories of Plaintiff's Lanham Act claim fail to state a claim because Plaintiff has not identified any purported false statements in any advertisement, but merely reiterates her breach of contract claim from ¶ 16(b) and (c) of the Amended Complaint.

**c. "False" Claims of the "Best" and the "Greatest"**

Plaintiff's last theory of false advertising is that Ryko's use of titles such as "Zappa's Greatest Hits" and "The Best of Frank Zappa" constitute false advertising.[4] Plaintiff offers

---

[3] Plaintiff cites cases for the proposition that an album cover is an advertisement. Opp. Br. at 8. This is irrelevant, however, as Plaintiff has not alleged anything regarding Ryko's album covers.

[4] Ryko is curious to know the factual basis for Plaintiff's claim that Ryko issued an album titled "Zappa's Greatest Hits," as to Ryko's knowledge, no such album exists.

nothing more in defense of this absurd claim than that "best" and "greatest" can be objectively proved true or false through sales records. It is highly ironic that Plaintiff, Frank Zappa's wife, who purports to be defending his "artistic integrity," would suggest to the Court that the greatness of her husband's varied and multi-genre works can objectively be measured by crass resort to their commercial success in sales dollars, particularly in view of the way in which her husband wore as a badge of honor throughout his career the early rejection of his music by Columbia Records because it had "no commercial potential," and routinely lampooned the recording industry, pop music, and popular societal notions of commercial success.

Because there are any number of ways to measure what are the "best" or "greatest" of Zappa’s work—and reasonable minds could and do differ as to how such an evaluation should be done—Plaintiff's suggestion that she can prove the literal falsity of such alleged album titles is ridiculous. Although in the Toro and U-Haul cases Plaintiff relies on the courts determined that they could objectively calculate the power of a snow blower or the fuel efficiency of a truck, Plaintiff's claim here alleges nothing more than unactionable advertising puffing. Indeed, in the U-Haul case Plaintiff cites, the court recognized that “the concept of ‘puffery’ as a permitted form of advertising or sales technique has existed for many, many years. In its earlier history, it involved situations, or words of a superlative nature, the proof of which was virtually impossible, *i.e.*, better, best, brighter, brightest, etc.” U-Haul Int’l, Inc. v. Jartan, Inc., 522 F. Supp. 1238, 1244 (D. Az. 1981)(emphasis added).

An exhaustive search reveals no case—in any jurisdiction—that supports what Plaintiff seeks here. Her attempt to distinguish the facts of the cases cited in Ryko’s moving brief is equally defective. The plain fact is that claims of superiority or of a product being the “best” or “greatest” are not actionable as a matter of law. Brignoli v. Balch Hardy & Scheinman, Inc., 645 F. Supp. 1201, 1209 (S.D.N.Y. 1986) (Sweet, J.) (“Mere general statements of comparison,

declaring that the defendant's goods are the best on the market … are privileged"); Avon Prods. v. S.C. Johnson & Son, 1994 U.S. Dist. LEXIS 7950, *24, n.11 (S.D.N.Y. June 10, 1994) (Schwartz, J.) (holding that commercial claiming product is "100 times better" was mere puffing, noting "it would strain credulity for us to infer that the '100 times' figure implies the existence of a particular scientific test supporting the challenged claim"); American Express Travel Related Services Co. v. Mastercard Int'l, Inc., 776 F. Supp. 787, 791-792 (S.D.N.Y. 1991) (Motley, J.); AutoInfo, Inc. v. Hollander Publishing Co., 1991 U.S. Dist. LEXIS 5290, *11 (S.D.N.Y. April 18, 1991). Plaintiff has not even attempted to distinguish the Bose or Nikkal cases cited in Ryko's Moving brief, as both are directly on point and defeat her argument.

**d. Plaintiff is Not Entitled to Yet Another Chance To Replead**

Ostensibly recognizing the weakness of her claims, Plaintiff, in a footnote, makes a perfunctory request for leave to replead her Lanham Act claim. Opp. Br. at 7, n. 2. Because Plaintiff offers no explanation as to how she could conceivably state a claim under the Lanham Act, and provides no explanation of what factual allegations she could possibly allege that would withstand another motion to dismiss, her request should be denied. Lewis ex rel. American Express Co. v. Robinson (In re American Express Co. Shareholder Litig.), 39 F.3d 395, 402 (2d Cir. 1994). Any attempt to cure the incurable nature of the claims Plaintiff is seeking to assert would be futile, and should not be permitted. Prudential Ins. Co. v. BMC Industries, Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (Sweet, J.) (denying plaintiff's motion to amend its complaint, noting that "it is inappropriate to grant leave when the amendment would not survive a motion to dismiss."); Bruce v. Martin, 702 F. Supp. 66, 69 (S.D.N.Y. 1988) (Sweet, J.) (same). When, as here, Plaintiff has provided no details as to how she would amend her complaint in a manner that would survive dismissal, her "bare request in an opposition to a motion to dismiss" is insufficient to justify granting leave to amend yet again. Copeland ex rel. NBTY, Inc. v. Rudolph, 160 Fed.

