## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust

          Plaintiff,

            -v.-

RYKODISC, INC.

          Defendant.

---------------------------------------------------------

RYKODISC, INC.

          Counterclaim and Third Party Plaintiff,

            -v.-

ADELAIDE GAIL ZAPPA, individually and as sole trustee of THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust,

          Counterclaim Defendant,

            -and-

PUMPKO INDUSTRIES, LTD. d/b/a/ BARKING PUMPKIN RECORDS; THE ZAPPA FAMILY TRUST U/T/D NOVEMBER 15, 1990, a California Revocable Trust d/b/a ZAPPA RECORDS and MUNCHKIN MUSIC; INTERCONTINENTAL ABSURDITIES, LTD. d/b/a BARFKO SWILL; MOON UNIT ZAPPA; DWEEZIL ZAPPA; AHMET ZAPPA; and DIVA ZAPPA,

          Third Party Defendants.

---

Civil Action No. 08-CV-00396 (WHP)

**Hon. William H. Pauley III, U.S.D.J.**

**ANSWER, DEFENSES, AND SECOND AMENDED COUNTERCLAIMS AND THIRD PARTY CLAIMS**

<u>Document Filed Electronically</u>

**COUNTERCLAIM AND THIRD PARTY PLAINTIFF REQUESTS TRIAL BY JURY**

Defendant Rykodisc, Inc. ("Ryko"), by its attorneys, for its Answer, Defenses, and Second Amended Counterclaims to the Second Amended Complaint ("Complaint") of Adelaide Gail Zappa ("Plaintiff"), alleges as follows:

## ANSWER TO FIRST AMENDED COMPLAINT

### JURISDICTION AND VENUE

1.     Ryko admits that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a); 28 U.S.C. § 1332; and 28 U.S.C. § 1367(a), and otherwise denies the allegations of paragraph 1 of the Complaint.

2.     Ryko admits that venue is proper in this Court because the parties have expressly submitted to venue in this judicial district, and pursuant to 28 U.S.C. § 1391(b).

### THE PARTIES

3.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint.

4.     Ryko admits that it is a Minnesota corporation organized and existing under the laws of the state of Minnesota and that its principal place of business is at 30 Irving Place, New York, New York 10003.

### GENERAL ALLEGATIONS

5.     Ryko admits that Zappa released many albums, received Grammy nominations, and was posthumously inducted into the Rock and Roll Hall of Fame, and received a Grammy Lifetime Achievement Award, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint.

6.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint.

7.     Ryko admits that on or about October 6, 1994, Ryko, the Zappa Family Trust (the "Trust"), and others entered into a written agreement (the "1994 Agreement").  To the extent the

allegations contained in paragraph 7(a)-(i) of the Complaint purport to characterize Ryko's and the Trust's rights and obligations under the 1994 Agreement, the document speaks for itself, and Ryko denies any characterizations inconsistent with the 1994 Agreement.

8.      Ryko denies the allegations set forth in paragraph 8 of the Complaint.

a.      Ryko denies the allegations set forth in paragraph 8(a) of the Complaint, except admits that Ryko asserted to the Trust, because it is true, that pursuant to the 1994 Agreement, Ryko acquired not only the Subject Masters, but also any and all versions and mixes made from the same source materials from which the Subject Masters were derived.

b.      Ryko denies the allegations set forth in paragraph 8(b) of the Complaint, except admits that Ryko entered into agreements with certain parties providing for the sale or license of certain Subject Masters in digital form via the Internet.

c.      Ryko denies the allegations set forth in paragraph 8(c) of the Complaint, except admits that Ryko released certain Subject Masters in vinyl.

d.      Ryko denies the allegations set forth in paragraph 8(d) of the Complaint, except admits that Ryko entered into agreements with certain parties providing for the sale or license of the Restricted Cuts in digital form via the Internet.

e.      Ryko denies the allegations set forth in paragraph 8(e) of the Complaint.

f.      Ryko denies the allegations set forth in paragraph 8(f) of the Complaint, except admits that Ryko released compilation albums including "Strictly Commercial: The Best of Frank Zappa," pursuant to Ryko's contractual right to do so.

g.      Ryko denies the allegations set forth in paragraph 8(g) of the Complaint.

h.      Ryko denies the allegations set forth in paragraph 8(h) of the Complaint.

i.      Ryko denies the allegations set forth in paragraph 8(i) of the Complaint.

9.      Ryko admits that it entered into a series of written tolling agreements tolling the statutes of limitations from January 1, 2006 to January 15, 2008, but avers that these agreements were entered into by and among Plaintiff, the Trust, and Ryko.

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT)

10.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

11.     Ryko admits that a controversy exists between Plaintiff and Ryko regarding the 1994 Agreement, but states that such controversy also exists between Ryko and Pumpko Industries, Ltd. d/b/a Barking Pumpkin Records; and Moon Unit Zappa, Dweezil Zappa, Ahmet Zappa, and Diva Zappa.

12.     Ryko admits that Plaintiff makes the contentions set forth in paragraph 12 of the Complaint, but denies that such contentions have any merit.

13.     Ryko admits the allegation set forth in paragraph 13 of the Complaint.

14.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint, except Ryko admits that a judicial determination of Ryko's and Plaintiff's rights and duties under the 1994 Agreement is necessary and appropriate.

## SECOND CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

15.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

16.     Ryko denies the allegations set forth in paragraph 16 of the Complaint.

17.     Ryko denies the allegations set forth in paragraph 17 of the Complaint.

18.     Ryko denies the allegations set forth in paragraph 18 of the Complaint.

## THIRD CLAIM FOR RELIEF
## (COPYRIGHT INFRINGEMENT)

19.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

20.    Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint.

21.    Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the Complaint.

22.    Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint, except Ryko denies that copies of certificates of registration were attached to the Complaint.

23.    Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint.

24.    Ryko denies the allegations set forth in paragraph 24 of the Complaint, except admits that Ryko manufactured, distributed, and authorized others to sell an album entitled "Läther," which included the Läther Sound Recordings, and avers that Ryko did and does have the right to sell and authorize others to sell the Läther Sound Recordings and that Läther contained not only the Läther Sound Recordings, but also various Subject Masters.

25.    Ryko denies the allegations set forth in paragraph 25 of the Complaint, except admits that the Läther Sound Recordings are not Subject Masters, and avers that Ryko did and does have the right to sell and authorize others to sell the Läther Sound Recordings.

26.    Ryko denies the allegations set forth in paragraph 26 of the Complaint.

27.    Ryko denies the allegations set forth in paragraph 27 of the Complaint.

28.    Ryko denies the allegations set forth in paragraph 28 of the Complaint.

29.    Ryko denies the allegations set forth in paragraph 29 of the Complaint.

30.    Ryko denies the allegations set forth in paragraph 30 of the Complaint.

### FOURTH CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT)

31.    Ryko repeats and realleges each and every preceding response as if fully set forth herein.

32.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint.

33.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint.

34.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of the Complaint, except Ryko denies that copies of certificates of registration were attached to the Complaint.

35.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint.

36.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint.

37.     Ryko denies the allegations set forth in paragraph 37 of the Complaint, except admits that Ryko manufactured, distributed, and authorized others to sell an album entitled "Läther," which included the Läther Sound Recordings embodying the Läther Musical Compositions, and avers that Ryko did and does have the right to sell and authorize others to sell the Läther Sound Recordings embodying the Läther Musical Compositions and that Läther contained not only the Läther Sound Recordings embodying the Läther Musical Compositions, but also various Subject Masters embodying other musical compositions, which Ryko did and does have the right to sell and authorize others to sell pursuant to the 1994 Agreement.

38.     Ryko denies the allegations set forth in paragraph 38 of the Complaint.

39.     Ryko denies the allegations set forth in paragraph 39 of the Complaint.

40.     Ryko denies the allegations set forth in paragraph 40 of the Complaint.

41.     Ryko denies the allegations set forth in paragraph 41 of the Complaint.

42.     Ryko denies the allegations set forth in paragraph 42 of the Complaint.

43.     Ryko denies the allegations set forth in paragraph 43 of the Complaint.

## FIFTH CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT)

44.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

45.     Ryko admits the allegations of paragraph 45 of the Complaint.

46.     Ryko admits the allegations of paragraph 46 of the Complaint.

47.     Ryko admits the allegations of paragraph 47 of the Complaint.

48.     Ryko admits the allegations of paragraph 48 of the Complaint.

49.     Ryko admits that the Trust assigned the Restricted Cuts to Ryko, and to the extent the allegations contained in paragraph 49 of the Complaint otherwise purport to characterize Ryko's and the Trust's rights and obligations under the 1994 Agreement, the document speaks for itself, and Ryko denies any characterizations inconsistent therewith.  Ryko denies that copies of the license was attached to the Complaint

50.     Ryko denies the allegations set forth in paragraph 50 of the Complaint.

51.     Ryko denies the allegations set forth in paragraph 51 of the Complaint.

52.     Ryko denies the allegations set forth in paragraph 52 of the Complaint.

53.     Ryko denies the allegations set forth in paragraph 53 of the Complaint.

54.     Ryko denies the allegations set forth in paragraph 54 of the Complaint.

55.     Ryko denies the allegations set forth in paragraph 55 of the Complaint.

56.     Ryko denies the allegations set forth in paragraph 56 of the Complaint.

57.     Ryko denies the allegations set forth in paragraph 57 of the Complaint.

## SIXTH CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT)

58.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

59.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 of the Complaint.