Appx. 56, 59 (2d Cir. 2005)(affirming denial of leave to amend). Plaintiff's Lanham Act claim should be dismissed with prejudice.

## II. PLAINTIFF SHOULD BE REQUIRED TO PLEAD A MORE DEFINITE STATEMENT OF HER CLAIMS

As noted in greater detail in Ryko's moving brief, the Second, Seventh and Eighth Claims of Plaintiff's Amended Complaint, for breach of contract, false advertising and an accounting, lack even the most basic factual allegations, and vaguely allege unspecified bad acts by Ryko related to "various" unidentified Zappa recordings. Courts within the Second Circuit have held that when a plaintiff alleges false misrepresentations of the type alleged here, she must provide, at a minimum, the specific content of the statements and explain how they are false. Volunteer Firemen's Ins. Servs. v. McNeil & Co., 221 F.R.D. 388, 393 (W.D.N.Y. 2004); Barr Lab., Inc. v. Quantum Pharmics, Inc., 827 F. Supp. 111, 118 (E.D.N.Y. 1993). Here, Plaintiff has provided no such detail. Similarly, Plaintiff's breach of contract claim is so vague and ambiguous that Ryko is unable to frame a proper response. Given the long history between the parties, the 1999 Settlement Agreement executed between the parties,[5] and the literally hundreds of sound recordings that could potentially be at issue, it is not asking much to expect Plaintiff to provide a more definite statement of the specific bases for her claims.

In light of this Court's Local Civil Rule 33.3, which limits Ryko's ability to obtain the specific bases of Plaintiff's claims through the use of interrogatories, it is even more important, and certainly within this Court's discretion, that Plaintiff be ordered to provide this basic information regarding her claims at the pleading stage, to permit Ryko to formulate an adequate

[5] Claims related to Ryko's sale of vinyl albums prior to 1999 were released under the Settlement Agreement. Similarly, any claims related to Ryko's sales of its 1996 release "Strictly Commercial: The Best of Frank Zappa," were also released by the settlement. Unless Plaintiff is required to identify the bases for her claims, Ryko fears it will have to engage in expensive discovery before it can pin Plaintiff down on her vague claims and seek their dismissal.

defense.[6] Plaintiff suggests that Ryko's motion for a more definite statement should be denied because "the detail sought . . . is obtainable through discovery." Opp. Br. at 15. Plaintiff, however, is not entitled to discovery on claims that she has not adequately pled. "Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Bussey v. Phillips, 419 F. Supp.2d 569, 592 (S.D.N.Y. 2006)(Marrero, J.). Accordingly, with respect to her breach of contract and accounting claims, and in the event the Court does not dismiss the Plaintiff's Lanham Act claim, the Court should order Plaintiff to provide the information requested by Ryko in its moving brief.[7]

## CONCLUSION

For the reasons above, the Court should (1) dismiss Plaintiff's Lanham Act claim with prejudice, and (2) grant Ryko's motion for a more definite statement as requested above.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

Attorneys for Defendant Rykodisc, Inc.

By: //s// Stephen R. Buckingham
Stephen R. Buckingham
Matthew Savare

Dated: July 22, 2008

---

[6] If the Court does not require Plaintiff to identify the alleged breaching acts or false statements, Ryko will be seeking leave to serve interrogatories that ask for this same specific information. Although Plaintiff has so far refused to identify any such specifics in her complaint, she must have some idea which acts and representations she bases her claims on, unless her Second, Seventh and Eighth Counts were filed without any factual basis, in violation of Rule 11.

[7] As a final point, at page 19 of her opposition, Plaintiff concedes that her Amended Complaint does not contain any copyright infringement claim based on Ryko altering or modifying artwork, or translating Zappa lyrics into foreign languages. Although Plaintiff purports to "reserve[] the right to assert such claims," Ryko understands this as a reservation of a right to seek leave to amend her complaint, and not a reservation of the right to assert such a claim based on the existing allegations of the Amended Complaint.

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 22nd day of July 2008 he served the attached reply brief in further support of Ryko's motion to dismiss and for a more definite statement on counsel for all parties to this action through Ryko's electronic filing of this brief, by virtue of plaintiff's counsel's registration with the Court to receive electronic filings.

By: ___ s/ Stephen R. Buckingham___