60.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 of the Complaint.

61.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61 of the Complaint.

62.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint.

63.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 of the Complaint.

64.     Ryko denies the allegations set forth in paragraph 64 of the Complaint.

65.     Ryko denies the allegations set forth in paragraph 65 of the Complaint.

66.     Ryko denies the allegations set forth in paragraph 66 of the Complaint.

67.     Ryko denies the allegations set forth in paragraph 67 of the Complaint.

68.     Ryko denies the allegations set forth in paragraph 68 of the Complaint.

69.     Ryko denies the allegations set forth in paragraph 69 of the Complaint.

70.     Ryko denies the allegations set forth in paragraph 70 of the Complaint.

71.     Ryko denies the allegations set forth in paragraph 71 of the Complaint.

## SEVENTH CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT)

72.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

73.     Ryko denies the allegations set forth in paragraph 73 of the Complaint.

74.     Ryko denies the allegations set forth in paragraph 74 of the Complaint.

75.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75 of the Complaint.

76.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 of the Complaint.

77.     Ryko denies the allegations set forth in paragraph 77 of the Complaint, except admits that Ryko released a compilation album titled "Strictly Commercial: The Best of Frank Zappa," which included the songs "Joe's Garage," "Don't Eat the Yellow Snow," "Montana," and "Dancin' Fool."

78.     Ryko denies the allegations set forth in paragraph 78 of the Complaint.

79.     Ryko denies the allegations set forth in paragraph 79 of the Complaint.

80.     Ryko denies the allegations set forth in paragraph 80 of the Complaint.

81.     Ryko denies the allegations set forth in paragraph 81 of the Complaint.

82.     Ryko denies the allegations set forth in paragraph 82 of the Complaint.

## EIGHTH CLAIM FOR RELIEF
## (ACCOUNTING)

83.     Ryko repeats and realleges each and every preceding response as if fully set forth herein.

84.     Ryko denies the allegations set forth in paragraph 84 of the Complaint.

85.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85 of the Complaint.

86.     Ryko is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 of the Complaint.

87.     Ryko denies the allegations set forth in paragraph 87 of the Complaint.

88.     Ryko denies the allegations set forth in paragraph 88 of the Complaint.

## DEFENSES

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

**THIRD DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, implied consent, and/or acquiescence.

**FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of implied and/or express waiver.

**SIXTH DEFENSE**

Ryko does not infringe any valid claim of any of Plaintiff's alleged copyrights.

**SEVENTH DEFENSE**

Plaintiff's damages claims are barred, in whole or in part, by the provisions of 17 U.S.C. §§ 412, 504(c), and 507.

**EIGHTH DEFENSE**

Plaintiff's claims are barred by the doctrine of unclean hands and other principles of equity.

**NINTH DEFENSE**

Ryko either owns or is licensed to use all of the sound recordings on which Plaintiff's claims are based.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed under Fed. R. Civ. P. 19 to join the following indispensable parties: Pumpko Industries, Ltd. d/b/a Barking Pumpkin Records; and Moon Unit Zappa, Dweezil Zappa, Ahmet Zappa, and Diva Zappa.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the settlement agreement entered into by Ryko, the Plaintiff, and the Trust dated as March 5, 1999 (the "Settlement Agreement").

## TWELFTH DEFENSE

The injury or damage suffered by Plaintiff, if any, would be adequately compensated in an action at law for damages. Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to any equitable relief.

## THIRTEENTH DEFENSE

To the extent that Plaintiff is entitled to any payment pursuant to any claim or demand for relief in this action, Ryko is entitled to a set off in the amounts due to Ryko pursuant to the Counterclaims stated below.

## FOURTEENTH DEFENSE

At this time, Ryko does not precisely know all facts concerning the events and conduct that gave rise to this action in order to state all defenses.

## PRAYER FOR RELIEF

WHEREFORE, Ryko respectfully requests the following relief:

(a)     judgment in Ryko's favor dismissing all claims with prejudice and denying each and every prayer for relief contained therein;

(b)     Ryko's attorneys' fees, costs, and expenses in this action pursuant to paragraph 12.15 of the 1994 Agreement;

(c)     such other and further relief as the Court deems just in the circumstances.

## **RYKO'S COUNTERCLAIMS AND THIRD PARTY CLAIMS**

Ryko, by its attorneys, for its Second Amended Counterclaims and Third Party Claims against Counterclaim and Third Party Defendants, alleges as follows:

## **JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this action involves claims arising under the Copyright Laws of the United States, 17 U.S.C. §§ 101, *et seq.* and pursuant to 28 U.S.C. § 1332 in that Defendant and Counterclaim Plaintiff Rykodisc, Inc. ("Ryko"); Plaintiff and Counterclaim Defendant, Adelaide Gail Zappa ("Gail Zappa"), individually and as sole trustee of the Zappa Family Trust u/t/d November 15, 1990; Third Party Defendant Pumpko Industries, Ltd. d/b/a Barking Pumpkin Records ("Pumpko"); Third Party Defendant The Zappa Family Trust u/t/d November 15, 1990, a California Revocable Trust d/b/a Zappa Records and Munchkin Music (collectively, the "Trust"); Third Party Defendant Intercontinental Absurdities, Ltd. d/b/a Barfko Swill ("Barfko Swill"); and Third Party Defendants Moon Unit Zappa, Dweezil Zappa, Ahmet Zappa, and Diva Zappa (collectively, the "Zappa Family Parties") are citizens of different states and that the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

2.      This Court has personal jurisdiction and venue is proper in this Court, because (i) by virtue of paragraph 13.8 of the 1994 Agreement (as defined below), Ryko, Gail Zappa, the Trust, Pumpko, and the Zappa Family Parties have expressly submitted to the jurisdiction of this Court and venue in this judicial district, and (ii) Barfko Swill does business in this State, and venue is proper pursuant to 28 U.S.C. § 1391(c).

## THE PARTIES

3.      At all times mentioned herein, upon information and belief, Gail Zappa was and is an individual residing in Los Angeles, California, and is the sole trustee and the real party in interest acting on behalf of the Trust.

4.      At all times mentioned herein, upon information and belief, Pumpko was and is a California corporation organized and existing under the laws of California, with its principal place of business at 7720 Sunset Boulevard, Los Angeles, California.

5.      At all times mentioned herein, upon information and belief, Pumpko does business as Barking Pumpkin Records, with its principal place of business at 7720 Sunset Boulevard, Los Angeles, California.

6.      At all times mentioned herein, upon information and belief, the Trust was and is a California revocable trust, with its principal place of business at 11696 Ventura Boulevard, Los Angeles, California.

7.      At all times mentioned herein, upon information and belief, the Trust does business as Zappa Records, with its principal place of business at 11696 Ventura Boulevard, Los Angeles, California.

8.      At all times mentioned herein, upon information and belief, the Trust does business as Munchkin Music, with its principal place of business at 11696 Ventura Boulevard, Los Angeles, California.

9.      At all times mentioned herein, upon information and belief, Intercontinental Absurdities, Ltd. was and is a California corporation organized and existing under the laws of California, with its principal place of business at 11696 Ventura Boulevard, Los Angeles, California.

10.     At all times mentioned herein, upon information and belief, Intercontinental Absurdities, Ltd. does business as Barfko Swill, with its principal place of business at 11696 Ventura Boulevard, Los Angeles, California.

11.     At all times mentioned herein, upon information and belief, Moon Unit Zappa was and is an individual residing in the state of California.

12.      At all times mentioned herein, upon information and belief, Dweezil Zappa was and is an individual residing in the state of California.

13.     At all times mentioned herein, upon information and belief, Ahmet Zappa was and is an individual residing in the state of California.

14.     At all times mentioned herein, upon information and belief, Diva Zappa was and is an individual residing in the state California.

15.     The Zappa Family Parties are named as parties to these Counterclaims because they are signatories to the 1994 Agreement and parties potentially deriving rights from the Lather Agreement (as defined below), and Ryko seeks to ensure that any declaratory relief sought herein is binding on all signatories to the 1994 Agreement and potential beneficiaries under the Lather Agreement.  For purposes of clarity, Ryko is not seeking money damages against the Zappa Family Parties, either individually or collectively.

16.     At all times mentioned herein, Ryko was and is a Minnesota corporation organized and existing under the laws of the state of Minnesota, with its principal place of business in New York, New York.

## GENERAL ALLEGATIONS

### The 1994 Agreement

17.     On or about October 6, 1994, Gail Zappa, the Trust, Pumpko, and the Zappa Family Parties (collectively the "Grantors") entered into a written agreement (the "1994 Agreement") with Ryko.  Pursuant to the 1994 Agreement, Ryko acquired from Grantors, among other rights and entitlements, all of the right, title, and interest of Grantors in all the sound recordings of performances by Frank Zappa ("Zappa") between 1966 and 1993 that were commercially released or exploited by Zappa or the Grantors prior to the 1994 Agreement (the "Subject Masters").

18.     Such Subject Masters included (but were not limited to) (i) the 1966 album "Freak Out!", which contained the sound recordings "Who Are the Brain Police?", "Help I'm a Rock," and "Return of the Son of Monster Magnet"; (ii) the 1967 album "Lumpy Gravy," which contained the sound recording "Lumpy Gravy"; (iii) the 1968 album "We're Only in it for the Money"; (iv) the 1969 album "Hot Rats," which contained the sound recording "Peaches en Regalia"; (v) the 1973 album "Over-Nite Sensation," which contained the sound recording "Montana"; (vi) the 1974 album "Apostrophe (')," which contained the sound recordings "Don't Eat the Yellow Snow" and "St. Alfonzo's Pancake Breakfast"; (vii) the 1979 album "Joe's Garage, Act I," which contained the sound recording "On the Bus"; (viii) the 1987 album "The Guitar World According to Frank Zappa," which contained the sound recording "Solo from Heidelberg"; and (ix) the 1993 album "The Yellow Shark," which contained the sound recording "G-Spot Tornado."

19.     Pursuant to paragraph 1.1 of the 1994 Agreement and an assignment of copyright dated October 6, 1994 (the "Assignment of Copyright"), Ryko acquired "all right, title and interest, including without limitation, copyrights registered or unregistered and copyright applications and all renewals and extensions of such copyrights in each country and territory of the world . . . in and to all sound recordings of the performances of [Zappa], alone and/or with other performers, which have heretofore been commercially released or exploited by or with the Authority of [Zappa] or parties deriving rights from [Zappa], including, without limitation, those set forth on Schedule A . . . and also including the albums listed on such Schedule A which were not yet commercially released or exploited . . . (collectively referred to herein as 'Subject Masters.')."

20.     Except as otherwise specifically excluded in the 1994 Agreement, Ryko acquired all sound recordings of the performances of Zappa that were commercially released by Zappa (in addition to certain specified unreleased materials).

21.    Aside from those that are specifically identified, there are no exclusions to Ryko's ownership, and the parties expressly provided that Grantors could not take any actions in contravention of Ryko's rights in and to the Subject Masters.

22.    For example, paragraph 12.9 of the 1994 Agreement stated: "[N]othing contained herein shall be deemed to imply that Grantors may undertake (or authorize any party other than Ryko to undertake) such exploitations restricted to Ryko, including without limitation, the right to exploit Records unless so specifically stated herein, nor limit Ryko's right to exploit Subject Masters or Vault Masters accepted by Ryko in any manner other than the manner specifically prohibited to Ryko or reserved to Grantor."

23.    In addition to the grant of rights delineated in paragraph 1.1, the Grantors granted an extension of Ryko's rights in paragraph 1.4 of the 1994 Agreement, adding other "assets and rights" transferred (the "Assets and Rights").

24.    Paragraph 1.4(a) supplements the definition of "Subject Masters" with the words "whether the original or derivative work from inception."  This language clarified that any and all versions and mixes of the sound recordings of the performances of Zappa where such performances were commercially released, not limited to what was physically delivered by the Grantors to Ryko, were included in the definition of Subject Masters and hence assigned to Ryko.

25.    Pursuant to paragraph 1.4(c) and Article 2 of the 1994 Agreement, Ryko acquired certain rights in and to the "Classical Masters," the "Vault Masters," the "Bootleg Masters," and the Excluded Masters," collectively the "Other Masters."

26.    Pursuant to paragraph 1.4(e) of the 1994 Agreement, Ryko acquired the right to distribute the Subject Masters "of whatever kind and nature in any and all media now existing or hereafter discovered, developed or devised in any jurisdiction throughout the universe in perpetuity," which includes vinyl and all forms of digital distribution, including, but not limited to distribution over the Internet through sites such as iTunes.  Paragraph 1.4(e) further provides that Ryko's rights in the Subject Masters includes "all common law, statutory and all rights

under the law of copyright (whether or not under the Copyright Act) for the term of the copyright and all renewals and extensions thereof throughout the world."

27.    Pursuant to paragraph 2.4 of the 1994 Agreement, the Grantors transferred to Ryko on a quitclaim basis any rights the Grantors had in the Bootleg Masters, which paragraph 2.1 of the 1994 Agreement defines as "master recordings whose production, creation and exploitation were not authorized by [Zappa] or Grantors and are not under the ownership or control of Grantors."

28.    By assigning any rights Grantors may have had in the Bootleg Masters to Ryko, Grantors relinquished any right to thereafter exploit the Bootleg Masters in any way, shape or form.

29.    Schedule 2.4 of the 1994 Agreement lists the Bootleg Masters as follows: "Any Way the Wind Blows," "The Ark," "As an Am," "At the Circus: Circus Krone," "Conceptual Continuity," "Disconnected Synapses," "Electric Aunt Jemima: Family Dog," "Freaks & Mother*#@%!," "Our Man in Nirvana," "Piquantique," "Saarbrücken 1978," "Swiss Cheese/Fire," "Tango Na Minchia Tanta," "'Tis the Season to Be Jelly," and "Unmitigated Audacity."

30.    Pursuant to paragraph 1.2(a)(iii) of the 1994 Agreement, Ryko acquired the exclusive right to "reproduce, distribute, or otherwise use Album Cover Artwork on or in connection with Records and advertising of Records . . . ."

31.    Paragraph 1.2(a)(i) of the 1994 Agreement defines "Album Cover Artwork" as "artwork, photographic and other materials heretofore utilized by the Artist, Pumpko, the Trust, or any successor in interest to any of the foregoing, or approved by any of them in connection with the packaging of Records derived from the Subject Masters . . . . "

32.    In paragraph 4.19 of the 1994 Agreement, titled "Quiet Enjoyment," the Grantors represented and warranted that "none of the Grantors has done, nor will any of them do, any act or thing that will in any manner prevent or interfere with the full enjoyment by Ryko of all the Assets and Rights."

**Läther**

33.     In July 1996, Ryko and the Trust negotiated and agreed to a license agreement (the "Läther Agreement") whereby the Trust granted Ryko an exclusive, perpetual, worldwide, irrevocable license to exploit "any portions of the recordings on [the Läther album] which are not owned by Ryko."

34.     Pursuant to the Läther Agreement, the Trust also granted Ryko: (i) a mechanical license with respect to all the musical compositions contained on the Läther album, including, but not limited to the Läther Musical Compositions (as such term is defined in the Complaint); and (ii) an exclusive license to use and license others to use the artwork and artwork materials on album covers, packaging, and in advertising and promotion in connection with the Läther album.

35.     In full and complete consideration of these licenses, Ryko paid the Trust and the Trust accepted a fee in the amount of One Hundred Thousand Dollar ($100,000) (the "Läther Fee").

36.     After receiving the Läther Fee, the Trust caused to be delivered to Ryko the master sound recordings that were to be included in the Läther album, including, but not limited to the Läther Sound Recordings (as such term is defined in the Complaint).

37.     Gail Zappa wrote and delivered to Ryko the liner notes for the Läther album, and Dweezil Zappa designed and delivered to Ryko the cover artwork.

38.     In addition, the sound engineer/mixer of the Trust edited, assembled, and mastered certain "bonus" recordings for the Läther album.

39.     Later in 1996, Ryko invested considerable time, money, expenses, and opportunity costs manufacturing, distributing, and selling the Läther album.

40.     Ryko has accounted, computed, and paid the Trust the mechanical royalties for the musical compositions embodied in the Läther album pursuant to paragraph 5 of the Läther Agreement, and the Trust has accepted payment of same.

**Continued Disputes, Legal Action, and the Settlement**

41.     After three years of disputing virtually every action taken by Ryko under the 1994 Agreement, Gail Zappa, individually and on behalf of the Trust, commenced an action in this Court in 1997 (the "Action").

42.     The parties settled most, but not all, of their disagreements in a settlement agreement entered into by Ryko, Gail Zappa, and the Trust, dated as of March 5, 1999 (the "Settlement Agreement").   In paragraph 4(a) of the Settlement Agreement, Gail Zappa, individually and on behalf of the Trust, "release[d] Ryko, its successor, parent, principals, employees, officers, and stockholders, from all actions, causes of action, suits, claims and demands ('causes of action') interposed in the Action and any other claims or matters based upon facts of which [Gail Zappa and the Trust have] knowledge, which causes of action [Gail Zappa and the Trust] ever had or now has from the beginning of the world to the date of this release."

43.     In addition, pursuant to paragraph 4(b) of the Settlement Agreement, Gail Zappa, individually and on behalf of the Trust, expressly agreed that Ryko was permitted to continue to exploit "sound recordings featuring the performances of Frank Zappa" in the same manner of exploitation as Ryko had done so as of March 5, 1999 and of which Gail Zappa and the Trust had knowledge.

44.     Upon information and belief, as of March 5, 1999, Gail Zappa and the Trust knew that Ryko had entered into an agreement with GoodNoise/eMusic for the digital distribution of Subject Masters via the Internet.

45.     Upon information and belief, as of March 5, 1999, Gail Zappa and the Trust knew that Ryko had distributed certain Subject Masters in vinyl.

46.     In paragraphs 4(a), 4(b), and 18 of the Settlement Agreement, the parties stated that certain specified disputes were not resolved by the Settlement Agreement.

47.     The parties did not expressly reserve Gail Zappa's or the Trust's claims that Ryko's (i) agreements with third parties such as eMusic to digitally distribute the Subject

Masters to the public via the Internet and (ii) release of certain Subject Masters on vinyl impacted were prohibited by paragraph 12.11 of the 1994 Agreement because they impacted "integrity of the work."

48.     Accordingly, pursuant to paragraph 4(a) of the Settlement Agreement, Gail Zappa, individually and on behalf of the Trust, released Ryko from any and all claims accruing prior to March 5, 1999 in connection with the digital distribution of Subject Masters and the release of certain Subject Masters on vinyl.

49.     Similarly, pursuant to paragraph 4(b) of the Settlement Agreement, Gail Zappa, individually and on behalf of the Trust, expressly permitted Ryko to continue to digitally distribute or have third parties digitally distribute the Subject Masters and to release Subject Masters in vinyl.

50.     In addition, as part of the Settlement Agreement and as a material condition thereto, the Trust and Ryko entered into a trademark licensing agreement as of March 5, 1999 (the "License Agreement") whereby, without derogating Ryko's rights under the 1994 Agreement, the Trust granted to Ryko the right to use certain marks; Zappa's name, likeness, and signature; and cover art in advertisements, catalogues, and promotional materials in connection with the Subject Masters.

### Post-Settlement Problems: Tortious Interference, Breaches of Contract, and Copyright Infringement by Gail Zappa, Zappa Records, and Barfko Swill

51.     Ryko, in or around 1998 or early 1999, began to investigate additional ways to distribute its Subject Masters.

52.     In or around early 1999, Ryko entered into agreements with several online retailers, including, but not limited to eMusic/Goodnoise Corporation, whereby the retailers promoted and sold certain Subject Masters via the Internet in the MPEG 1, Layer 3 ("MP3") digital format.

53.     On or around February 3, 1999, Ryko issued a public press release announcing that it had entered into an agreement with Goodnoise Corporation whereby Goodnoise would digitally distribute, among other Ryko sound recordings, the Subject Masters.

54.     Despite the facts that (i) Grantors assigned the copyrights in and to the Subject Masters to Ryko; (ii) the 1994 Agreement expressly provided that Ryko could distribute the Subject Masters "in any and all media now existing or hereafter discovered;" (iii) digital distribution had become an accepted method of distributing sound recordings and was quickly becoming the industry standard; and (iv) upon information and belief, Gail Zappa and the Trust themselves were seeking to enter into deals to have certain Vault Masters digitally distributed, Gail Zappa, individually and on behalf of the Trust, objected to Ryko, claiming falsely that Ryko was prohibited from digitally distributing the Subject Masters (even though Ryko owned them), because such distribution impacted the "integrity" of the works.

55.     Ryko rejected such reasoning, pointing out not only that Ryko owned all right, title, and interest in and to the Subject Masters (including the copyrights), but also that the 1994 Agreement expressly permitted Ryko to distribute the Subject Masters "in any and all media now existing or hereafter discovered."

56.     Gail Zappa, individually and on behalf of the Trust, unwilling to acknowledge and accept Ryko's bargained-for rights, endeavored to frustrate Ryko's contractual and ownership rights by sending cease and desist letters to various online retailers falsely claiming that Ryko did not have the right to digitally distribute the Subject Masters.

57.     Rather than sue Ryko for breach of the 1994 Agreement, Gail Zappa, individually and on behalf of the Trust, instead chose to file suit against eMusic in March 2001, alleging copyright infringement of thirty-seven musical compositions for the Subject Masters that eMusic was digitally distributing pursuant to an agreement with Ryko.

58.     Based on Gail Zappa's and the Trust's objections and the lawsuit against eMusic, Ryko, for a long period of time, refrained from entering into any other agreements regarding the

digital distribution of the Subject Masters, although it has always maintained its position that it has the right to do so.

59.     In early 2003, as digital distribution was gaining in popularity, Ryko again explored the possibility of selling its Subject Masters, this time through Apple's iTunes and other online retailers, such as the legitimate incarnation of Napster.

60.     Upon information and belief, at the same time, Gail Zappa and the Trust themselves were seeking to enter into a deal with Apple to digitally distribute certain Vault Masters.

61.     As Ryko was evaluating a possible deal with Apple, Gail Zappa and the Trust knew of Ryko's desire to digitally distribute the Subject Masters.  In fact, Gail Zappa's and the Trust's sound engineer offered to assist Ryko in converting Subject Masters to MP3 files suitable for sale on iTunes.

62.     In or around June 2003, Gail Zappa claimed that she was now "agreeable" to Ryko's entering into a deal with Apple regarding the digital distribution of the Subject Masters. However, Gail Zappa insisted on imposing certain conditions on such approval and payment of the full statutory mechanical rate for songs digitally distributed (even though the 1994 Agreement provided for a lower mechanical rate).

63.     Ryko rejected Gail Zappa's attempt to renegotiate the 1994 Agreement, and entered into an agreement with Apple.

64.     Following Ryko's rejection of her demands, Gail Zappa, individually and on behalf of the Trust, resumed sending threatening letters to online retailers with which Ryko was doing business or had a reasonable expectation of doing business.

65.     For example, upon information and belief, in or around 2004, Gail Zappa and the Trust sent another letter to eMusic falsely claiming that Ryko did not have the right to digitally distribute the Subject Masters.

66.     On or around August 5, 2004, a representative from eMusic sent Ryko an e-mail instructing Ryko not to send eMusic any Subject Masters for digital download, basing his decision solely on the objections and threats made by Gail Zappa and the Trust.

67.     Upon information and belief, Gail Zappa and the Trust sent similar letters and made identical threats to other online retailers, including Apple and Napster.

68.     In or around August 2006, the Subject Masters that were previously available through Apple's iTunes were pulled from the online store as a direct result of Gail Zappa's and the Trust's threats and allegations.

69.     As a direct and proximate result of Gail Zappa's and the Trust's interference, Ryko was unable to enter into deals with several online retailers for the digital distribution of the Subject Masters, as such retailers were unwilling to defend a threatened lawsuit from Gail Zappa.

70.     Likewise, Gail Zappa's and the Trust's false statements and threats interfered with Ryko's business relationships with other online retailers with which Ryko had an existing business relationship, including, without limitation, eMusic and Apple.

71.     Beginning in or about October 2006, Gail Zappa, the Trust (doing business as Zappa Records), and Barfko Swill, without Ryko's permission, reproduced, manufactured, marketed, released, distributed, and commenced selling a two-disc set and a four-disc set titled "The MOFO Project/Object," which is a re-release on CD of the original 1966 vinyl mix of "Freak Out!," together with additional studio outtakes and live recordings.

72.     The MOFO Project/Object contains graphics and text that highlight the fact that it is a re-release of the Subject Masters that comprise Freak Out!, which is owned by Ryko.  In fact, the label printed on the CD in the MOFO Project/Object sets that contains the entire Freak Out! album has the words "FREAK OUT" prominently printed in large text that covers substantially the entire CD surface.

73.     The MOFO Project/Object unfairly and in violation of the 1994 Agreement and Ryko's rights in the Subject Masters competes directly against Ryko's sales of Freak Out!

74.     In or about June 2008, Gail Zappa, the Trust (doing business as Zappa Records), and Barfko Swill, again without Ryko's permission, reproduced, manufactured, marketed, released, distributed, and commenced selling a CD entitled "One Shot Deal," which contained as its fifth song "Occam's Razor" and as its sixth song "Heidelberg."

75.     "Occam's Razor" contains a guitar solo that is the exact same performance as that embodied in the song "On the Bus," which was a song from "Joe's Garage, Act I."

76.     "Heidelberg" was originally released as "Solo from Heidelberg" in 1987 by Guitar World on a cassette titled "The Guitar World According to Frank Zappa."

77.     "The Guitar World According to Frank Zappa" contained the following eight sound recordings (the "Guitar World Recordings"), seven of which were registered for United States copyright by the Trust in 1987 (doing business as Munchkin Music): (i) "Down in de Dew," copyright registration number PA0000366445; (ii) "Excerpt From Revised Music for Guitar and Low Budget Symphony Orchestra," copyright registration number PA0000366444; (iii) "Sleep Dirt," copyright registration number PA0000366443; (iv) "Solo from Atlanta," copyright registration number PA0000366449; (v) "Solo from Cologne," copyright registration number PA0000366447; (vi) "Solo from Heidelberg," copyright registration PA0000366448; (vii) "Things That Look Like Meat," copyright registration number PA0000366446; and (viii) "Friendly Little Finger."

78.     In or about September 2008, Gail Zappa and the Trust, again without Ryko's permission, reproduced, manufactured, marketed, released, distributed, and commenced selling Subject Masters as downloadable cell phone ringtones in RealTone compressed digital format, including, but not limited to, the following ringtones: (i) "Brain Police Freak Out," (ii) "Brain Police Intro," (iii) "Brain Police Kazoo Outro," (iv) "Don't Eat the Yellow Snow," (v) "G-Spot Tornado," (vi) "Help I'm A Rock," (vii) "Montana Intro," (viii) "Peaches En Regalia Intro," (ix) "Piano Strings," (x) "St. Alphonso Rollo Interlude," (xi) "Rat Tomago," and (xi) "Suzy Creamcheese" (collectively, the "Subject Master Ringtones").

79.     The ringtones "Brain Police Freak Out," "Brain Police Intro," and "Brain Police Kazoo Outro" are all sampled sound recordings taken from the sound recording "Who Are the Brain Police?", which is included on the album "Freak Out!"

80.     Similarly, the ringtone "Suzy Creamcheese" is a sampled sound recording taken from the sound recording "Return of the Son of Monster Magnet," which is included on the album "Freak Out!"

81.     The ringtone "Help I'm a Rock" is a sampled sound recording taken from the sound recording "Help I'm A Rock," which is included on the album "Freak Out!"

82.     The ringtone "Don't Eat the Yellow Snow" is a sampled sound recording taken from the sound recording "Don't Eat the Yellow Snow," which is included on the album "Apostrophe (')."

83.     The ringtone "St. Alphonso Rollo Interlude" is a sampled sound recording taken from the sound recording "St. Alfonzo's Pancake Breakfast," which is included on the album "Apostrophe (')."

84.     The ringtone "G-Spot Tornado" is a sampled sound recording taken from the sound recording "G-Spot Tornado," which is included on the album "The Yellow Shark."

85.     The ringtone "Montana Intro" is a sampled sound recording taken from the sound recording "Montana," which is included on the album "Over-Nite Sensation."

86.     The ringtone "Peaches en Regalia Intro" is a sampled sound recording taken from the sound recording "Peaches en Regalia," which is included on the album "Hot Rats."

87.     The ringtone "Piano Strings" is a sampled sound recording taken from the sound recording "Lumpy Gravy," which is included on the album "Lumpy Gravy."

88.     The ringtone "Rat Tomago" is a sampled sound recording taken from the sound recording "Rat Tomago," which is included on the album "Sheik Yerbouti."

89.     Gail Zappa and the Trust reproduced, manufactured, marketed, released, distributed, and sold the Subject Master Ringtones without authorization or permission from Ryko.

90.     In or about late 2008, Gail Zappa and the Trust, again without the permission of Ryko, made the Bootleg Masters (released under the "Beat the Boots" series) available for digital download in MP3 format through Apple at the iTunes Store, through Amazon at Amazonmp3, and through other websites via TuneCore.com, the digital music mastering service.

91.     For example, Apple's iTunes Store currently offers all of the fifteen Bootleg Masters for digital download in MP3 format as follows: "As an Am," "The Ark," "Freaks & Mother*#@%!," "Unmitigated Audacity," "Any Way the Wind Blows," "'Tis the Season to Be Jelly," "Saarbrücken 1978," "Piquantique," "Tengo Na Minchia Tanta," "Swiss Cheese/Fire," "Conceptual Continuity," "At the Circus," "Disconnected Synapses," "Our Man in Nirvana, " and "Elect Aunt Jemima."

92.     In or about January 2009, Gail Zappa and the Trust, again without the permission of Ryko, negotiated and executed an agreement with Classic Records pursuant to which Classic Records has reproduced, manufactured, marketed, released, distributed, and commenced selling the album "Hot Rats" as a vinyl record.

93.     Classic Records' album "Hot Rats" is a re-release on vinyl of the Subject master "Hot Rats," which is owned by Ryko.

94.     The "Hot Rats" being sold by Classic Records contains graphics and text that highlight the fact that it is a re-release of the Subject Masters that comprise "Hot Rats," which is owned by Ryko.  In fact, Classic Records' album contains the exact same tracks, the identical performances, and the exact same cover art as the album being sold by Ryko.

95.     The vinyl "Hot Rats" sold through Classic Records unfairly and in violation of the 1994 Agreement and Ryko's rights in the Subject Masters competes directly against Ryko's sales of "Hot Rats."

96.     In or about January 2009, Gail Zappa, the Trust (as Zappa Records), and Barfko Swill, again without the permission of Ryko, reproduced, manufactured, marketed, released, distributed, and commenced selling a three-disc set titled "Lumpy Money," which includes re-

releases on CD of the Subject masters "Lumpy Gravy" and "We're Only in it for the Money," together with additional material.

97.     The interior graphics and text of "Lumpy Money" highlight the fact that it is a re-release of the Subject Masters that comprise "Lumpy Gravy" and "We're Only in it for the Money," which are both owned by Ryko.  In fact, much of the artwork contained in "Lumpy Money" is the exact same artwork used in the packaging of "Lumpy Gravy" and "We're Only in it for the Money."

98.     "Lumpy Money" unfairly and in violation of the 1994 Agreement and Ryko's rights in the Subject Masters competes directly against Ryko's sales of "Lumpy Gravy" and "We're Only in it for the Money."

99.     By virtue of the 1994 Agreement and the Assignment of Copyright, Ryko owns all rights, title, and interest, including all copyrights in and to (i) "Freak Out!," including all sound recordings of the performances included in "Who Are the Brain Police?", "Return of the Son of Monster Magnet," and "Help I'm a Rock"; (ii) "Apostrophe (')," including all sound recordings of the performances included in "Don't Eat the Yellow Snow" and "St. Alfonzo's Pancake Breakfast"; (iii) "The Yellow Shark," including all sound recordings of the performances included in "G-Spot Tornado"; (iv) "Over-Nite Sensation," including all sound recordings of the performances included in "Montana"; (v) "Hot Rats," including all sound recordings of the performances included in "Peaches en Regalia"; (vi) "Lumpy Gravy," including all sound recordings of the performances included in "Lumpy Gravy"; (vii) "Sheik Yerbouti," including all sound recordings of the performances included in "Rat Tomago"; (viii) "Joe's Garage, Act I," including all sound recordings of the performances included in "On the Bus"; (ix) the Guitar World Recordings, including all sound recordings of the performances included in "Solo from Heidelberg"; (x) the Bootleg Masters; and (xi) "We're Only in it for the Money."

100.    Gail Zappa, the Trust (as Zappa Records), and Barfko Swill reproduced, manufactured, marketed, released, distributed, and sold "The MOFO Project/Object," "Occam's

Razor," "Heidelberg," the Subject Master Ringtones, "Beat the Boots," "Lumpy Money," and "Hot Rats" without authorization or permission from Ryko.

101.    Through these actions, Gail Zappa, the Trust, and Barfko Swill have diminished the value of the Subject Masters and frustrated the purpose of the 1994 Agreement.

102.    Upon information and belief, and based on public comments recently made by Gail Zappa, it appears that Gail Zappa, the Trust, and Barfko Swill have plans to release additional albums and materials that will infringe Ryko's rights, including its copyrights, in and to the Subject Masters and/or violate the 1994 Agreement.

**FIRST CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT UNDER CAL. CIV. CODE 980(A)(2))**
**(AGAINST GAIL ZAPPA, THE TRUST, AND BARFKO SWILL)**

103.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

104.    Pursuant to the 1994 Agreement, Ryko obtained the sole, exclusive, and complete right to manufacture, distribute, and sell phonorecords of "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," which were all "fixed" by Zappa, a California resident, in his studio in California, prior to February 15, 1972, and therefore are subject to copyright protection under California's statutory law.

105.    Accordingly, Ryko possesses exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," pursuant to California Civil Code section 980(a)(2).

106.    Through Gail Zappa's, the Trust's (as Zappa Records), and Barfko Swill's conduct as averred herein, Gail Zappa, the Trust, an Barfko Swill have violated Ryko's exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money."

107.     The foregoing acts of infringement by Gail Zappa, the Trust, and Barfko Swill have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

108.     As a direct and proximate result of Gail Zappa's, the Trust's, and Barfko Swill's conduct in violation of Ryko's exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," Gail Zappa, the Trust, and Barfko Swill have received proceeds, and Ryko has been damaged in an amount that shall be proved at trial.

109.     Accordingly, Ryko is entitled to judgment against Gail Zappa, the Trust, and Barfko Swill awarding Ryko damages, interest, costs, attorneys' fees, an injunction to prevent future infringement by Gail Zappa, the Trust, and Barfko Swill and the impounding of all copies of "The MOFO Project/Object," "Hot Rats," "Lumpy Money," and any other infringing records they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action, in whatever form, in Gail Zappa's, the Trust's, and Barfko Swill's possession or control.

### SECOND CLAIM FOR RELIEF
### (COMMON LAW COPYRIGHT INFRINGEMENT)
### (AGAINST GAIL ZAPPA, THE TRUST, AND BARFKO SWILL)

110.     Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

111.     Pursuant to the 1994 Agreement, Ryko obtained the sole, exclusive, and complete right to manufacture, distribute, and sell phonorecords of "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," which were all "fixed" prior to February 15, 1972, and therefore are subject to copyright protection under applicable state common law.

112.     Accordingly, Ryko possesses exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," under the common law.

113.     Through Gail Zappa's, the Trust's (as Zappa Records), and Barfko Swill's conduct as averred herein, Gail Zappa, the Trust, and Barfko Swill have violated Ryko's

exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money,"

114.    The foregoing acts of infringement by Gail Zappa, the Trust, and Barfko Swill have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

115.    As a direct and proximate result of Gail Zappa's, the Trust's, and Barfko Swill's conduct in violation of Ryko's exclusive ownership interests in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," Gail Zappa, the Trust, and Barfko Swill have received proceeds, and Ryko has been damaged in an amount that shall be proved at trial.

116.    Accordingly, Ryko is entitled to judgment against Gail Zappa, the Trust, and Barfko Swill awarding Ryko damages, interest, costs, attorneys' fees, an injunction to prevent future infringement by Gail Zappa, the Trust, and Barfko Swill and the impounding of all copies of "The MOFO Project/Object," "Hot Rats," "Lumpy Money," and any other infringing records they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action, in whatever form, in Gail Zappa's, the Trust's, and Barfko Swill's possession or control.

## THIRD CLAIM FOR RELIEF
### (STATUTORY AND COMMON LAW UNFAIR COMPETITION)
### (AGAINST GAIL ZAPPA, THE TRUST, AND BARFKO SWILL)

117.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

118.    The foregoing acts and conduct of Gail Zappa, the Trust (as Zappa Records), and Barfko Swill constitute an appropriation and invasion of the property rights of Ryko in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," and constitute unfair competition under California Business & Professions Code section 17200 and under the common law.

119.    The foregoing acts of misappropriation and invasion of Ryko's property rights in and to "Freak Out!," "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

120.    As a direct and proximate result of Gail Zappa's, the Trust's, and Barfko Swill's conduct as averred herein, Ryko is further entitled to recover all proceeds and other compensation received or to be received by Gail Zappa, the Trust, and/or Barfko Swill arising from their sale, license, or other exploitation of "MOFO Project/Object," "Hot Rats," "Lumpy Money," and any other infringing records they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action, in whatever form.

121.    Ryko requests the Court to order Gail Zappa, the Trust, and Barfko Swill to render an accounting to ascertain the amount of such profits and compensation.

122.    As a direct and proximate result of Gail Zappa's, the Trust's, and Barfko Swill's unfair competition, Ryko has been damaged, and Gail Zappa, the Trust, and Barfko Swill have been unjustly enriched, in an amount that shall be proved at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Gail Zappa, the Trust, and Barfko Swill are constructive trustees for the benefit of Ryko and an order that Gail Zappa, the Trust, and Barfko Swill convey to Ryko all the gross receipts received or to be received that are attributable to infringement of "Freak Out!," "Hot Rats," "Lumpy Gravy," "We're Only in it for the Money," and any other Subject Masters they infringe during the pendency of this action.

## FOURTH CLAIM FOR RELEF
### (COPYRIGHT INFRINGEMENT)
### (AGAINST GAIL ZAPPA, THE TRUST, AND BARFKO SWILL)

123.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

124.    "Joe's Garage, Act I" was duly registered for federal copyright protection in the United State Copyright Office on November 18, 1983 under the registration number SR-49-712.

125.    "Solo from Heidelberg," along with the other sound recordings from "The Guitar World According to Frank Zappa," was duly registered for federal copyright protection in the United States Copyright Office on July 27, 1987 under the registration number PA0000366448.

126.    By virtue of the Assignment of Copyright and pursuant to the 1994 Agreement, Ryko obtained sole ownership of all rights, title, and interest in and to the copyrights in the sound recordings embodied in the album entitled "Joe's Garage, Act I" including, but not limited to "On the Bus" and the sound recordings embodied on the cassette entitled "The Guitar World According to Frank Zappa," including, but not limited to "Solo from Heidelberg."

127.    By reproducing, copying, making a derivative work from, releasing, publicly performing, distributing, and selling without Ryko's permission a portion of the sound recording "On the Bus," which is a track from "Joe's Garage, Act I," Gail Zappa, the Trust (as Zappa Records), and Barfko Swill have infringed Ryko's exclusive rights in "Joe's Garage, Act I," under 17 U.S.C. § 106 (1) - (4).

128.    By reproducing, copying, releasing, publicly performing, distributing, and selling without Ryko's permission "Heidelberg," Gail Zappa, the Trust, and Barfko Swill have infringed Ryko's exclusive rights in "Solo from Heidelberg," under 17 U.S.C. § 106 (1), (3), and (4).

129.    The foregoing acts of infringement by Gail Zappa, the Trust, and Barfko Swill have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

130.    Accordingly, Ryko is entitled to judgment against Gail Zappa, the Trust, and Barfko Swill awarding Ryko its actual damages and Gail Zappa's, the Trust's, and Barfko Swill's profits (or statutory damages in the amount of $150,000 with respect to each sound recording infringed), interest, costs, attorneys' fees, an injunction to prevent future infringement by Gail Zappa, the Trust, and Barfko Swill and the impounding of all copies of the album "One Shot Deal," which contains the infringing sound recordings, in whatever form, in Gail Zappa's, the Trust's, and Barfko Swill's possession or control.

**FIFTH CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT UNDER CAL. CIV. CODE 980(A)(2))**
**(AGAINST GAIL ZAPPA AND THE TRUST)**

131.     Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

132.     Pursuant to the 1994 Agreement, Ryko obtained the sole, exclusive, and complete right to manufacture, distribute, and sell phonorecords of "Freak Out!", "Lumpy Gravy," and "Hot Rats," which were all "fixed" by Zappa, a California resident, in his studio in California, prior to February 15, 1972, and therefore are subject to copyright protection under California's statutory law.

133.     Accordingly, Ryko possesses exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats" and all Subject Masters included therein, pursuant to California Civil Code section 980(a)(2).

134.     As alleged above, Gail Zappa and the Trust have reproduced, manufactured, marketed, released, distributed, and sold the following Subject Master Ringtones without authorization or permission from Ryko: (i) "Brain Police Freak Out," "Brain Police Intro," "Brain Police Kazoo Outro," "Suzy Creamcheese," and "Help I'm a Rock," all of which were sampled from the album "Freak Out!", (ii) "Peaches en Regalia Intro," which was sampled from the album "Hot Rats," and (iii) "Piano Strings," which was sampled from the album "Lumpy Gravy."

135.     Through such conduct as averred herein, Gail Zappa and the Trust have violated Ryko's exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats."

136.     The foregoing acts of infringement by Gail Zappa and the Trust have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

137.     As a direct and proximate result of Gail Zappa's and the Trust's conduct in violation of Ryko's exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and

"Hot Rats," Gail Zappa and the Trust have received proceeds, and Ryko has been damaged in an amount that shall be proved at trial.

138.    Accordingly, Ryko is entitled to judgment against Gail Zappa and the Trust awarding Ryko damages, interest, costs, attorneys' fees, an injunction to prevent future infringement by Gail Zappa and the Trust.

### SIXTH CLAIM FOR RELIEF
### (COMMON LAW COPYRIGHT INFRINGEMENT)
### (AGAINST GAIL ZAPPA AND THE TRUST)

139.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

140.    Pursuant to the 1994 Agreement, Ryko obtained the sole, exclusive, and complete right to manufacture, distribute, and sell phonorecords of "Freak Out!", "Lumpy Gravy," and "Hot Rats," which were all "fixed" by Zappa, a California resident, in his studio in California, prior to February 15, 1972.

141.    Accordingly, Ryko possesses exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats," and all Subject Masters included therein, under the common law.

142.    Through Gail Zappa's and the Trust's conduct as averred herein, Gail Zappa and the Trust have violated Ryko's exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats."

143.    The foregoing acts of infringement by Gail Zappa and the Trust have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

144.    As a direct and proximate result of Gail Zappa's and the Trust's conduct in violation of Ryko's exclusive ownership interests in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats," Gail Zappa and the Trust have received proceeds, and Ryko has been damaged in an amount that shall be proved at trial.

145.    Accordingly, Ryko is entitled to judgment against Gail Zappa and the Trust awarding Ryko damages, interest, costs, attorneys' fees, an injunction to prevent future infringement by Gail Zappa and the Trust.

**SEVENTH CLAIM FOR RELIEF**
**(STATUTORY AND COMMON LAW UNFAIR COMPETITION)**
**(AGAINST GAIL ZAPPA AND THE TRUST)**

146.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

147.    The foregoing acts and conduct of Gail Zappa and the Trust constitute an appropriation and invasion of the property rights of Ryko in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats," and constitute unfair competition under California Business & Professions Code section 17200 and under the common law.

148.    The foregoing acts of misappropriation and invasion of Ryko's property rights in and to "Freak Out!", "Lumpy Gravy," and "Hot Rats," have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

149.    As a direct and proximate result of Gail Zappa's and the Trust's conduct as averred herein, Ryko is further entitled to recover all proceeds and other compensation received or to be received by Gail Zappa and/or the Trust arising from their sale, license, or other exploitation of the following Subject Master Ringtones:  (i) "Brain Police Freak Out," (ii) "Brain Police Intro," (iii) "Brain Police Kazoo Outro," (iv) "Suzy Creamcheese," (v) "Help I'm a Rock," (vi) "Peaches en Regalia Intro," and (vii) "Piano Strings."

150.    Ryko requests the Court to order Gail Zappa and the Trust to render an accounting to ascertain the amount of such profits and compensation.

151.    As a direct and proximate result of Gail Zappa's and the Trust's unfair competition, Ryko has been damaged, and Gail Zappa and the Trust have been unjustly enriched, in an amount that shall be proved at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration

by this Court that Gail Zappa and the Trust are constructive trustees for the benefit of Ryko and an order that Gail Zappa and the Trust convey to Ryko all the gross receipts received or to be received that are attributable to infringement of "Freak Out!", "Lumpy Gravy," and "Hot Rats."

### EIGHTH CLAIM FOR RELEF
### (COPYRIGHT INFRINGEMENT)
### (AGAINST GAIL ZAPPA AND THE TRUST)

152.   Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

153.   "Don't Eat the Yellow Snow" and "St. Alfonzo's Pancake Breakfast," along with the other sound recordings from "Apostrophe ('),", were all published with proper notice on or around March 25, 1974 and were duly registered for federal copyright protection in the United States Copyright Office on or around October 22, 1975 under the registration number N-27231.

154.   "Montana," along with the other sound recordings from "Over-Nite Sensation," were all published with proper notice on or around September 20, 1973 and were duly registered for federal copyright protection in the United States Copyright Office on or around November 8, 1973 under the registration number N-10640.

155.   "G-Spot Tornado," along with the other sound recordings from "The Yellow Shark," were duly registered for federal copyright protection in the United States Copyright Office on July 23, 1993 under the registration number SRu-282934.

156.   "Rat Tomago," along with the other sound recordings from "Sheik Yerbouti," were duly registered for federal copyright protection in the United States Copyright Office on November 18, 1983 under the registration number SR-49711.

157.   By virtue of the Assignment of Copyright and pursuant to the 1994 Agreement, Ryko obtained sole ownership of all rights, title, and interest in and to the copyrights in "Apostrophe ('),", "Over-Nite Sensation," "The Yellow Shark," and "Sheik Yerbouti."

158.   Through their unauthorized sale, license, or other exploitation of the Subject Master Ringtones, specifically, "Don't Eat the Yellow Snow," "St. Alphonso Rollo Interlude,"

"Montana Intro," "G-Spot Tornado," and "Rat Tomago," Gail Zappa and the Trust have infringed Ryko's exclusive rights in "Apostrophe (')," "Over-Nite Sensation," "The Yellow Shark" and "Sheik Yerbouti" under 17 U.S.C. § 106 (1) - (4).

159.    The foregoing acts of infringement by Gail Zappa and the Trust have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Ryko.

160.    Accordingly, Ryko is entitled to judgment against Gail Zappa and the Trust awarding Ryko its actual damages and Gail Zappa's and the Trust's profits (or statutory damages in the amount of $150,000 with respect to each sound recording infringed, including ones infringed during the pendency of this action), interest, costs, attorneys' fees, and an injunction to prevent future infringement by Gail Zappa and the Trust.

### NINTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT)
### (AGAINST GAIL ZAPPA AND THE TRUST)

161.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

162.    By virtue of Gail Zappa's and the Trust's acts of infringement, unfair competition, misappropriation, repeated and unfounded challenges to Ryko's rights under the 1994 Agreement, and multiple attempts to impermissibly and unilaterally rewrite the 1994 Agreement, they have prevented and interfered with Ryko's full enjoyment of all the Assets and Rights of the 1994 Agreement.

163.    Such conduct violates Gail Zappa's and the Trust's representation and warranty with respect to Ryko's quiet enjoyment under the 1994 Agreement, thus constituting a material breach of paragraph 4.19 the 1994 Agreement.

164.    In addition, by releasing "The MOFO Project/Object," "One Shot Deal," "Hot Rats," and "Lumpy Money," and selling the "Beat the Boots" series and the Subject Master Ringtones, Gail Zappa and the Trust have exploited Subject Masters at the derogation of Ryko's

rights, thus constituting a material breach of, among other provisions, paragraph 12.9 of the 1994 Agreement.

165.    In addition, by using, reproducing, and distributing the Album Cover Artwork from "Hot Rats," "Lumpy Gravy," and "We're Only in it for the Money," in connection with the sale and advertising of "Hot Rats" and "Lumpy Money," Gail Zappa and the Trust have violated Ryko's exclusive right to exploit such Album Cover Artwork in connection with Records and advertising of Records, thus constituting a material breach of paragraph 1.2(a)(iii) of the 1994 Agreement.

166.    As a direct and proximate result of Gail Zappa's and the Trust's breach, Ryko has been damaged in an amount that shall be proved at trial.

### TENTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – 1994 AGREEMENT)
### (AGAINST GAIL ZAPPA, PUMPKO, THE TRUST, MOON UNIT ZAPPA, DWEEZIL ZAPPA, AHMET ZAPPA, AND DIVA ZAPPA)

167.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

168.    An actual controversy exists between Grantors and Ryko concerning their respective rights and duties under the 1994 Agreement.

169.    Ryko contends that:

a.    Pursuant to paragraphs 1.1 and 1.4 of the 1994 Agreement and the Assignment of Copyright, Grantors assigned all sound recordings embodying Zappa's performances in the Subject Masters, whether the original or derivative works from inception, and not limited to what was physically delivered by Grantors to Ryko.

b.    All versions and mixes of the Subject Masters are owned by Ryko, and Grantors have no right to exploit versions or mixes of the Subject Masters that are different from those physically delivered to Ryko, including but not

limited to "Freak Out!," "Lumpy Gravy," "We're Only In It for the Money," and "Hot Rats."

    c.    Pursuant to paragraph 1.4(e) of the 1994 Agreement, Ryko has the right to distribute the Subject Masters "of whatever kind and nature in any and all media now existing or hereafter discovered, developed or devised in any jurisdiction throughout the universe in perpetuity," which includes vinyl and all forms of digital distribution, including, but not limited to, distribution over the Internet through sites such as iTunes, and not limited to 16-bit digital PCM format.

170.    Grantors deny the foregoing contentions.

171.    Ryko desires a judicial declaration of its rights and duties under the 1994 Agreement. Such declaration is necessary for the parties to proceed in a manner as determined by the Court.

## ELEVENTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – LÄTHER)
### (AGAINST GAIL ZAPPA, PUMPKO, THE TRUST, MOON UNIT ZAPPA, DWEEZIL ZAPPA, AHMET ZAPPA, AND DIVA ZAPPA)

172.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

173.    An actual controversy exists between Grantors and Ryko concerning their respective rights and duties with respect to the Läther album.

174.    Pursuant to the Läther Agreement, the Trust granted Ryko (i) an exclusive, perpetual, worldwide, irrevocable license to exploit "any portions of the recordings on [the Läther album] which are not owned by Ryko;" (ii) a mechanical license with respect to all the musical compositions contained on the Läther album, including, but not limited to the Läther Musical Compositions; and (ii) an exclusive license to use and license others to use the artwork

and artwork materials on album covers, packaging, and in advertising and promotion in connection with the Läther album.

175.    Ryko contends that by virtue of the Läther Agreement, it has the sole, exclusive, worldwide, perpetual, and irrevocable right to sell, offer for sale, advertise, and distribute the Läther album, including the Läther Sound Recordings and the Läther Musical Compositions.

176.    Grantors deny the foregoing contentions.

177.    Ryko desires a judicial declaration that pursuant to the Läther Agreement (i) it has such exclusive rights, and (ii) by virtue of these rights it is entitled to a declaratory judgment of non-infringement of the Läther Sound Recordings and the Läther Musical Compositions.  Such declaration is necessary for the parties to proceed in a manner as determined by the Court.

178.    In the alternative, Ryko desires a declaration that it has a non-exclusive perpetual license to sell, offer for sale, advertise, and distribute the Läther album, including the Läther Sound Recordings and the Läther Musical Compositions by virtue of the parties' agreement, conduct, course of dealing and Ryko's reliance on the promises of Gail Zappa and the Trust, as evidenced by (i) Ryko's One Hundred Thousand Dollar $100,000 payment to the Trust and the Trust's acceptance of the same in consideration of the right to exploit the Läther Sound Recordings and the Läther Musical Compositions, (ii) the Trust's delivery to Ryko of all the master sound recordings that were to be included in the Läther album, (iii) Gail Zappa's creation and delivery to Ryko of the liner notes for the Läther album, (iv) Dweezil Zappa's design, creation, and delivery to Ryko of the cover artwork for the Läther album, (v) Ryko's considerable investment of time, money, expenses, and opportunity costs in manufacturing, distributing, and selling the Läther album, and (vi) Ryko's accounting, computation, and payment to the Trust of all mechanical royalties for the musical compositions embodied in the Läther album and the Trust's acceptance of the same.  Such declaration is necessary for the parties to proceed in a manner as determined by the Court.

## TWELFTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT – COPYRIGHT OWNERSHIP)
### (AGAINST GAIL ZAPPA, PUMPKO, THE TRUST MOON UNIT ZAPPA, DWEEZIL ZAPPA, AHMET ZAPPA, AND DIVA ZAPPA)

179.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

180.    An actual controversy exists between Grantors and Ryko concerning their respective rights and duties under the 1994 Agreement.

181.    Pursuant to the Assignment of Copyright and the 1994 Agreement, Ryko acquired "all right, title and interest, including without limitation, copyrights registered or unregistered and copyright applications and all renewals and extensions of such copyrights in each country and territory of the world . . . in and to all sound recordings of the performances of [Zappa], alone and/or with other performers, which have heretofore been commercially released or exploited by or with the Authority of [Zappa] or parties deriving rights from [Zappa], including, without limitation, those set forth on Schedule A . . . and also including the albums listed on such Schedule A which were not yet commercially released or exploited . . . (collectively referred to herein as 'Subject Masters.')."

182.    Ryko contends that by virtue of the commercial release by Zappa of "The Guitar World According to Frank Zappa," the Guitar World Recordings are all Subject Masters.

183.    Grantors deny the foregoing contentions.

184.    Ryko desires a judicial declaration that pursuant to the Assignment of Copyright and the 1994 Agreement the Guitar World Recordings are all Subject Masters owned by Ryko. Such declaration is necessary for the parties to proceed in a manner as determined by the Court.

## THIRTEENTH CLAIM FOR RELIEF
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)
### (AGAINST GAIL ZAPPA AND THE TRUST)

185.    Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

186.     Prior to Gail Zappa's and the Trust's false statements to various online retailers, Ryko had lucrative business relationships with such companies, including eMusic.

187.     As set forth above, Gail Zappa and the Trust interfered with those relations by making false and derogatory statements to these retailers regarding Ryko's rights to digitally distribute the Subject Masters.

188.     Given the nature, frequency, and threatening purpose of Gail Zappa's and the Trust's false statements, the fact that they themselves sought to digitally distribute certain Vault Masters, that the 1994 Agreement expressly provided that Ryko could distribute the Subject Masters "in any and all media now existing or hereafter discovered," and that Grantors assigned the copyrights in and to the Subject Masters to Ryko, it is evident that their sole purpose in making these statements was to harm Ryko by using dishonest, unfair, and improper means and to extort concessions from Ryko for which they did not bargain during the negotiation of the 1994 Agreement.

189.     Gail Zappa's and the Trust's actions have injured Ryko's pre-existing business relationships with these online retailers, because they successfully convinced these retailers not to digitally distribute the Subject Masters.

### FOURTEENTH CLAIM FOR RELIEF
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)
### (AGAINST GAIL ZAPPA AND THE TRUST)

190.     Ryko repeats and reiterates all of the foregoing allegations as if set forth at length herein.

191.     Ryko had a reasonable expectation of prospective economic advantage with a number of third-party online retailers, including Apple and Napster, for the digital distribution of Subject Masters.

192.     Gail Zappa and the Trust have wrongfully, intentionally, and maliciously interfered with Ryko's prospective economic advantage for such digital distribution by, among other things, making false statements to various third-party online retailers, including Apple and

Napster, that Ryko did not have the rights to digitally distribute the Subject Masters and that any transaction between Ryko and a third party with respect to such digital distribution could not be completed without the participation of Gail Zappa and the Trust and that any digital distribution without their permission would constitute actionable and willful copyright infringement.

193.    Ryko has suffered losses through Gail Zappa's and the Trust's wrongful, intentional, and malicious interference, including the loss of revenue that would have been generated by Ryko's entering into agreements with such third-party online retailers, and will continue to be damaged unless and until the Court enjoins Gail Zappa's and the Trust's improper conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Ryko prays for judgment against the Counterclaim and Third Party Defendants as follows:

1.    On the First, Second, and Third Claims for Relief, for an accounting, the imposition of a constructive trust, restitution of Gail Zappa's, the Trust's, and Barfko Swill's unlawful proceeds, compensatory damages according to proof, punitive and exemplary damages, an injunction permanently and perpetually enjoining Gail Zappa, the Trust, Barfko Swill, and their agents from selling, offering for sale, and distributing "The MOFO Project/Object," "Hot Rats," "Lumpy Money," and any other infringing records they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action, in whatever form, and the impounding of all copies of "The MOFO Project/Object," "Hot Rats, " "Lumpy Money," and any other such infringing records, in whatever form.

2.    On the Fourth Claim for Relief, for its actual damages and Gail Zappa's, the Trust's, and Barfko Swill's profits (or statutory damages in the amount of $150,000 with respect to each sound recording infringed), interest, costs, attorneys' fees, an injunction permanently and perpetually enjoining Gail Zappa, the Trust, Barfko Swill, and their agents from selling, offering for sale, and distributing "One Shot Deal" and any other infringing records they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action, in whatever

form, and the impounding of all copies of "One Shot Deal" and any other such infringing records, in whatever form.

3.　　On the Fifth, Sixth, and Seventh Claims for Relief, for an accounting, the imposition of a constructive trust, restitution of Gail Zappa's and the Trust's unlawful proceeds, compensatory damages according to proof, punitive and exemplary damages, and an injunction permanently and perpetually enjoining Gail Zappa, the Trust, and their agents from selling, offering for sale, and distributing the following Subject Master Ringtones:  (i) "Brain Police Freak Out," (ii) "Brain Police Intro," (iii) "Brain Police Kazoo Outro," (iv) "Suzy Creamcheese," (v) "Help I'm a Rock," (vi) "Peaches en Regalia," (vii) "Piano Strings," and (viii) and any other infringing Subject Master Ringtone they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action.

4.　　On the Eighth Claim for Relief, for its actual damages and Gail Zappa's and the Trust's profits (or statutory damages in the amount of $150,000 with respect to each sound recording infringed), interest, costs, attorneys' fees, and an injunction permanently and perpetually enjoining Gail Zappa, the Trust, and their agents from selling, offering for sale, and distributing the following Subject Master Ringtones: (i) "Don't Eat the Yellow Snow," (ii) "St. Alphonso Rollo Interlude," (iii) "Montana Intro," (iv) "G-Spot Tornado," (v) "Rat Tomago," and (vi) and any other infringing Subject Master Ringtone they reproduce, manufacture, market, release, distribute, and sell during the pendency of this action.

5.　　On the Ninth Claim for Relief, for damages according to proof.

6.　　On the Tenth Claim for Relief, a judicial determination and declaration that:

a.　Ryko owns all versions and mixes of the Subject Masters, whether the original or derivative works, from inception and not limited to what was physically delivered by Grantors to Ryko.

b.　Grantors have no right to exploit any versions or mixes of the Subject Masters that are different from those physically delivered to Ryko.

c.  Ryko has the right pursuant to the 1994 Agreement to distribute the Subject Masters of whatever kind and nature in any and all media now existing or hereafter discovered, developed or devised in any jurisdiction throughout the universe in perpetuity, which includes vinyl and all forms of digital distribution, including, but not limited to distribution over the Internet through sites such as iTunes, and such exploitation is not limited to 16-bit digital PCM format.

7.  On the Eleventh Claim for Relief, a judicial determination and declaration that:

a.  Pursuant to the Läther Agreement (i) Ryko has the sole, exclusive, worldwide, perpetual, and irrevocable right to sell, offer for sale, advertise, and distribute the Läther album, including the Läther Sound Recordings and the Läther Musical Compositions, and (ii) by virtue of these rights it is entitled to a declaratory judgment of non-infringement of the Läther Sound Recordings and the Läther Musical Compositions.

b.  In the alternative, Ryko has a non-exclusive perpetual license to sell, offer for sale, advertise, and distribute the Läther album, including the Läther Sound Recordings and the Läther Musical Compositions.

8.  On the Twelfth Claim for Relief, a judicial determination and declaration that pursuant to the Assignment of Copyright and the 1994 Agreement the Guitar World Recordings are all Subject Masters owned by Ryko.

9.  On the Thirteenth Claim for Relief, for damages according to proof, punitive and exemplary damages, and an injunction permanently and perpetually enjoining Gail Zappa, the Trust, and their agents from making any statements that Ryko does not have the right to digitally distribute the Subject Masters.

10.  On the Fourteenth Claim for Relief, for damages according to proof, punitive and exemplary damages, and an injunction permanently and perpetually enjoining Gail

Zappa, the Trust, and their agents from making any statements that Ryko does not have the right to digitally distribute the Subject Masters.

11.     For prejudgment interest according to law.

12.     For Ryko's attorneys' fees, costs, and expenses in this action pursuant to paragraph 12.15 of the 1994 Agreement.

13.     For such other and further relief as the Court may deem just and proper.

                          Respectfully submitted,

                          **LOWENSTEIN SANDLER PC**
                          Stephen R. Buckingham
                          David L. Harris
                          Matthew Savare
                          Attorneys at Law
                          65 Livingston Avenue
                          Roseland, New Jersey 07068
                          973.597.2500
                          973.597.2400 (fax)

Dated:  March 20, 2008          By: ____/s/  Stephen R. Buckingham ____
                                    Stephen R. Buckingham

<u>**CERTIFICATE OF SERVICE**</u>

  I certify that I caused a copy of this Answer, Defenses, and Counterclaims to be served by Ryko's electronic filing of this document on all counsel of record, by virtue of counsels' registration with the Court to receive electronic filings.


       By: _____*/s/ Stephen R. Buckingham*___
          Stephen R. Buckingham
          David L. Harris
          Matthew Savare
          **LOWENSTEIN SANDLER PC**
          Attorneys at Law
          65 Livingston Avenue
          Roseland, New Jersey 07068
          973.597.2500
          973.597.2400 (fax)


Dated: March 20, 2008